UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION GULFPORT

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; and MATTHEW LAMB,<br><br>Plaintiffs,<br><br>v.<br><br>JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*; TONI JO DIAZ, BECKY PAYNE, BARBARA KIMBALL, CHRISTENE BRICE, and CAROLYN HANDLER, *in their official capacities as members of the Harrison County Election Commission*; and MICHAEL WATSON, *in his official capacity as the Secretary of State of Mississippi*,<br><br>Defendants. | No. 1:24cv25 LG-RPM<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs the Republican National Committee, the Mississippi Republican Party, James "Pete" Perry, and Matthew Lamb bring this action to challenge Section 23-15-637(1)(a) of the Mississippi Election Code. Plaintiffs allege as follows:

## INTRODUCTION

1. Under the U.S. Constitution, states have broad discretion to decide how to conduct federal elections. But their election laws must comply with the higher law of the U.S. Constitution and with federal laws enacted under it.

2. Exercising its constitutional power under the Elections Clause and the Electors Clause, Congress has established a uniform, national day to elect members of Congress and to appoint presidential electors. 2 U.S.C. §§1, 7; 3 U.S.C. §1. Congress

enacted these laws "to provide a uniform time of electing Representatives," Senators, and presidential electors. Cong. Globe, 42d Cong., 2d Sess. 112 (1871).

3. Mississippi contravenes those federal laws by counting mail-in ballots that are received up to five business days after Election Day. Miss. Code §23-15-637(1)(a). Mississippi effectively extends Mississippi's federal election past the Election Day established by Congress.

4. The result of Mississippi's violation of federal law is that timely, valid ballots are diluted by untimely, invalid ballots, which violates the rights of candidates, campaigns, and voters under federal law.

5. For these reasons, Section 23-15-637(1)(a) is illegal and must be enjoined.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction because this action arises under the Constitution and laws of the United States. 28 U.S.C. §§1331, 1343.

7. Venue is proper because at least one Defendant resides in this district and all Defendants are residents of Mississippi, and because a substantial part of the events giving rise to the claims occurred in this district. *Id*. §1391(b).

## PARTIES

8. Plaintiff Republican National Committee (RNC) is the national committee of the Republican Party, as defined by 52 U.S.C. §30101(14), with its principal place of business at 310 First Street S.E., Washington D.C., 20003.

9. The RNC organizes and operates the Republican National Convention, which nominates a candidate for President and Vice President of the United States.

10. The RNC represents over 30 million registered Republicans in all 50 states, the District of Columbia, and the U.S. territories. It is comprised of 168 voting

2

members representing state Republican Party organizations, including three members who are registered voters in Mississippi.

11. The RNC works to elect Republican candidates to state and federal office. In November 2024, its candidates will appear on the ballot in Mississippi for election to the Presidency, U.S. Senate, and U.S. House of Representatives.

12. The RNC has vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Mississippi elections and elsewhere. The RNC brings this suit to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates.

13. The RNC also has an interest in preventing Mississippi's constitutionally problematic mail-in ballot deadlines. Mississippi's mail-in deadline forces the RNC to divert resources and spend money on absentee-specific programs and post-election activities. The mail-in ballot deadline also specifically and disproportionately harms Republican candidates.

14. Plaintiff Mississippi Republican Party is a political party in Mississippi with its principal place of business at 415 Yazoo Street, Jackson, Mississippi 39201. The Mississippi Republican Party and its members exercise their federal and state constitutional rights of speech, assembly, petition, and association to develop statewide political organization, promote the Republican Party platform, and secure the election of all duly nominated Republican candidates.[1]

15. The Mississippi Republican Party has the same interests in this case as the RNC and seeks to vindicate those interests in the same ways.

16. Plaintiff James "Pete" Perry is the former chairman of the Hinds County Republican Party and current member of the Hinds County Republican Executive

---

[1] *Bylaws of the Mississippi Republican Party* (May 19, 2012), https://perma.cc/A37L-RYKV.

Committee, which is responsible for conducting the Republican primary election in Hinds County. Mr. Perry is also a longtime member of the Mississippi Republican Party executive committee. He is a resident of Hinds County, Mississippi and is a registered Mississippi voter.

17. Plaintiff Matthew Lamb is the District 4 Commissioner for the George County Election Commission. As a member of the Commission, he is responsible for running the County's general and special elections, which includes preparing and printing ballots, hiring and training poll workers, compiling precinct results on election day, and certifying election results. He is a resident of Lucedale, Mississippi and is a registered Mississippi voter.

18. Defendant Justin Wetzel is the clerk and registrar of the Circuit Court of Harrison County and is sued in his official capacity. *See* Miss. Code §23-15-647. As the Harrison County registrar, Mr. Wetzel is responsible for overseeing absentee voting in Harrison County. *See, e.g., id.* §§23-15-625, 23-15-627, 23-15-717, 23-15-719. Among other things, he is tasked with keeping "safely and unopened all official absentee ballots which are received by mail after the applicable cutoff period establishing its validity." *Id.* §23-15-647. Absentee ballots received by mail are "processed by the Resolution Board in the office of the Circuit Clerk."[2]

19. Toni Jo Diaz is the District 1 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission. The county Election Commissions are responsible for canvassing the returns for that county and certifying the results of the election to the Secretary of State. *See* County Elections Handbook, *supra* note 2, at 50.

20. Becky Payne is the District 2 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

---

[2] Miss. Sec'y of State's Off., *County Elections Handbook* at 22 (June 2023), https://perma.cc/W9RK-KWCY.

21. Barbara Kimball is the District 3 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

22. Christene Brice is the District 4 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

23. Carolyn Handler is the District 5 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

24. Defendant Michael Watson is the Secretary of State of Mississippi and is sued in his official capacity as the State's chief election officer. Miss. Code §23-15-211.1. He has the authority to promulgate rules regarding absentee voting. *See id.* §23-15-639(2); 1 Miss. Admin. Code Pt. 17, Rs. 2.1, 2.3, 3.2. Secretary Watson also provides guidance to county officials regarding absentee voting, such as the guidance in the County Elections Handbook. That guidance includes when and why absentee ballots should be counted or rejected. *See* County Elections Handbook, *supra* note 2, at 22-24, 44-46.

## ALLEGATIONS

### I. There is only one federal Election Day.

25. The U.S. Constitution's Elections Clause vests state legislatures with power to set the time, place, and manner of congressional elections. U.S. Const., art. I, §4, cl. 1.

26. But the Elections Clause also reserves to "Congress" the power to "at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." *Id.*

27. A law governs "'the election' of a Senator or Representative" when it "plainly refer[s] to the combined actions of voters and officials meant to make a final selection of an officeholder." *Foster v. Love*, 522 U.S. 67, 71 (1997).

5

28. Exercising its constitutional power to pass laws governing elections for federal offices, Congress has established one specific day as the uniform, national Election Day for members of the United States House of Representatives and of the United States Senate. For both offices, the "Tuesday next after the 1st Monday in November" is "the day for the election." 2 U.S.C. §7 (elections for members of the House of Representatives held on that day "in every even numbered year"); *see also id.* §1 (Senators to be elected "[a]t the regular election held in any State next preceding the expiration of the term for which any Senator was elected to represent such State in Congress, at which a Representative to Congress is regularly by law to be chosen").

29. The U.S. Constitution also vests in "Congress" the power to "determine the Time of chusing the Electors" for the offices of President and Vice President. U.S. Const. art. II, §1, cl. 4.

30. Exercising that power, Congress has established that "[t]he electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. §1.

31. Together, 2 U.S.C. §§1, 7, and 3 U.S.C. §1 establish the Tuesday after the first Monday in November as the uniform, national Election Day for members of Congress and as the uniform, national day for appointing electors for President and Vice President.

32. Those "uniform rules for federal elections" are "binding on the States" and superior to conflicting state law. *Foster*, 522 U.S. at 69. "'[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative.'" *Id.* (quoting *Ex parte Siebold*, 100 U.S. 371, 384 (1879)). In other words, if a state law

governing elections for federal offices "conflicts with federal law," that state law is "void." *Id.* at 74.

## II. Mississippi's mail-in ballot deadline extends the election beyond the federal Election Day.

33. Under Mississippi law, "Absentee ballots and applications received by mail, except for fax or electronically transmitted ballots as otherwise provided by Section 23-15-699 for UOCAVA ballots, must be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." Miss. Code §23-15-637(1)(a).

34. Validly marked mail-in ballots received within five business days of the election are counted, but "any received after such time … shall not be counted." *Id.*

35. "The registrar shall deposit all absentee ballots which have been timely cast and received by mail in a secured and sealed box in a designated location in the registrar's office upon receipt." *Id.* §23-15-637(2). "Such ballot box shall remain sealed and secured in the office of the Circuit Clerk … until the day of the election, when the absentee ballots will be processed by the Resolution Board in the office of the Circuit Clerk." County Elections Handbook, *supra* note 2, at 22; *see also* Miss. Code §23-15-639(1)(a).

36. On Election Day, election officials begin counting the mail-in ballots. *See* Miss. Code §23-15-639(1)(a); County Elections Handbook, *supra* note 2, at 44.

37. As part of the ballot-examination process, "[i]f a mail-in absentee ballot has been received after the date of the election, the Resolution Board should ensure that it has been postmarked on or before the date of the election." County Elections Handbook, *supra* note 2, at 44.

38. A mail-in ballot received within five business days of Election Day that otherwise satisfies the criteria for a valid ballot "is marked 'ACCEPTED.'" *Id.* at 45.

If a ballot is deficient in one or more of the criteria, "then the envelope is marked 'REJECTED.'" *Id.*

39. The "'ACCEPTED' absentee ballot envelopes are opened, the absentee ballots removed from the envelopes and the absentee ballots are placed in the ballot box before counting any paper ballots." *Id.* at 46; *see also* Miss. Code §23-15-639.

40. Each county has an Election Commission that is responsible for canvassing the returns for that county and certifying the results of the election to the Secretary of State. *See* County Elections Handbook, *supra* note 2, at 50.

41. Mississippi's law, regulations, and guidance require election officials to count ballots received after Election Day.

### III. Mississippi's mail-in ballot deadline violates federal law.

42. The next federal election will be held on Tuesday, November 5, 2024. In that election, Mississippi will elect its next slate of presidential and vice-presidential electors, as well as a new Congressional delegation.

43. Under Mississippi's current law, mail-in ballots for the November 5 election will be counted if received on or before November 12, 2024.

44. "When the federal statutes speak of 'the election' of a Senator or Representative, they plainly refer to the combined actions of voters and officials meant to make a final selection of an officeholder…." *Foster*, 522 U.S. at 71. "By establishing a particular day as 'the day' on which these actions must take place, the statutes simply regulate the time of the election, a matter on which the Constitution explicitly gives Congress the final say." *Id.* at 71-72.

45. By holding voting open beyond the federal Election Day, Mississippi violates federal law and harms Plaintiffs.

46. The RNC and Mississippi Republican Party intend to conduct their campaigns in accordance with federal law.

47. Plaintiffs are entitled to have their election results certified with votes received in compliance with the federal Election Day statutes.

48. The RNC and Mississippi Republican Party rely on provisions of federal and state law in conducting their campaigns, which include resources allocated to the post-election certification process. For example, Mississippi law guarantees Plaintiffs "the right to be represented at the polling place by two (2) credentialed poll watchers." Miss. Code. §23-15-577. Poll watchers may "[c]hallenge the qualifications of any absentee voter who has cast an absentee ballot." Miss. Sec'y of State, *General Guidelines Pertaining to Poll Watchers* 2.[3] Counting ballots received after Election Day thus requires political committees to spend more time and money on poll watchers and mail-in ballot activities.

49. Mississippi's law also requires the RNC and Mississippi Republican Party to maintain absentee-specific get-out-the-vote operations to encourage absentee voters to return their mail-in ballots through Election Day.

50. In addition, late-arriving ballots are not valid, so counting them dilutes the weight of timely, valid ballots.

51. Dilution of honest votes, to any degree, by the casting of fraudulent or illegitimate votes violates the right to vote.

52. The Fourteenth Amendment of the U.S. Constitution protects the "the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 77 U.S. 533, 554 (1964). "Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). "[T]he right to have the vote counted" means counted "at full value without dilution

---

[3] Miss. Sec'y of State, *General Guidelines Pertaining to Poll Watchers*, https://perma.cc/VM8R-7NWQ.

or discount." *Reynolds*, 377 U.S. at 555 n.29 (quoting *South v. Peters*, 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

53. Thus, both direct denials and practices that count invalid ballots dilute the effectiveness of individual votes and violate the Fourteenth Amendment. *See id.* at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

54. "Every voter in a federal … election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974); *see also Baker v. Carr*, 369 U.S. 186, 208 (1962).

55. Fraudulent votes "debase[]" and "dilute" the weight of each validly cast vote. *Anderson*, 417 U.S. at 227. When it comes to "'dilut[ing] the influence of honest votes in an election,'" whether the dilution is "'in greater or less degree is immaterial'"—it is a violation of the Fourteenth Amendment. *Id.* at 226.

56. Because voting by mail is starkly polarized by party, that dilution directly harms Plaintiffs. For example, according to the MIT Election Lab, 46% of Democratic voters in the 2022 General Election mailed in their ballots, compared to only 27% of Republicans. Charles Stewart III, *How We Voted in 2022*, at 10, https://perma.cc/444Z-58ZY. That means the late-arriving mail-in ballots that are counted for five additional days disproportionately break for Democrats.

57. Mail-in ballots from Democratic voters also tend to arrive late, in part because "Democratic get-out-the-vote drives—which habitually occur shortly before election day——may delay maximum Democratic voting across-the-board, and produce a 'blue shift' in late mail ballots." Ed Kilgore, *Why Do the Last Votes Counted Skew Democratic?*, Intelligencer (Aug. 10, 2020), https://perma.cc/R78D-3Q58.

Indeed, "even if Republicans and Democrats voted in person and by mail at identical levels, Democrats tend to vote later, which in turn (particularly in elections with heavy voting by mail) means early Republican leads in close races could be fragile." *Id.*

58. Mississippi received 22,221 absentee ballots for the 2022 General Election, and 142,591 absentee ballots during the 2020 General Election. *See* Miss. Sec'y of State, 2022 General Election Absentee Report (Oct. 30, 2022), https://perma.cc/N37N-JLGB.

59. Counting mail-in ballots received after Election Day doesn't just dilute the valid ballots—it specifically and disproportionately harms Republican candidates and voters.

60. Finally, Mr. Lamb intends to conduct the George County election in accordance with federal law. But Mississippi's law forces him to choose between following Congress' election-day deadline or Mississippi's post-election day deadline. And failing to apply Mississippi's post-election day deadline opens up Mr. Lamb to removal from his position. *See* Miss. Code §§25-5-3, -5.

61. These harms are irreparable.

## CAUSES OF ACTION

### COUNT I
### Violation of 3 U.S.C. §1, 2 U.S.C. §§1, 7

62. Plaintiffs incorporate all their prior allegations.

63. Federal law provides that "[t]he electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. §1.

64. For congressional offices, the "Tuesday next after the 1st Monday in November" is "the day for the election." 2 U.S.C. §7 (elections for members of the

11

House of Representatives held on that day "in every even numbered year"); *see also id.* §1 (Senators to be elected "[a]t the regular election held in any State next preceding the expiration of the term for which any Senator was elected to represent such State in Congress, at which a Representative to Congress is regularly by law to be chosen").

65. Congress established one specific day as the uniform, national Election Day for federal office. Federal law prohibits holding voting open after Election Day.

66. A qualified ballot for federal office is not a legal vote unless it is received by the proper election officials by Election Day.

67. Section 23-15-637(1)(a) of the Mississippi Code permits absentee ballots that have been postmarked by Election Day to be counted if they are received up to five business days after Election Day.

68. Section 23-15-637(1)(a) thus holds voting open after Election Day and allows ballots to be cast after Election Day but still counted as lawfully cast votes. Federal law preempts Section 23-15-637(1)(a) as a result.

69. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional and federal rights unless Defendants are enjoined from implementing and enforcing Section 23-15-637(1)(a).

## COUNT II
### Violation of the Right to Stand for Office (42 U.S.C. §1983)

70. Plaintiffs incorporate all their prior allegations.

71. Section 23-15-637(1)(a) requires counties to hold open voting and count ballots that have been cast after Election Day. Under federal law, those votes are not valid. 3 U.S.C. §1, 2 U.S.C. §7, 2 U.S.C. §1.

72. Defendants, acting under color of Mississippi law, have deprived and are depriving Plaintiffs of rights protected under the First and Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. §1983 by, among other things,

forcing Plaintiffs to spend money, devote time, and otherwise injuriously rely on unlawful provisions of state law in organizing, funding, and running their campaigns.

73. Defendants, acting under color of Mississippi law, have deprived and are depriving Plaintiffs of rights protected under the First Amendment and 14th Amendment to the U.S. Constitution in violation of 42 U.S.C. §1983.

74. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing Section 23-15-637(1)(a).

## COUNT III
### Violation of the Right to Vote (42 U.S.C. §1983)

75. Plaintiffs incorporate all their prior allegations.

76. Section 23-15-637(1)(a) requires counties to hold open voting and count ballots that have been cast after Election Day. Under federal law, those votes are not valid. 3 U.S.C. §1, 2 U.S.C. §7, 2 U.S.C. §1.

77. Dilution of honest votes, to any degree, by the casting of fraudulent or illegitimate votes violates the right to vote. *Reynolds*, 377 U.S. at 555; *Anderson*, 417 U.S. at 226-27; *Baker*, 369 U.S. at 208.

78. Mississippi's voting system permits illegitimate votes and therefore violates the Fourteenth Amendment to the U.S. Constitution.

79. Defendants have acted and will continue to act under color of state law to violate the Fourteenth Amendment.

80. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional and federal rights unless Defendants are enjoined from implementing and enforcing Section 23-15-637(1)(a).

**PRAYER FOR RELIEF**

Plaintiffs request entry of a judgment granting:

a. A declaratory judgment that the relevant parts of Miss. Code §23-15-637(1)(a) violate the Fourteenth Amendment, 2 U.S.C. §§1, 7, and 3 U.S.C. §1;

b. A permanent injunction prohibiting Defendants from implementing and enforcing the relevant parts of Miss. Code §23-15-637(1)(a);

c. A temporary restraining order and preliminary injunction granting the relief specified above during the pendency of this action;

d. Plaintiffs' reasonable costs and expenses, including attorneys' fees; and

e. All other preliminary and permanent relief that Plaintiffs are entitled to, and that the Court deems just and proper.

Dated: January 26, 2024

Respectfully submitted,

/s/ Spencer M. Ritchie

Thomas R. McCarthy*
Conor D. Woodfin*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
conor@consovoymccarthy.com

Spencer M. Ritchie (MSB #103636)
FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street, Suite 2200
Jackson, MS 39201
(601) 960-3172
spencer.ritchie@formanwatkins.com

*pending admission *pro hac vice*

*Counsel for Plaintiffs*

14