# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

REPUBLICAN NATIONAL COMMITTEE,
MISSISSIPPI REPUBLICAN PARTY, JAMES
PERRY, and MATTHEW LAMB,

        Plaintiffs,

   v.

JUSTIN WETZEL, *in his official capacity as the
clerk and registrar of the Circuit Court of
Harrison County*, TONI JO DIAZ, BECKY
PAYNE, BARBARA KIMBALL, CHRISTENE
BRICE, and CAROLYN HANDLER, *in their
official capacities as members of the Harrison
County Election Commission*, and MICHAEL
WATSON, *in his official capacity as the Secretary
of State of Mississippi*,

        Defendants.

No. 1:24-cv-00025-LG-RPM

---

## MEMORANDUM BRIEF IN SUPPORT OF VET VOICE FOUNDATION AND THE MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS' MOTION TO INTERVENE AS DEFENDANTS

Pursuant to Rule 24(a), Vet Voice Foundation ("Vet Voice") and the Mississippi Alliance for Retired Americans ("Alliance") (together, "Proposed Intervenors") move to intervene as a matter of right. Alternatively, the Proposed Intervenors move to intervene permissively under Rule 24(b). Their motion should be granted for the reasons below.

## INTRODUCTION

In 2020, the Mississippi Legislature amended the state's election laws to ensure that absentee ballots postmarked on or before election day would be counted, provided they are "received by the registrar no more than five (5) business days after the election." Miss. Code § 23-

15-637(1)(a) (the "Ballot Receipt Deadline"). It did so on an overwhelming and bipartisan basis, with H.B. 1521 passing the House by a vote of *118 to 1* and the Senate by a vote of *51 to 0*. Governor Reeves signed the bill into law without controversy in July 2020. In doing so, Mississippi joined approximately twenty other states and U.S. territories that ensure that absentee voters are not disenfranchised if their timely cast ballot is delayed in the mail in reaching election officials.

Plaintiffs, led by the Republican National Committee ("RNC"), seek to reverse this commonsense policy decision, arguing that the Ballot Receipt Deadline is preempted by the federal Election Day Statutes, 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 1, and violate Plaintiffs' constitutional rights to vote and stand for office as a result. *See* Compl. ¶¶ 62–80. Plaintiffs seek an order forbidding Defendants from counting *any* absentee ballots received after election day, even if postmarked on or before. *Id.*, Prayer for Relief. This is an extraordinary request, and it has been tried repeatedly before—always without success. In fact, this is the fourth time in as many years that a litigant has attempted a similar challenge to a similar statute in federal court, including in a prior case brought by the RNC (among others). In all those prior cases, the plaintiffs' claims were rejected—for lack of standing, or on the merits.[1] Undeterred, Plaintiffs now bring these claims to Mississippi.

If Plaintiffs are successful, the voters most likely to be disenfranchised are active and former members of the Armed Services and their families, disabled voters, and voters who are 65 years old or older. Proposed Intervenors—Vet Voice and the Alliance—are non-partisan, non-profit organizations that serve those communities, and seek to intervene to represent the rights of those voters, as well as their own interests as groups whose missions depend on enfranchising their

---

[1] *See, e.g.*, *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *Bost v. Illinois State Bd. of Elections*, No. 22-CV-02754, 2023 WL 4817073 (N.D. Ill. July 26, 2023), *appeal pending* No. 23-2644 (7th Cir.); *Splonskowski v. White*, No. 1:23-CV-00123, 2024 WL 402629, at *4 (D.N.D. Feb. 2, 2024); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 366 (D.N.J. 2020); *see also Donald J. Trump for President, Inc. v. Way*, No. 20-10753 (MAS) (ZNQ), 2020 WL 6204477, at *11 (D.N.J. Oct. 22, 2020).

members and supporters. They should be granted intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b).

All the requirements for intervention as of right are met. *First*, the motion is timely: Plaintiffs filed their action only two weeks ago, and no substantive proceedings have occurred. *Second*, both organizations have an interest in the subject of the action and their ability to protect that interest will be impaired if Plaintiffs obtain the relief they seek. Vet Voice's mission focuses on increasing turnout among veterans, active servicemembers, and military families, including in Mississippi. Extended receipt deadlines like the law at issue here play a critical role in enfranchising those voters. *See, e.g.*, *Splonskowski*, 2024 WL 402629, at *4 n.3 (in dismissing similar challenge, observing that plaintiffs' requested relief—the same sought here—is likely to "impinge upon the voting rights of members of the United States military"); *see also* Br. For U.S. as Am. Curiae at 6, *Bost v. Ill. State Bd. Of Elections*, No. 23-2644 (7th Cir. Dec. 12, 2023), ECF No. 21 (explaining that late "ballot receipt deadlines . . . protect military and overseas voters' right to vote"). Furthermore, many of Vet Voice's constituents are veterans who contend with service-related disabilities that may cause them to struggle to access in-person voting, and rely on absentee voting as a result. The same is true of the Alliance's members, an organization that seeks to promote the interests of retirees, including by ensuring their ability to participate in elections. As older voters—many with disabilities—the Alliance's members also rely heavily on absentee voting. Granting Plaintiffs' requested relief would make these voters' ability to do so successfully contingent on the ability of the U.S. Postal Service to timely deliver them. This is a troubling proposition at a time when significant delivery delays are common, and all the more so given that Mississippi law permits these voters to cast absentee ballots precisely because of the difficulties

that they have in accessing in-person voting. *See, e.g.*, Miss. Code §§ 23-15-713, 23-15-673.[2] *Finally*, neither organizations' interests are adequately represented in this suit. Plaintiffs actively seek to undermine those interests, and Defendants do not have the same focus on protecting the rights of the specific voter populations Vet Voice and the Alliance serve.

The motion to intervene should be granted.[3]

## BACKGROUND

### I.   Mississippi's absentee voting laws.

In Mississippi, limited categories of voters are entitled to vote absentee by mail. These include voters who are "[a]way from [their] county of residence on election day," Miss. Code § 23-15-713(c); voters who have temporary or permanent physical disabilities such that they are unable to vote in person without substantial hardship, *id.* § 23-15-713(d); voters who are 65 years old or older, *id.* § 23-15-713(f); voters who are an enlisted or commissioned member of the Armed Forces; a civilian attached to "any branch of the Armed Forces;" and disabled war veterans. *See id.* § 23-15-673; *see also id.* § 23-15-627 (prescribing application for absentee ballots and identifying categories of qualifying voters). Mississippi law instructs the voter to "mail the ballot to the address provided on the absentee ballot official envelope," *id.* § 23-15-719(1), and strictly

---

[2] Notably, issues with timely mail delivery appear to have even stymied Plaintiffs' efforts in this case: in a notice filed with the Court on February 5, 2024, Plaintiffs' counsel requested the Clerk reissue the Summons so that he could effectuate service. He noted that the Clerk's Office had issued and mailed the Summons to Plaintiffs' counsel's P.O. Box on January 26, 2024, but that as of February 5—ten days later—he had yet to receive it. *See* Notice of Reissuance, ECF No. 3. As a result of this mailing issue, Plaintiffs have so far only provided proof of service for one of Defendants named in this suit, two weeks after filing.

[3] In compliance with Rule 24(c), Vet Voice and the Alliance accompany this motion with a proposed pleading—a proposed Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), and a memorandum brief supporting that motion. *See* Proposed Intervenors' Proposed Motion to Dismiss, ECF Nos. 6-3, 6-4. In compliance with Local Rule 7(b)(10), counsel for Vet Voice and the Alliance contacted known counsel for the existing parties to obtain their position on the instant motion. *See* Motion to Intervene, ECF No. 6. Plaintiffs' counsel had not responded as of filing. *Id.* Counsel for Secretary Watson indicated that they are unable to take a position on the motion until they have an opportunity to review the motion papers. *Id.*

limits who may transmit the ballot on the voter's behalf, *see id.* § 23-15-907; *but see Disability Rts. Mississippi v. Fitch*, No. 3:23-CV-350-HTW-LGI, 2023 WL 4748788 (S.D. Miss. July 25, 2023) (preliminarily enjoining § 23-15-907), *appeal pending* No. 23-60463 (5th Cir.).

To be counted, an absentee ballot returned by mail must "be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." Miss. Code § 23-15-637(1)(a). This law was enacted in 2020 with overwhelming bipartisan support. It was approved in the House by a vote of 118 in favor and only one against.[4] The Senate approved the measure unanimously, by a vote of *51 to zero*.[5] Both chambers later approved the conference report on the bill by wide, bipartisan margins and Governor Reeves approved the law on July 8, 2020.[6] The Ballot Receipt Deadline has now been in place for both the 2020 and 2022 federal election cycles in Mississippi, as well as the 2023 election for state offices, including governor.

With the enactment of the Ballot Receipt Deadline, Mississippi joined the ranks of nearly two-dozen other U.S. states or territories that have similar laws.[7] As the Department of Justice has repeatedly noted, these types of laws are particularly important to guard against the systemic

---

[4]   Roll Call Vote, H.B. 1521, Miss. H.R., 2020 Reg. Sess. (Mar. 10, 2020), https://billstatus.ls.state.ms.us/2020/pdf/votes/house/0640030.pdf.

[5]   Roll Call Vote, H.B. 1521, Miss. State S., 2020 Reg. Sess. (June 15, 2020), https://billstatus.ls.state.ms.us/2020/pdf/votes/senate/1610021.pdf.

[6]   *House Bill 1521*, Miss. Leg., https://billstatus.ls.state.ms.us/2020/pdf/history/HB/HB1521.xml (last visited Feb. 7, 2024) (legislative history).

[7]   *See Tbl. 11: Receipt & Postmark Deadlines for Absentee/Mail Ballots*, Nat'l Conf. of State Legs. (July 12, 2022), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots; Alaska Stat. § 15.20.081(e), (h); Cal. Elec. Code § 3020; 10 Ill. Comp. Stat. § 5/19-8(c); Kan. Stat. § 25-1132; Md. Code, Elec. Law § 9-309; Mass. Gen. Laws ch. 54, § 93; Nev. Rev. Stat. § 293.269921; N.J. Stat. § 19:63-22; N.Y. Elec. Law § 8-412; N.C. Gen. Stat. § 163A-1310; N.D. Cent. Code §§ 16.1-07-09; 16.1-15-25; Ohio Rev. Code § 3509.05; Or. Rev. Stat. § 253.070; Tex. Elec. Code § 86.007; Utah Code § 20A-3a-204; Va. Code § 24.2-709; Wash. Rev. Code § 29A.40.091; W. Va. Code §§ 3-3-5, 3-5-17; D.C. Code § 1-1001.05(a)(10A); P.R. Laws tit. 25. § 3146.8; V.I. Code tit. 18, § 665.

disenfranchisement of military voters and their families who, due to obstacles such as long mail transit times, have historically voted at significantly lower rates than the national population. *See* Br. for United States as Am. Curiae at 23-28, *Bost v. Ill. State Bd. Of Elections*, No. 23-2644 (7th Cir. Dec. 6, 2023), ECF No. 21 (discussing challenges faced by military and overseas voters and the importance of extended ballot receipt deadlines to such voters); Statement of Interest of the United States at 1, 10–15, *Splonskowski v. White*, No. 1:23-cv-00123-DMT-CRH (D.N.D. Sept. 11, 2023), ECF No. 19 (explaining extended ballot receipt deadlines "can be vital in ensuring that military and overseas voters are able to exercise their right to vote"); Exhibit 1, Declaration of Janess Goldbeck ("Goldbeck Decl.") ¶¶ 10-12, ECF No. 6-1.

Nevertheless, on January 26, 2024, Plaintiffs filed this litigation, in which they argue that the Ballot Receipt Deadline violates federal law—and, as a result, their constitutional rights as well—and ask this Court to enjoin it and require Mississippi election officials to toss out all ballots received after election day, even if postmarked on or before that day. *See* Compl. at 14 (Prayer for Relief seeking to enjoin Miss. Code § 23-15-637(1)(a)).

## II.    Proposed Intervenor-Defendants.

***Vet Voice***. Vet Voice is a national non-profit, non-partisan organization dedicated to empowering veterans across the country to become civic leaders and policy advocates. *See* Goldbeck Decl. ¶¶ 3, 5. It has over 1.5 million subscribers who receive Vet Voice communications, including thousands here in Mississippi. *Id.* ¶ 4. Beyond those who affirmatively subscribe to its communications, Vet Voice's constituency broadly includes active servicemembers, including those deployed away from home, as well as military veterans, who are oftentimes over the age of 65 or have physical disabilities (oftentimes attributable to their time in service). *Id.* ¶¶ 8–9. Increasing voter turnout among military and veteran voters, as well as their families, is critical to

Vet Voice's mission. *Id.* ¶ 5. Furthermore, Vet Voice believes that turning out the "veteran vote" benefits all Americans by engaging people who have served their country in the civic process, and aims to promote turnout among all veterans, regardless of their political beliefs. *Id.* ¶¶ 5–6, 13.

Military voters and veterans often face challenges in exercising their right to vote. For example, active-duty servicemembers and their families are oftentimes deployed away from home, making it physically impossible for them to appear in person at their local polling sites on election day. *Id.* ¶ 8. Such servicemembers are highly reliant on mail voting to exercise the franchise. *Id.* Vet Voice's CEO, Janessa Goldbeck, has firsthand knowledge of these challenges. During her seven years in the U.S. Marine Corps, she personally had to rely on mail voting to cast her ballot on several occasions, including in 2012 when she was not able to leave officer training school at Marine Corps Base Quantico. *Id.* ¶¶ 7, 11.

Roughly three-quarters of America's 1.4 million active servicemembers are eligible to vote absentee by mail, including many members from Mississippi. *Id.* ¶ 8; Miss. Code § 23-15-673. Despite this right, active servicemembers vote at significantly lower rates than the national population. Goldbeck Decl. ¶ 10. Veteran voters also often face obstacles voting in person, either due to age or disability. *Id.* ¶¶ 8–9. These voters depend heavily on absentee voting, *id.*, which they are permitted to use under Mississippi law if they are over 65, temporarily or physically disabled, or qualify as a disabled war veteran and are in a hospital, *see* Miss. Code §§ 23-15-713(d)-(f), 23-15-673(1)(c).

Vet Voice dedicates significant resources, including money, personnel time, and volunteer effort, to improving military and veteran voter turnout rates. Goldbeck Decl. ¶ 14. It has developed a first-of-its kind military voter file containing approximately 14 million records of veterans and military family members, including records for thousands of voters in Mississippi. *Id.* ¶ 6. Vet

Voice uses this voter file to directly reach out to military voters, often by facilitating veteran-to-veteran communications. *Id.* ¶ 15. In the 2020 general election, Vet Voice sent over 2.5 million texts to 1.5 million military voters and saw a substantial increase in turnout among contacted voters versus non-contacted voters. *Id.* Vet Voice is actively building this voter file to prepare for voter education and mobilization efforts in the 2024 general election, including in Mississippi. *Id.* ¶ 16. On top of this, Vet Voice also engages in more traditional forms of voter engagement, including direct mailers, phone banking, rural radio advertising, and digital advertising. *Id.* ¶ 17. Given the importance of mail voting to Vet Voice's constituencies, these contacts often focus on educating military voters about how to vote by absentee, including by providing information about eligibility requirements, application deadlines, and deadlines for submitting ballots. *Id.* ¶ 19.

Vet Voice is extremely concerned that Plaintiffs' challenge, if successful, will make it harder for its supporters and constituents—including active-duty servicemembers and veterans— to successfully cast an absentee ballot in Mississippi. *Id.* ¶ 20. Absentee voters—and in particular active-duty servicemembers deployed overseas, in combat zones, or on ships and submarines— lack control over the mail, which is oftentimes unreliable for deployed members. *Id.* ¶¶ 12, 21. In addition to threatening Vet Voice's supporters and constituents, Plaintiffs' challenge also frustrates Vet Voice's effort to effectively plan voter engagement and mobilization efforts in Mississippi ahead of the 2024 election. *Id.* ¶¶ 16, 20. Mississippi has some of the most complex and stringent absentee voting laws in the nation, and Vet Voice must understand the relevant legal landscape before preparing its voter education efforts. *Id.* ¶ 19. It seeks to intervene in this case to protect the voting rights of its supporters and constituencies, settle the legal landscape for its voter education efforts ahead of the 2024 election, and protect its own significant expenditure of resources in promoting absentee voting. *Id.* ¶¶ 19–22.

*__The Alliance__*. The Alliance is the Mississippi chapter of the national Alliance for Retired Americans, a non-profit and non-partisan organization that has millions of members across the country. *See* Exhibit 2, Declaration of James Sims ("Sims Decl.") ¶¶ 3–4, ECF No. 6-2. In Mississippi, the Alliance has 1,400 members who pay dues directly to the organization, as well as a total of 20,530 members who it represents through formal affiliations with other organizations, including labor unions. *Id.* ¶ 4. Under these agreements, affiliated members are considered full members of the Alliance. *Id.* The Alliance's direct, dues-paying membership is overwhelmingly comprised of retirees over the age of 65, and its mission is to ensure that its members, and all retirees, enjoy a dignified retirement after a lifetime of work. *Id.* ¶¶ 5–6. To that end, its organization efforts are often focused on issues of particular concern to retirees, including Medicare and Medicaid, Social Security, and the cost of medicine. *Id.* ¶ 5.

Ensuring access to the ballot is also a critical piece of the Alliance's mission, and accordingly it dedicates significant effort to voter registration and voter education efforts. *Id.* ¶ 9. The Alliance, its members, and other volunteers undertake numerous activities to register and educate voters, including appearing at community events like health fairs and labor union conventions to register and educate voters. *Id*. The Alliance often partners with other non-partisan organizations to host these voter education events. *Id*. At these events, Alliance volunteers educate voters about requirements for voting, including the very complex requirements for absentee voting in Mississippi. *Id.* ¶ 10. The Alliance also hosts an annual convention, during which it often provides speakers and presentations about registering to vote and voting, including on the mechanics of absentee voting. *Id.* ¶ 11. The Alliance views this annual convention as a key event for mobilizing its members to register and to vote. *See id.* In addition to appearing at community events, the Alliance's members and volunteers also speak with family, friends, and neighbors

about registering to vote. *Id.* ¶ 12. The Alliance's members oftentimes assist friends or family members in completing absentee ballots, due to their familiarity with Mississippi voting rules. *Id.*

The Alliance's members are themselves highly reliant on absentee voting, particularly because Mississippi is one of only three states that do not offer early voting. *Id.* ¶¶ 5–6. James Sims, the President of the Alliance, estimates that approximately three-quarters of the group's membership votes by mail. *Id.* ¶ 6. These members choose to vote absentee for many reasons, including because they lack transportation or are not comfortable standing in long lines at polling places. *See id.* ¶ 8. Most of the Alliance's members are entitled to vote by mail either because they are over 65 years old or have a physical disability. Miss. Code § 23-15-713(d), (f).

If Plaintiffs' suit is successful, the Alliance's members will face heightened risk of having their absentee ballots rejected. Sims. Decl. ¶¶ 7–8. The Alliance seeks to intervene in this case to protect its members' right to cast absentee ballots under Mississippi law, as well as their right to vote generally. *Id.* ¶ 8. It also seeks to protect its ongoing voter education efforts, which require it to explain Mississippi's complex absentee voting rules to people across the state. *Id.* ¶ 14.

## ARGUMENT

### I.    Vet Voice and the Alliance are entitled to intervene as of right under Rule 24(a).

Rule 24(a)(2) permits a party to intervene as a matter of right if the following four elements are met: (1) the application for intervention is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest may be inadequately represented by the existing parties to the suit. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305, 307 (5th Cir. 2022) ("*LUPE*") (citing *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)); *see also* Fed. R. Civ. P. 24(a)(2). The Fifth Circuit has adopted a "broad policy favoring intervention," *LUPE*, 29 F.4th at 305

(quoting *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *4 (5th Cir. Mar. 22, 2022)), under

which "Rule 24 is to be liberally construed." *Id.* (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341

(5th Cir. 2014)). Vet Voice and the Alliance readily meet the "minimal burden" necessary to

comply with the requirements of Rule 24(a)(2). *LUPE*, 29 F.4th at 305 (citing *Miller*, 2022 WL

851782, at *4). They should accordingly be granted intervention as of right.

A.      **The motion is timely.**

The motion to intervene is clearly timely. Plaintiffs filed their Complaint on January 26,

2024. This motion follows only two weeks later, before any substantive activity in the case; indeed,

the Plaintiffs have not yet even completed service on most Defendants, *see* Reissued Summonses,

ECF No. 4. As a result, most Defendants' time to respond to the Complaint has not even begun to

run. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). To date, Plaintiffs have only confirmed service on the

Secretary of State, *see* Proof of Service on Sec'y of State Michael Watson, ECF No. 5, whose

response to the complaint is not due until February 26—more than two weeks from now. No named

Defendant has yet entered an appearance. The Court has also not yet scheduled an initial status

conference for the case. Given that these proceedings are truly at the outset, there is no possible

risk of prejudice to the other parties and this factor is decidedly met.

B.      **The case threatens to impair Proposed Intervenors' significant interest in promoting and protecting their members' and constituents' voting rights.**

Vet Voice and the Alliance also satisfy the second and third requirements for intervention

because they have significant protectable interests in this lawsuit, and the action threatens to impair

their ability to protect those interests. Under Rule 24(a)(2), "an interest is sufficient if it is of the

type that the law deems worthy of protection, even if the intervenor does not have an enforceable

legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659.

Vet Voice and the Alliance therefore need not show they have "standing" to intervene, but instead

only that they have a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) (internal quotation omitted). This interest need not be a "pecuniary or property interest," *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987); it is sufficient that a prospective intervenor "has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657. Furthermore, in cases such as this that "involve[e] 'a public interest question' that is 'brought by a public interest group,' the 'interest requirement may be judged by a more lenient standard.'" *LUPE*, 29 F.4th at 305–06 (quoting *Brumfield*, 749 F.3d at 344).

Vet Voice and the Alliance easily satisfy these requirements. Plaintiffs' challenge to Mississippi's Ballot Receipt Deadline seeks to restrict the ability of Vet Voice's and the Alliance's members, subscribers, and constituents to successfully cast an absentee ballot in Mississippi's elections. *See* Compl. at 14 (seeking to enjoin § 23-15-637(1)(a)). Both Vet Voice and the Alliance serve communities that are heavily reliant on absentee ballots to vote and, indeed, are specially entitled to do so under Mississippi law. Vet Voice, for example, spends significant resources to promote voting among veterans, active service members, and military family members. Goldbeck Decl. ¶ 14. Because active service members and their families are often stationed away from their homes, they depend on absentee voting to participate in elections. *Id.* ¶ 18. Mississippi law recognizes this need by specifically allowing absentee voting for such "enlisted or commissioned members" of the various military service branches, alongside their family members and other civilians deployed with the armed forces. Miss. Code § 23-15-673. Similarly, many veterans in Mississippi rely on absentee voting as well, Goldbeck Decl. ¶ 9, and are often entitled to do so because they are over the age of 65, Miss. Code § 23-15-713(f); have suffered a physical disability (often through military service), *id.* § 23-15-713(d); or because they qualify as a disabled war

veteran and are a patient at a hospital, *id.* § 23-15-673(1)(c). Vet Voice's military voter file includes thousands of Mississippi servicemembers, veterans, and military family members who may be eligible to vote absentee, Goldbeck Decl. ¶ 6, along with thousands of subscribers in the state whom the group seeks to mobilize in furtherance of its mission, *id.* ¶ 4. Vet Voice's mission is to ensure each of these people has full access to the ballot box and that military voters are heard at the polls. *Id.* ¶¶ 5–6.

Similarly, the Alliance has many members in Mississippi who choose to vote absentee due to the greater obstacles they face voting in person, whether due to age or disability. Sims Decl. ¶¶ 6, 8. Roughly three-quarters of the group's members vote absentee because, among other reasons, they lack transportation or are not comfortable standing in long lines at polling places. *Id.* ¶ 6. Most of the Alliance's members are entitled to vote absentee either because they are over 65 years old or have a physical disability. Miss. Code § 23-15-713(d), (f). If Plaintiffs succeed, the Alliance's members will face heightened risks of having their ballots rejected. Sims Decl. ¶¶ 7–8. Ensuring access to the ballot is a critical piece of the Alliance's mission. *Id.* ¶ 5.

Plaintiffs expressly seek a federal judicial order that would prohibit Mississippi from counting any absentee ballots that are received after election day, even if they were timely cast—as evidenced by a postmark on or before election day—and even where events outside of the voter's control delay arrival of their ballots. If successful, Plaintiffs' suit will directly threaten the voting rights of the communities Vet Voice and the Alliance serve, as well as the Alliance's individual members. Goldbeck Decl. ¶¶ 20–22; Sims Decl. ¶¶ 7–8, 14. Accordingly, Proposed Intervenors have an important protectable interest that they may assert on behalf of their members, supporters, and constituents where, as here, litigation threatens to "abrogate[]" their unique "right to vote in elections" by absentee ballot. *League of United Latin Am. Citizens, Dist. 19 v. City of*

*Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding voting right interest was "a sufficient interest to satisfy Rule 24(a)(2)"); *see also Texas*, 805 F.3d at 658–59 (explaining the "interest in vindicating [the]personal right to vote was sufficiently concrete and specific to support intervention" (citing *City of Boerne*, 659 F.3d at 434)). Vet Voice and the Alliance likewise, as organizations, have important interests in protecting their members', subscribers', and constituents' ability to vote by absentee ballot. *Cf. Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 573–74 (6th Cir. 2004) (holding the risk that some voters will be disenfranchised confers standing upon labor organizations and political parties); *see also Edwards*, 78 F.3d at 1004 (police union had interest based on promotion rules for members); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (trade group had sufficient interest based on property interests of members they represented).

Both groups also have additional significant protectable interests in this lawsuit because the relief Plaintiffs seek will impact how Vet Voice and the Alliance allocate their resources, including financial resources as well as volunteer and staff time, as they prepare to educate and turn out their members and constituents for the 2024 elections. Both organizations are in the process of preparing their voter engagement and get-out-the-vote campaigns for 2024, and plan to devote significant resources to encourage their members and supporters in Mississippi to apply for absentee ballots, and to assist them in successfully casting those ballots. Goldbeck Decl. ¶ 19; Sims Decl. ¶ 13. Those expenditures are themselves a "legally protectable interest" warranting intervention. *LUPE*, 29 F.4th at 306 (holding party committees had a "legally protectable interest" sufficient to intervene in an action challenging rules for poll watchers because they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process"). Plaintiffs' suit seeks to "change[] the legal landscape," *id.*, for Vet

14

Voice's and the Alliance's resource-intensive efforts to encourage and assist voters casting absentee ballots. Goldbeck Decl. ¶¶ 19–20; Sims Decl. ¶¶ 13–14. They seek to intervene in this case, in part, to avoid the disruption that Plaintiffs' requested relief would cause to their voter education and engagement plans for the upcoming general election. *See Cnty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (granting intervention where plaintiffs' requested relief would require "the expenditure of additional time and resources" by intervenors and their members (internal citation omitted)); *cf. Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law required organization "to retool [its] [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

Vet Voice's and the Alliance's abilities to protect their interests, as well as the interests of their members and constituents, will be significantly impaired if they are not permitted to intervene. Plaintiffs do not seek relief impacting themselves alone. Rather, they seek immediate injunctive and declaratory relief that, if granted, will likely determine the rules for *all* Mississippi absentee voters in the forthcoming 2024 general election and beyond. Many of the people served by Vet Voice and the Alliance, as well as the Alliance's members, plan to vote absentee in the 2024 general election, and both organizations are currently preparing their voter outreach and get-out-the-vote strategies for that election in Mississippi. Goldbeck Decl. ¶ 16; Sims Decl. ¶¶ 7, 13. This case will likely set the rules of the road for those efforts, and Vet Voice, the Alliance, and the communities they serve in Mississippi will have no other opportunity to weigh in on Plaintiffs' attempt to rewrite state election law.

Simply put, the law Plaintiffs seek to overturn—Miss. Code § 23-15-637(1)(a)—"grants rights to [the Proposed Intervenors] and their members that could be taken away if the plaintiffs

prevail." *LUPE*, 29 F.4th at 307 (holding political committees "established that their interest may be impaired" where litigation impacted "election landscape"). Vet Voice and the Alliance are not required "to wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Brumfield*, 749 F.3d at 344–45 (explaining that the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions"). They have readily shown that Plaintiffs' claims, if granted, "'may' impair or impede their ability to protect their interests." *Id.* at 344 & n.2 (explaining the "burden is minimal" to meet the impairment requirement (citing *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)).

**C.**     **Proposed Intervenors' interests are not adequately represented by the existing parties in this case.**

Finally, Vet Voice's and the Alliance's interests are not adequately represented by the existing, named Defendants. Courts are typically "liberal in finding" this requirement is met because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1909 (3d ed.). The Supreme Court has thus held that this "requirement . . . is satisfied if the applicant shows that representation of his interest '*may be*' inadequate." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972) (emphasis added). The Fifth Circuit has repeatedly stressed, in reversing orders denying intervention, that this burden "should be treated as minimal," *see, e.g.*, *LUPE*, 29 F.4th at 308–09 (finding element satisfied and reversing lower court's order denying intervention); *Miller*, 2022 WL 851782, at *2 (same); *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (same); *Brumfield*, 749 F.3d at 345 (same); *Edwards*, 78 F.3d at 1005 (same); *Espy*, 18 F.3d at 1207 (same). Vet Voice and the Alliance more than meet that minimal burden here.

The existing Defendants to this action are all Mississippi public officials. As such, they "must represent the broad public interest," and "not just the" acute "concerns" that Vet Voice and the Alliance have in promoting absentee voting among their members and specific constituencies. *Espy*, 18 F.3d at 1207; *accord Trbovich,* 404 U.S. at 538–39 (observing government defendant had "an obligation to protect the vital public interest" in contrast to the "narrower interest" of a private party (cleaned up)). Whereas the public official Defendants have a "broad public mission" in defending Mississippi's statutes, Vet Voice's and the Alliance's specific interests are in "protecting [their] members'" and supporters' voting options to the maximum extent possible. *Wal-Mart Stores*, 834 F.3d at 569 (granting intervention); Goldbeck Decl. ¶¶ 5–6; Sims Decl. ¶ 5. Such competing public and private interests do "not align precisely," which is enough to satisfy Rule 24(a). *Brumfield*, 749 F.3d at 345–56 (final element under Rule 24(a) satisfied where proposed intervenors' "only concern" was their own economic interests rather than "the state's more extensive interests").

The Supreme Court emphasized these distinct interests recently in *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2203 (2022). There, several civil rights groups sued the North Carolina State Board of Elections over recently enacted election legislation. *Id.* at 2198. Although the state board was represented by the Attorney General, several legislators sought to intervene to defend the law. *Id.* The Fourth Circuit held *en banc* that the legislators could not intervene because their interests were adequately represented by the state board and Attorney General. *Id.* at 2199. The Supreme Court reversed. It noted at the outset that this requirement "presents proposed intervenors with only a minimal challenge," *id*. at 2195, and explained that while public officials may have "related" interests to more politically-motivated actors, those interests are not "identical," *id.* at 2204 (quoting *Trbovich*, 404 U.S. at 538–39). In contrast to the

more private or partisan concerns of the legislators, the state board and Attorney General were obliged to "bear in mind broader public-policy implications." *Id.* The same is true here—Proposed Intervenors' private interests in serving their members differ qualitatively from the "public-policy implications" likely to inform Defendants' litigation strategy. *Id.*; Goldbeck Decl. ¶¶ 5–6, 19–22; Sims Decl. ¶¶ 5–6.

It is therefore immaterial that Vet Voice and the Alliance would "fall on the same side of the dispute" as the existing Defendants—which is always the case with intervention. *Issa v. Newsom*, No. 220CV01044MCECKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). "While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their . . . members [and supporters] . . . have the opportunity to vote" by absentee ballot and in "allocating their limited resources to inform voters about the election procedures." *Id.*; *cf. Democratic Party of Va. v. Brink*, No. 3:21-cv-756-HEH, 2022 WL 330183, at *2 (E.D. Va. Feb. 3, 2022) (observing that the "[state's] interests are to defend [the state's] voting laws no matter the political repercussions while [intervenor's] interest is to defend the voting laws when doing so would benefit its" supporters).

Moreover, Vet Voice and the Alliance have reason to believe that they will present a substantially different perspective on the issues raised in this litigation than the existing Defendants. Proposed Intervenors' missions include promoting access to absentee voting in Mississippi to the maximum extent possible in order to enfranchise the communities they serve. Goldbeck Decl. ¶¶ 5, 21–23; Sims Decl. ¶ 5. In contrast, Defendant Watson—Mississippi's chief

election officer, Compl. ¶ 24—has supported laws restricting absentee voting.[8] During the height of the COVID-19 pandemic, Secretary Watson took a narrow view of the state's existing absentee voting laws and opposed reading them to permit those at heightened risk from COVID-19 from voting absentee on that basis alone.[9] This, in turn, led to legal challenge from groups that—like Vet Voice and the Alliance—believe in promoting widespread access to mail voting. *See generally Parham v. Watson*, No. 3:20-cv-00572-DPJ-FKB (N.D. Miss. 2020). Vet Voice and the Alliance do not suggest that Secretary Watson's prior statements or positions mean he will not litigate this matter in good faith, but it is plain that he and the Proposed Intervenors hold starkly different views about issues germane to this case. *See, e.g.*, Goldbeck Decl. ¶¶ 5–6; Sims Decl. ¶¶ 7–8. Accordingly, Vet Voice and the Alliance "may present arguments about the need to safeguard [Mississippians'] right to vote that are distinct from Defendants' arguments." *Paher v. Cegavske*, No. 3:20-CV-00243-MMD-WGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (granting intervention even where intervenors and defendants "share[d] the goal of protecting [] all-mail election provisions" under Nevada law); *cf. Ohio River Valley Env't. Coal., Inc. v. Salazar*, No. 3:09-0149, 2009 WL 1734420, at *1 (S.D.W. Va. June 18, 2009) (granting motion where "difference in degree of interest could motivate the [intervenor] to mount a more vigorous defense" and "[t]he possibility that this difference in vigor could unearth a meritorious argument overlooked by the current Defendant justifies the potential burden on having an additional party in litigation").

These distinct perspectives and interests are "sufficient to demonstrate that the

---

[8] *See* Emily Wagster Pettus, *Mississippi absentee ballot law harms voters with disabilities, lawsuit says*, AP (June 2, 2023), https://apnews.com/article/mississippi-elections-absentee-ballots-lawsuit-ba927cf08dd9d69e3fd122bce7472dd2.

[9] *See* Emily Wagster Pettus, *Mississippi elections chief opposes more mail-in voting*, AP (June 3, 2020), https://apnews.com/article/3251eb444816c710a770134c37dfca29 ("Mississippi Secretary of State Michael Watson said . . . that he opposes widespread use of mail-in voting, even during the coronavirus pandemic").

representation *may* be inadequate," and accordingly this final requirement of Rule 24(a)(2) is also met. *Brumfield*, 749 F.3d at 346.

## II.    Alternatively, the Court should grant permissive intervention under Rule 24(b).

Vet Voice and the Alliance also satisfy the requirements for permissive intervention. Rule 24(b) permits intervention upon timely application when the "applicant's . . . defense and the main action have a question of law or fact in common." *Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006) (internal citation omitted). The Fifth Circuit "has accepted that the claim or defense portion of Rule 24(b) is to be construed liberally." *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023) (cleaned up).

In exercising their discretion to permit intervention, courts "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 389 (5th Cir. 1999) (quoting Fed. R. Civ. P. 24(b)). Courts routinely grant permissive intervention to voting rights and other advocacy organizations in actions involving burdens on voting rights. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organization to intervene in an action brought to compel local election officials to purge the voter rolls of ineligible voters); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (allowing voting rights, civil rights, and other advocacy organizations to intervene in an action brought to compel voter registration applications to submit proof-of-citizenship documents); *see also League of Women Voters of N. Carolina v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014) (permitting individual voters to intervene in action challenging a series of restrictions on voting). Indeed, one district court recently granted permissive intervention to organizations that, like Vet

Voice and the Alliance, "engage in voter advocacy and education to increase voting participation in elections" in a case raising substantially similar legal questions about the meaning of the federal election day statutes. *Donald J. Trump for President, Inc. v. Murphy*, No. CV-20-10753 (MAS) (ZNQ), 2020 WL 6573382, at *2 (D.N.J. Sept. 23, 2020).

  As discussed above, Plaintiffs' challenge to Mississippi's Ballot Receipt Deadline threatens significant harm to Vet Voice's and the Alliance's legally protected interests, and the motion to intervene is indisputably timely. Vet Voice and the Alliance raise arguments against Plaintiffs' claims that are likely to share common questions of law and fact with the main action, including with respect to the Plaintiffs' flawed standing theories and the discredited reading of federal law upon which Plaintiffs base their entire suit. *See generally* Proposed Intervenors Proposed Motion to Dismiss, ECF Nos. 6-3, 6-4.

  Most importantly, intervention will result in neither prejudice nor undue delay. As shown by their prompt effort to intervene, Vet Voice and the Alliance have an interest in swift resolution of this action to ensure that every eligible Mississippian—and particularly those in the communities the two organizations serve—is able to cast a ballot and have that ballot counted in the coming election. Recognizing this urgency, Vet Voice and the Alliance have already prepared and attached to this motion a proposed Motion to Dismiss, weeks before Defendants—most of whom, according to the docket, have not yet been served—are required to do so. *See generally* Proposed Intervenors' Proposed Motion to Dismiss; *see also* Reissued Summonses, ECF No. 4. This briefing provides the Court with numerous bases, under both Rule 12(b)(1) and Rule 12(b)(6), to resolve this case in full, illustrating how Vet Voice and the Alliance's intervention in this this case will help facilitate—rather than hinder—the expeditious resolution of this litigation.[10]

---

[10] Moreover, Vet Voice and the Alliance agree to be bound by any case schedule set by the Court.

**CONCLUSION**

For the reasons stated above, Vet Voice and the Alliance respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b). A proposed pleading—Vet Voice and the Alliance's Proposed Motion to Dismiss—is attached hereto, setting forth the defenses and arguments for which intervention is sought.

Dated: February 9, 2024                              Respectfully submitted,

                                                     */s/ Robert B. McDuff*
                                                     Robert B. McDuff
                                                     Paloma Wu
                                                     **MISSISSIPPI CENTER FOR JUSTICE**
                                                     210 E. Capitol Street
                                                     Suite 1800
                                                     Jackson, MS 39201
                                                     Phone: (601) 259-8484
                                                     Fax: (601) 352-4769
                                                     rmcduff@mscenterforjustice.org
                                                     pwu@mscenterforjustice.org

                                                     *Counsel for Proposed-Intervenors Vet Voice*
                                                     *Foundation and the Mississippi Alliance for*
                                                     *Retired Americans*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum Brief in Support of Vet Voice Foundation's and the Mississippi Alliance for Retired Americans' Motion to Intervene has been filed with the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

Dated: February 9, 2024

*/s/ Robert B. McDuff*
Robert B. McDuff
*Counsel for Proposed-Intervenors Vet Voice Foundation and the Mississippi Alliance for Retired Americans*