**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION GULFPORT**

REPUBLICAN NATIONAL COMMITTEE;
MISSISSIPPI REPUBLICAN PARTY;
JAMES PERRY; and MATTHEW LAMB,

      *Plaintiffs*,

      vs.

JUSTIN WETZEL, *in his official capacity as
the clerk and registrar of the Circuit Court of
Harrison County*; TONI JO DIAZ, BECKY
PAYNE, BARBARA KIMBALL,
CHRISTENE BRICE, and CAROLYN
HANDLER, *in their official capacities as
members of the Harrison County Election
Commission*; and MICHAEL WATSON, *in
his official capacity as the Secretary of State
of Mississippi*,

      *Defendants*.

**No. 1:24-cv-25-LG-RPM**

**<u>PROPOSED INTERVENOR-DEFENDANTS DISABILITY RIGHTS MISSISSIPPI AND
LEAGUE OF WOMAN VOTERS OF MISSISSIPPI'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO INTERVENE</u>**

**TABLE OF CONTENTS**

Page

FACTUAL BACKGROUND ................................................................................................ 1

I.      STATUTORY BACKGROUND ................................................................................ 1

II.     PROPOSED INTERVENOR-DEFENDANTS ......................................................... 2

ARGUMENT ...................................................................................................................... 4

I.      PROPOSED INTERVENOR-DEFENDANTS ARE ENTITLED TO
        INTERVENE AS OF RIGHT UNDER RULE 24(A)(2). ....................................... 4

        A.      Proposed Intervenor-Defendants' Motion Is Timely. ............................... 5

        B.      Proposed Intervenor-Defendants Have a Substantial Legal Interest in the
                Case. ........................................................................................................... 7

        C.      Proposed Intervenor-Defendants' Ability to Protect Their Interests Will Be
                Impaired Absent Intervention. .................................................................. 9

        D.      Defendants Inadequately Represent Proposed Intervenor-Defendants'
                Interests. .................................................................................................... 10

II.     ALTERNATIVELY, PROPOSED INTERVENOR-DEFENDANTS SHOULD
        BE GRANTED PERMISSIVE INTERVENTION UNDER RULE 24(B). ................... 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Prof. Flight Attendants v. Gibbs*,
  804 F.2d 318 (5th Cir. 1986) ....................................................................................6

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) ........................................................................... *passim*

*Diaz v. S. Drilling Corp.*,
  427 F.2d 1118 (5th Cir. 1970) ..................................................................................5

*Doe No. 1 v. Glickman*,
  256 F.3d 371 (5th Cir. 2001) ..................................................................................12

*Donald J. Trump for President, Inc. v. Murphy*,
  No. CV-20-10753 (MAS) (ZNQ), 2020 WL 6573382 (D.N.J. Sept. 23, 2020) ....................14

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) ....................................................................................6

*Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*,
  817 F.3d 198 (5th Cir. 2016) ..................................................................................11

*Florida v. United States*,
  820 F. Supp. 2d 85 (D.D.C. 2011) ............................................................................15

*United States ex rel Hernandez v. Team Fin., L.L.C.*,
  80 F.4th 571 (5th Cir. 2023) ..............................................................................13, 14

*Kobach v. U.S. Election Assistance Comm'n*,
  No. 13-CV-4095-EFM-DJW, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) .........................14

*La. State Conf. of NAACP v. Louisiana*,
  No. CV 19-479-JWD-SDJ, 2022 WL 2663850 (M.D. La. July 11, 2022) ..............................6

*La Union del Pueblo Entero v. Abbott*,
  29 F.4th 299 (5th Cir. 2022) .......................................................................... *passim*

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
  659 F.3d 421 (5th Cir. 2011) ....................................................................................7

*McCutcheon v. FEC*,
  572 U.S. 185 (2014)..................................................................................................7

*McDonald v. E. J. Lavino Co.*,
    430 F.2d 1065, 1073 (5th Cir. 1970) ............................................................6

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) (en banc) ......................................................13

*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) ......................................................................4

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ....................................................................12

*Sierra Club v. Glickman*,
    82 F.3d 106 (5th Cir. 1996) ......................................................................12

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ...............................................................5, 6, 7

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ......................................................................7

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)..................................................................................11

*United States v. Classic*,
    313 U.S. 299 (1941)....................................................................................7

**Statutes**

42 U.S.C. § 15043(a)(2)(A)(i) ..............................................................3, 8

Miss. Code Ann. § 23-15-629..............................................................2, 3

Miss. Code Ann. § 23-15-637(1) ....................................................... *passim*

Miss. Code Ann. § 23-15-713..............................................................1, 2

**Other Authorities**

Miss. House of Representatives, Yeas and Nays on H.B. 1521, 2020 Reg. Sess.
    (June 15, 2020)
    https://billstatus.ls.state.ms.us/2020/pdf/votes/house/0640030.pdf............................................2

Miss. State Senate, Yeas and Nays on H.B. 1521, 2020 Reg. Sess. (June 15,
    2020), https://billstatus.ls.state.ms.us/2020/pdf/votes/senate/1610021.pdf..............................2

Fed. R. Civ. P. 24................................................................................... *passim*

iii

Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 11:*
*Receipt and Postmark Deadlines for Absentee/Mail Ballots* (last updated July
12, 2022), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-
and-postmark-deadlines-for-absentee-mail-ballots....................................................................2

Proposed Intervenor-Defendants Disability Rights Mississippi ("DRMS") and League of Woman Voters of Mississippi (the "League") move to intervene in this action as defendants to safeguard their members' rights to vote and have that vote counted, and to protect their institutional interests in promoting democratic participation in Mississippi.

Proposed Intervenor-Defendants are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) because: (i) the motion is timely, filed before an substantive deadlines in the case; (ii) they have a substantial legal interest in the subject matter of the pending action, *i.e.,* protecting their members' right to have their timely mailed absentee ballots counted, and their ability to protect their interests in ensuring their members and constituencies can access the absentee voting process without increased risk of disenfranchisement; and (iii) the named Defendants may inadequately represent Intervenor-Defendants' interests in vigorously defending the statute because the named Defendants represent broader interests and may hold different views about the value of the challenged statute or have different priorities in seeking to defend it. Alternatively, the Court should permit Proposed Intervenor-Defendants to intervene under Federal Rule of Civil Procedure 24(b)(1)(B) because this will not prejudice the other parties and the Intervenor-Defendants' motion shares common questions of law and fact.

Accordingly, the Court should grant Proposed Intervenor-Defendants' motion to intervene.

## **FACTUAL BACKGROUND**

### I.     **Statutory Background**

Mississippi permits absentee voting by mail for any qualified voter that falls within certain enumerated categories. *See* MISS. CODE ANN. § 23-15-713. Those categories include: voters who are temporarily residing away from their county of residence on Election Day; voters who are unable to vote in person without hardship due to a "temporary or permanent physical disability" (and, if those voters are hospitalized away from home on election days, their family members);

1

any voter who is 65 or older; and certain military members, veterans, and their families.  *Id.* §§ 23-15-673, 23-15-713(a)–(g). Mississippi law further entitles voters with permanent disabilities to register "to automatically receive an absentee ballot for all elections on a continuing basis without the necessity for reapplication." *Id.* § 23-15-629(2).

In 2020, the Mississippi Legislature nearly unanimously and on a bipartisan basis passed a law setting rules for the counting of absentee ballots.  *See* MISS. CODE ANN. § 23-15-637(1).[1]  That common sense law permits absentee ballots received by mail to be counted so long as they are postmarked on or before Election Day and are received by election officials no more than five days after Election Day. *Id.* As a result, Mississippi is one of 19 states (including the District of Columbia) that allow receipt of mail ballots that were postmarked on or before Election Day for a certain period after Election Day.[2]

## II.    Proposed Intervenor-Defendants

Proposed Intervenor-Defendants DRMS and the League are Mississippi-based organizations with significant institutional interests in the outcome of this matter.

**Disability Rights of Mississippi.**  DRMS is Mississippi's Protection and Advocacy agency ("P&A") and is authorized to pursue legal action on behalf individuals with disabilities in the State to protect their rights. 42 U.S.C. § 15043(a)(2)(A)(i); Declaration of Polly Tribble on Behalf of DRMS ("Tribble Decl."), attached as Ex. A, ¶¶ 4–5. This includes all Mississippians with

---

[1] All members of the Mississippi Senate voted in favor, *see* Miss. State Senate, Yeas and Nays on H.B. 1521, 2020 Reg. Sess. (June 15, 2020), https://billstatus.ls.state.ms.us/2020/pdf/votes/senate/1610021.pdf; and only one member of the Mississippi House of Representatives opposed the bill, *see* Miss. House of Representatives, Yeas and Nays on H.B. 1521, 2020 Reg. Sess. (June 15, 2020), https://billstatus.ls.state.ms.us/2020/pdf/votes/house/0640030.pdf.

[2] Those states include Alaska, California, D.C., Illinois, Kansas, Maryland, Massachusetts, Mississippi, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Oregon, Texas, Virginia, Washington, West Virginia. *See* Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots* (last updated July 12, 2022), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots [perma.cc/DD36-TBVY]. Utah also permits post-Election-Day receipt of absentee ballots, so long as they were postmarked by day before Election Day. *Id.* Puerto Rico and the Virgin Islands also permit absentee ballots to be counted when received after Election Day. *Id.*

disabilities who rely on absentee voting to exercise their right to vote. *Id.* ¶¶ 11–12, 14. Mississippi law specifically recognizes that many of these individuals face severe hardships that make it difficult for them to vote in person. *See* Miss. Code Ann. § 23-15-629(1). Many voters with disabilities not only depend on absentee voting, but also on the current ballot receipt deadline. Tribble Decl. ¶¶ 15–16. The predictability and greater leeway afforded by the current ballot receipt deadline "plays a pivotal role in accommodating the unique challenges faced by individuals with disabilities . . . , such as transportation constraints and physical impediments." *Id.* ¶ 15. DRMS has a critical interest in ensuring that Mississippi's absentee ballot receipt deadline is not enjoined, as it would substantially increase the risk that Mississippians with disabilities will be disenfranchised at disproportionate levels. *Id.* ¶¶ 16–17. DRMS works to educate voters on their voting rights through trainings and informational materials, including about procedures and opportunities for absentee voting. *Id.* ¶¶ 12, 18–19.

If Plaintiffs' requested relief is granted, DRMS's members will likewise face substantially increased risk of disenfranchisement, and DRMS would need to expend additional resources to update those materials and trainings, and to warn individuals with disabilities that they face a higher risk of disenfranchisement if they vote by absentee ballot. *Id.* ¶¶ 16, 20.

**The League of Women Voters of Mississippi.** The League is a grassroots membership organization that seeks to involve citizens in the civic process, including by helping Mississippi voters navigate the absentee voting process. Declaration of Margaret Ciraldo on Behalf of LWVMS ("Ciraldo Decl."), attached as Ex. B, ¶ 7. The League has almost 200 members in the state, a significant number of whom are eligible to vote by absentee ballot and many of whom who do so. *Id.* ¶ 9. The League dedicates significant resources to voter service projects, voter registration, get out the vote efforts, and public education about elections. *Id.* ¶ 10. The League

also promotes VOTE411.org, a national initiative of the League of Women Voters Education Fund that provides voters with information needed to successfully participate in every local, state, and federal election. *Id.* ¶¶ 12–13. In Mississippi, this includes providing digital resources on the absentee voting process. *Id.* ¶ 13. LWV-MS also distributes information flyers, posts on its website and social media accounts, and speaks to voters about the timeline for absentee voting, including Mississippi's post-Election-Day receipt deadline for absentee ballots. *Id.* ¶ 14.

If Plaintiffs' requested relief is granted, it will substantially increase the risk that League members will be disenfranchised if they mail their absentee ballots close to Election Day. *Id.* ¶ 17. Further, the League expends resources to create informational materials and train volunteers to educate members about absentee voting procedures in Mississippi. *Id.* ¶ 13. The League would need to expend significant additional resources to update those materials and trainings, and to warn members about heightened disenfranchisement risks of returning absentee ballots, should Plaintiffs succeed. *Id.* ¶ 18. Accordingly, the League moves to intervene to protect its members' rights to mail absentee ballots and protect its ongoing education efforts.

## ARGUMENT

### I.     Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Under Rule 24(a)(2).

Under Rule 24(a) of the Federal Rules of Civil Procedure, a non-party "is entitled to intervention as of right if: (1) the application for intervention is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest is inadequately represented by the existing parties to the suit." *Rotstain v. Mendez*, 986 F.3d 931, 936–37 (5th Cir. 2021) (cleaned up); Fed. R. Civ. P. 24(a). Although the party seeking to intervene "bears the burden of establishing its right

to intervene, Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). As such, "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (internal quotation marks omitted).

Proposed Intervenor-Defendants satisfy each of the four elements for intervention as of right.

### A.   Proposed Intervenor-Defendants' Motion Is Timely.

The motion to intervene is timely. The timeliness of intervention "is to be determined from all the circumstances." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (citation omitted).   The Fifth Circuit has articulated a four-factor test for evaluating the timeliness of a motion to intervene: (1) the amount of time during which intervenors "actually know or reasonably should have known of [their] interest in the case;" (2) how much prejudice existing parties may suffer as a result of intervenors' failure to request intervention "as soon as [they] knew or reasonably should have known about [their] interest in the action;" (3) the amount of prejudice that would be suffered by the intervenors if their request is denied; and (4) "the existence of unusual circumstances militating either for or against a determination that the application is timely." *Id.* at 264–66. Here, timeliness is an open-and-shut issue, as Proposed Intervenor-Defendants seek intervention well before any "legally significant proceedings" in the case, *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970), and each *Stallworth* factor counsels in favor of intervention.

The first *Stallworth* factor examines the duration of time that intervenors "actually know or reasonably should have known of [their] interest in the case." 558 F.2d at 264. Here, minimal time has passed since Proposed Intervenor-Defendants could have possibly learned of this litigation, much less known of *their interest* in it. *See id.* at 265 (explaining that "the time that the

5

would-be intervenor first became aware of the pendency of the case is not relevant to the issue of whether his application was timely"). The complaint was filed on January 26, 2024, *see* Compl. [ECF No. 1]—less than four weeks ago—and this case is still in its infancy. Notably, "[t]he Fifth Circuit has found motions to intervene filed both close to and longer than two months [after learning of one's interest in a matter] were timely." *La. State Conf. of NAACP v. Louisiana*, No. CV 19-479-JWD-SDJ, 2022 WL 2663850, at *6 (M.D. La. July 11, 2022); *see, e.g.*, *Ass'n of Prof. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (five-month lapse found not unreasonable); *cf. Stallworth*, 558 F.2d at 257 (movants acted quickly by seeking intervention less than one month after district court entered consent order).

The second and third *Stallworth* factors concern prejudice: the degree of prejudice existing parties may suffer as a result of intervenors' failure to request intervention "as soon as [they] knew or reasonably should have known about [their] interest in the action," and the amount of prejudice that would be suffered by the intervenors if their request is denied. 558 F.2d at 264–65. "In fact, [prejudice] may well be the only significant consideration when the proposed intervenor seeks intervention of right." *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970). Here, the few weeks between filing of the complaint and this motion will cause no prejudice to the existing parties, as no deadlines have yet arisen, and Proposed Intervenor-Defendants do not and will not seek to alter any deadlines. Rather, Proposed Intervenor-Defendants intend to seek dismissal of this action in accordance with the Federal Rules of Civil Procedure. Because intervention will not delay resolution of the litigation, intervention does not prejudice the parties and should be allowed. *Cf. Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) ("[T]hat these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered

in the litigation."). By contrast, Proposed Intervenor-Defendants will face substantial prejudice if they cannot intervene to protect the voting rights of their members, as discussed further below.

Finally, there are no "unusual circumstances militating either for or against a determination that the application is timely." *Stallworth*, 558 F.2d at 265–66.

Accordingly, the *Stallworth* factors support a finding of timeliness.

### B. Proposed Intervenor-Defendants Have a Substantial Legal Interest in the Case.

The Proposed Intervenor-Defendants also satisfy the second requirement for intervention. The Fifth Circuit has explained that a substantial legal interest is "an interest that is concrete, personalized, and legally protectable." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). "[T]he inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* at 657. Moreover, because this case "involves a public interest question" and Proposed Intervenor-Defendants are "public interest group[s]," "the interest requirement may be judged by a more lenient standard" and this factor "easily supports intervention." *Brumfield*, 749 F.3d at 344 (cleaned up).

The right to vote in an election and have one's vote counted qualifies as a substantial legal interest. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) (intervenor had substantial interest in "his right to vote in elections"). Indeed, "[t]here is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014). Included within the right to vote "secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941).

Plaintiffs seek an injunction requiring the rejection of all absentee ballots received after Election Day, regardless of when they were postmarked. Accordingly, each Proposed Intervenor-

Defendant seeks to protect a strong legal interest to help its members to vote. For example, the League seeks to intervene to protect its strong interest in ensuring its members' ability to vote absentee without facing a greater risk of disenfranchisement. The League's membership includes a substantial number of Mississippi voters over 65 years old and others who are eligible to vote absentee and choose to exercise that right. Ciraldo Decl. ¶ 9. Similarly, DRMS—in its capacity as Mississippi's P&A, which authorizes it to pursue legal action on behalf of the rights of individuals with disabilities in the State, 42 U.S.C. § 15043(a)(2)(A)(i)—seeks intervention to defend its strong interest in ensuring that Mississippians with disabilities can vote by absentee ballot without a greater risk of being disenfranchised. *See* Tribble Decl. ¶¶ 4–5. Indeed, these individuals that DRMS represents disproportionately vote by absentee ballot because, among other reasons, they cannot vote in person, may face transportation issues, and cannot stand in line. *See id.* ¶¶ 11–12, 14–15. If Plaintiffs prevail, the Proposed Intervenor-Defendants will risk disenfranchisement.

In addition, each Proposed Intervenor-Defendant seeks to fulfill their missions. *See* Tribble Decl. ¶¶ 8, 10; Ciraldo Decl. ¶ 7. This interest in "increasing participation in the democratic process" as well as keeping the current law in place to ensure that eligible Mississippians can access absentee balloting without a greater risk of having their votes rejected constitutes another basis for finding a sufficient legal interest in this case. *Cf. La Union del Pueblo Entero*, 29 F.4th at 306 (holding that partisan committees had satisfied interest requirement to intervene as defendants in case challenging poll watcher statute because they "expend significant resources" related to poll watching and "many of the claims brought by the plaintiffs could affect the Committees' ability to participate in and maintain the integrity of the election process"). Here, LWV-MS has already devoted significant resources to preparing for Mississippi's upcoming elections, including the 2024 presidential election, and a ruling in Plaintiffs' favor would require

LWV-MS to shift their resources away from voter registration, get out the vote efforts, and other voter outreach, and instead require LWV-MS to educate voters about the elimination of the absentee ballot receipt deadline. Ciraldo Decl. ¶ 19. DRMS's interests in its voter education and outreach work are similarly at stake in this litigation, as the organization has already dedicated resources to organizing voter registration events, planning educational outreach, and "creating Election Day services" to address requests and concerns of voters with disabilities, ranging from difficulty accessing polling locations, to issues navigating the absentee voting process, to obtaining proper voter ID. Tribble Decl. ¶¶ 11–13. They seek to intervene to avoid disruption that Plaintiffs' requested relief will cause to their voter education and assistance efforts already under way in the upcoming election. *Id.* ¶ 20.

Accordingly, Proposed Intervenor-Defendants have a legal interest in the outcome of this litigation and can offer a unique and important perspective on the issues before the Court.

### C.   Proposed Intervenor-Defendants' Ability to Protect Their Interests Will Be Impaired Absent Intervention.

The Proposed Intervenor-Defendants also satisfy the third requirement for intervention. They meet the "*minimal*" burden to show that "the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield*, 749 F.3d at 344 & n.2 (quoting *Grutter v. Bollinger,* 188 F.3d 394, 399 (6th Cir. 1999)). Prospective intervenors "need only show that if they cannot intervene, there is a *possibility* that their interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307 (emphasis added); *see Brumfield*, 749 F.3d at 344 ("The impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule.").

First, if Plaintiffs succeed in their challenge, it will significantly impair League members' and individuals with disabilities' right to vote and have their ballots counted. Section 23-15-

637(1)(a) of the Mississippi Code "grants rights to [Proposed Intervenor-Defendants] and their members that could be taken away if the plaintiffs prevail." *La Union del Pueblo Entero*, 29 F.4th at 307. Specifically, Plaintiffs seek to permanently enjoin Section 23-15-637(1)(a) and thereby ensure the rejection of all absentee ballots received after Election Day (including those cast by League members and Mississippians with disabilities), regardless of when those ballots were postmarked. *See* Compl. at Prayer for Relief, ¶¶ (b), (c).

Second, Proposed Intervenor-Defendants separately "satisf[y] the impairment requirement" because they "will have to expend resources to educate their members on the shifting situation in the lead-up to the [2024] election." *La Union del Pueblo Entero*, 29 F.4th at 307. As already noted, a ruling in Plaintiffs' favor would require the League to redirect resources away from existing priorities to educate voters about the elimination of the absentee ballot receipt deadline. Ciraldo Decl. ¶ 19. The League "would need to expend significant resources toward updating voter education materials and trainings to raise awareness about the change in law and to warn voters that they face a higher risk of disenfranchisement if they vote by absentee ballot near to election day." *Id.* ¶ 18. Similarly, DRMS would need to shift resources away from other outreach and assistance to voters with disabilities. Tribble Decl. ¶¶ 11–13. DRMS is at the forefront of efforts to educate voters with disabilities about—and advocate for—absentee voting. *Id.* ¶ 18. If Plaintiffs were to succeed, DRMS would need to expend additional resources to update educational trainings and materials to warn voters about the increased risks of voting absentee, which "would harm or frustrate the organization's efforts." *Id.* ¶ 20. As such, Plaintiff's claims, if granted, "may impair or impede [Proposed Intervenor-Defendants'] ability to protect their interests.'" *See Brumfeld*, 749 F.3d at 344.

### D.    Defendants Inadequately Represent Proposed Intervenor-Defendants' Interests.

Finally, Proposed Intervenor-Defendants' interests are not adequately represented by

Defendants. A proposed intervenor need not show that the representation by existing parties *will* be inadequate. *Entergy Gulf States Louisiana*, *L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016). All that is required is the "minimal" burden of showing that the representation "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Here, Proposed Intervenor-Defendants easily meet this minimal burden, as multiple factors point to a potential divergence in interests and thus inadequacy of representation.

First, positions taken by Secretary of State Michael Watson (and the Attorney General, who serves as the counsel to the Secretary of State) raise questions about how fully and vigorously Defendants will defend Section 23-15-637(1)(a). Secretary Watson has publicly disparaged the viability of absentee voting by mail, including as recently as a couple of weeks ago when he posted on social media that that he "encourage[s] you to vote in-person if at all possible, not by @USPS mail!"[3] The Attorney General has also expressed opposition to counting absentee ballots received after Election Day in formal legal filings. In a challenge to the counting of electoral votes of four other states after the 2020 presidential election, the Attorney General filed an amicus brief on behalf of the State of Mississippi in which she argued that allowing receipt of ballots after Election Day "raise[s] concerns about election integrity" by creating "a post-election window of time during which nefarious actors could wait and see whether the Presidential election would be close, and whether perpetrating fraud . . . . would be worthwhile," all of which "created needless vulnerability to actual fraud and undermined public confidence in the election."[4] Defendants who have espoused such positions do not adequately represent the interests of Proposed Intervenor-Defendants. Even in this litigation, Defendant Watson has proposed foregoing any motions to dismiss and jumping

---

[3]   Sec.   Michael   Watson   (@MichaelWatsonMS),   Twitter   (Feb.   7,   2024,   9:29   AM),
https://x.com/MichaelWatsonMS/status/1755237396294045970?s=20 [https://perma.cc/27PX-QG2F]
[4] Br. of Amicus Curiae at 21, *Texas v. Pennsylvania*, (U.S. 2020) (No. 22O155).

straight to the summary judgment stage, *see* ECF No. 17, indicating he may hold different views about Plaintiffs' lack of standing and/or that Plaintiffs should be able to seek relief without testing their failure to state a claim. *Cf. La Union del Pueblo Entero*, 29 F.4th at 308–09 (finding inadequacy of representation when one group of defendants fails to advance the same types of legal arguments as proposed intervenors would).

Second, even if Defendants defend Section 23-15-637(1)(a) against this challenge, all named Defendants are government officials whose interests may nonetheless not align with those of Proposed Intervenor-Defendants in all material respects. While Proposed Intervenor-Defendants and government Defendants may "have the same objective" to uphold Section 23-15-637(1)(a), "there are reasons to believe [Intervenor-Defendants'] interests are less broad than those of the governmental defendants, which may lead to divergent results." *La Union del Pueblo Entero*, 29 F.4th at 308. As government officials, defendants "must represent the broad public interest." *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *see, e.g.*, *Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (contrasting agency's broad interest in representing the public against advocacy organization intervenor's more narrow concerns).

By contrast, the League and DRMS have a more specific interest in protecting the voting rights of their specific members and constituencies and in furthering their efforts to defend and expand absentee voting opportunities for Mississippi voters. Nor do government defendants share Proposed Intervenor-Defendants' specific concerns related to increased costs for their voter education and turnout work. Moreover, the financial pressures and institutional constraints that may shape government defendants' litigation strategy do not constrict Proposed Intervenor-Defendants, who have "more flexibility" in advocating their position. *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (concluding that interests of government and proposed intervenor

"will not necessarily coincide, even though, at this point, they share common ground").

In sum, "[t]he state has many interests in this case," which contrasts with the specific interests of Proposed Intervenor-Defendants and their members and constituents; while one "cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, . . . surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 346.

For these reasons, the Court should conclude that Proposed Intervenor-Defendants are entitled to intervention as of right under Rule 24(a).

## II.     Alternatively, Proposed Intervenor-Defendants Should Be Granted Permissive Intervention Under Rule 24(b).

Although Proposed Intervenor-Defendants have satisfied the requirements of intervention as of right, they also satisfy the requirements for permissive intervention. The Court may permit intervention by a proposed intervenor who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023) ("The 'claim or defense' portion of Rule 24(b) is to be construed liberally." (cleaned up)). Courts also consider whether permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "In acting on a request for permissive intervention, it is proper to consider, among other things, whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (en banc) (internal quotation marks omitted).

Most of the relevant factors have been addressed above: This motion is timely, *see Hernandez*, 80 F.4th at 578 (explaining that the *Stallworth* factors also apply in the context of

permissive intervention), and permitting intervention would not prejudice the original parties. No deadlines have been set in the few weeks since the complaint was filed, and Proposed Intervenor-Defendants have moved promptly and have a strong incentive to proceed quickly in this litigation, both to ensure that their members and others can vote by absentee ballot and have it counted in the 2024 general election and to minimize the costs of combatting uncertainty around absentee rules heading into the election. Additionally, Proposed Intervenor-Defendants' interests are not adequately represented by the original parties, and they bring unique voting rights expertise and local knowledge that will "significantly contribute to full development of the underlying factual issues in the suit." *United Gas Pipe Line Co.*, 732 F.2d at 472.

Further, Proposed Intervenor-Defendants would raise many common questions of law and fact, including defending the constitutionality of Section 23-15-637(1)(a), disputing Plaintiffs flawed interpretations of federal law, and challenging Plaintiffs' standing to pursue this suit. Resolution of these questions is central to both the original parties' dispute and Proposed Intervenor-Defendants' claims.

Last, courts have regularly granted permissive intervention to advocacy and membership organizations in similar cases. *See, e.g.*, *Donald J. Trump for President, Inc. v. Murphy*, No. CV-20-10753 (MAS) (ZNQ), 2020 WL 6573382, at *2 (D.N.J. Sept. 23, 2020) (permitting intervention by advocacy groups—including local League of Women Voters—in absentee ballot deadline challenge, citing the organizations' many "members across the state" and their efforts to "engage in voter advocacy and education to increase voting participation in elections"); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-DJW, 2013 WL 6511874, at *4–5 (D. Kan. Dec. 12, 2013) (granting permissive intervention to numerous nonprofit advocacy and membership organizations—including local Leagues of Women Voters—with "interests in either increasing

participation in the democratic process, or protecting voting rights, or both," and noting that such groups' "experience, views, and expertise . . . will help to clarify, rather than clutter the issues in the action"); *Florida v. United States*, 820 F. Supp. 2d 85, 86–87 (D.D.C. 2011) ("Several parties have been granted leave to intervene permissively as defendants, including . . . organizations that have a special interest in the administration of Florida's election laws.").

Accordingly, the Court should grant Proposed Intervenor-Defendants permissive intervention under Rule 24(a).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant the Proposed Intervenor-Defendants' motion.

Dated:   February 21, 2024

Respectfully submitted

/s/ Joshua Tom
Joshua Tom (Miss. Bar No. 105932)
American Civil Liberties Union of
Mississippi
P.O. Box 2242
Jackson, MS 39225
(601) 354-3408
JTom@aclu-ms.org

Greta Kemp Martin (Miss. Bar No.
103672)
DISABILITY RIGHTS
MISSISSIPPI
5 Old River Place, Suite 101
Jackson, MS 39202
(601) 968-0600
gmartin@drms.ms

*Attorneys for Proposed Intervenor-
Defendants Disability Rights
Mississippi and League of Women
Voters of Mississippi*

16

**CERTIFICATE OF SERVICE**

I certify that on February 21, 2024, the foregoing document was filed on the Court's CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Joshua Tom* _____

Joshua Tom

*Counsel for Proposed Intervenor-Defendants Disability Rights Mississippi and League of Women Voters of Mississippi*