## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

REPUBLICAN NATIONAL COMMITTEE;
MISSISSIPPI REPUBLICAN PARTY;
JAMES PERRY; and MATTHEW LAMB,

           Plaintiffs,

    v.

JUSTIN WETZEL, *in his official capacity as
the clerk and registrar of the Circuit Court of
Harrison County*, TONI JO DIAZ, BECKY
PAYNE, BARBARA KIMBALL,
CHRISTENE BRICE, and CAROLYN
HANDLER, *in their official capacities as
members of the Harrison County Election
Commission*, and MICHAEL WATSON, *in
his official capacity as the Secretary of State of
Mississippi*,

           Defendants.

---

LIBERTARIAN PARTY OF MISSISSIPPI,

           Plaintiff,

    v.

JUSTIN WETZEL, *in his official capacity as
the clerk and registrar of the Circuit Court of
Harrison County*, TONI JO DIAZ, BECKY
PAYNE, BARBARA KIMBALL,
CHRISTENE BRICE, and CAROLYN
HANDLER, *in their official capacities as
members of the Harrison County Election
Commission*, and MICHAEL WATSON, *in
his official capacity as the Secretary of State of
Mississippi*,

           Defendants.

Case Nos.  1:24-CV-00025-LG-RPM
           1:24-CV-00037-LG-RPM

**[PROPOSED] MEMORANDUM IN
SUPPORT OF INTERVENOR-
DEFENDANT DEMOCRATIC
NATIONAL COMMITTEE'S MOTION
TO DISMISS**



# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................2

I. CONGRESS ESTABLISHES A UNIFORM ELECTION DAY.....................................2

II. MISSISSIPPI LEGISLATORS ENACT A BALLOT RECEIPT DEADLINE ........................3

III. PLAINTIFFS SUE MISSISSIPPI OFFICIALS TO CHALLENGE THE BALLOT
      RECEIPT DEADLINE ................................................................................................4

LEGAL STANDARD..........................................................................................................5

ARGUMENT ......................................................................................................................5

I. PLAINTIFFS CANNOT STATE A CLAIM FOR RELIEF BECAUSE THEIR SUITS
      ARE BUILT UPON LEGAL ERROR ......................................................................5

      A.     Federal Law Does Not Require Ballots to Be Received or Counted by
           Election Day...................................................................................................5

            1.     The Plain Language of Federal Law Does Not Prevent States from
                 Counting Ballots Received After Election Day ............................................6

            2.     Plaintiffs' Interpretation Cannot Be Squared with Historical
                 Practices ......................................................................................................9

            3.     Plaintiffs' Interpretation Would Lead to Absurd Results .........................13

            4.     Tossing Out Ballots Submitted Before, but Received After,
                 Election Day Would Frustrate the Purposes Animating Federal
                 Law ...........................................................................................................14

      B.     Plaintiffs' Preemption Claim Fails Because There Is No Conflict Between
           Federal Law and Mississippi Law ..............................................................15

      C.     Plaintiffs' Constitutional Claims Fail for Independent Reasons ...........................17

CONCLUSION.................................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amin v. United Parcel Serv., Inc.*,
    66 F.4th 568 (5th Cir. 2023) .................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................5

*Bost v. Illinois State Bd. of Elections*,
    No. 22-CV-02754, 2023 WL 4817073 (N.D. Ill. July 26, 2023)..........................16

*Doe v. Walker*,
    746 F. Supp. 2d 667 (D. Md. 2010) ...................................................................13

*Donald J. Trump for President, Inc. v. Way*,
    492 F. Supp. 3d 354 (D.N.J. 2020) ....................................................................16

*Foster v. Love*,
    522 U.S. 67 (1997)...................................................................................... passim

*Harris v. Fla. Elections Canvassing Comm'n*,
    122 F. Supp. 2d 1317 (N.D. Fla. 2000)................................................................6

*Millsaps v. Thompson*,
    259 F.3d 535 (6th Cir. 2001) .............................................................................14

*Moore v. Harper*,
    600 U.S. 1 (2023)................................................................................................15

*Neitzhe v. Williams*,
    490 U.S. 319 (1989)..............................................................................................5

*Short v. Brown*,
    893 F.3d 671 (9th Cir. 2018) .............................................................................17

*Smiley v. Holm*,
    285 U.S. 355 (1932)............................................................................................15

*Storer v. Brown*,
    415 U.S. 724 (1974)............................................................................................15

*Texas Indep. Party v. Kirk,*
    84 F.3d 178 (5th Cir. 1996) ...................................................................17

*Texas League of United Latin Am. Citizens v. Hughs,*
    978 F.3d 136 (5th Cir. 2020) .................................................................17

*U.S. Term Limits, Inc. v. Thornton,*
    514 U.S. 779 (1995) ..............................................................................15

*United States v. A Female Juvenile,*
    103 F.3d 14 (5th Cir. 1996) ...................................................................13

*United States v. Granderson,*
    511 U.S. 39 (1994)................................................................................13

*Voting Integrity Project, Inc. v. Bomer,*
    199 F.3d 773 (5th Cir. 2000) ........................................................ passim

**STATE CASES**

*Clark v. Nash,*
    234 S.W. 1 (Ky. 1921).............................................................................12

*Pa. Democratic Party v. Boockvar,*
    238 A.3d 345 (Pa. 2020)..........................................................................16

**FEDERAL STATUTES**

2 U.S.C. § 1 ..............................................................................................1, 6

2 U.S.C. § 1a ................................................................................................7

2 U.S.C. § 7..........................................................................................1, 2, 6

3 U.S.C. § 1 ....................................................................................... passim

3 U.S.C. § 5..................................................................................................9

3 U.S.C. § 5(a)(1) .........................................................................................9

3 U.S.C. § 5(a)(2)(A) ...................................................................................9

3 U.S.C. § 21 ........................................................................................3, 8, 9

52 U.S.C. § 10502(d) .................................................................................14

52 U.S.C. § 20303(a)(1) ...............................................................................7

52 U.S.C. § 20304.........................................................................................7

52 U.S.C. § 20304(b)(1) .................................................................................7, 8

52 U.S.C. § 20304(b)(3) ....................................................................................7

52 U.S.C. § 20307(a) .........................................................................................8

Act of Feb. 2, 1872, 42 Cong. ch. 11, § 3, 17 Stat. 28, 28 .............................2

Act of Jan. 23, 1845, 28 Cong. ch. 1, 5 Stat. 721 ...........................................2

Act of June 4, 1914, 63 Cong. ch. 103, § 1, 38 Stat. 384, 384 .....................2, 3

Electoral Count Reform and Presidential Transition Improvement Act of 2022,
    Pub. L. No. 117-328, div. P, 136 Stat. 4459 .............................................3

Military and Overseas Voter Empowerment Act, Pub. L. No. 111-84, §§ 577-82,
    583(a), 584-87, 123 Stat. 2190 (2009) ......................................................13

**STATE STATUTES**

Ala. Code § 17-11-18(b) ...................................................................................12

Alaska Stat. § 15.20.081 ..................................................................................12

Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii) ..........................................................12

Cal. Elec. Code § 3020(b) ................................................................................12

D.C. Code § 1-1001.05(a)(10B) .......................................................................12

Fla. Stat. § 101.6952(5) ...................................................................................12

Ga. Code Ann. § 21-2-386(a)(1)(G) ...............................................................12

10 Ill. Comp. Stat. 5/18A-15 ..........................................................................12

10 Ill. Comp. Stat. 5/19-8 ...............................................................................12

Ind. Code § 3-12-1-17(b) .................................................................................12

Kan. Stat. Ann. 25-1132(b) .............................................................................12

Mass. Gen. Laws Chapter 54 § 93 ..................................................................12

Md. Code Ann., Elec. Law, § 9-302(c)(1) .......................................................12

Miss. Code Ann. § 23-15-637.....................................................................1, 12, 15

Miss. Code § 23-15-637(1)(a)................................................................... passim

Miss. Code § 23-15-637(2) ........................................................................................16

Miss. Code § 23-15-645(1) ........................................................................................16

Miss. Code § 23-15-673 ..............................................................................................3

Miss. Code § 23-15-675 ..............................................................................................3

Miss. Code § 23-15-699 ............................................................................................16

Mo. Rev. Stat. § 115.920(1) ......................................................................................12

N.C. Gen. Stat. § 163A-1310 ....................................................................................12

N.D. Cent. Code Ann. § 16.1-07-09 ..........................................................................12

N.J. Stat. Ann. § 19:63-22(a) ....................................................................................12

N.Y. Elec. Law § 8-412(1) ........................................................................................12

Nev. Rev. Stat. § 293.269921(1)(b) ..........................................................................12

Nev. Rev. Stat. § 293.269921(2) ..............................................................................12

Ohio Rev. Code Ann. § 3509.05(D)(2)(a) ................................................................12

Or. Rev. Stat. § 254.470(6)(e)(B) ............................................................................12

25 Pa. Cons. Stat. § 3511(a) ....................................................................................12

R.I. Gen. Laws § 17-20-16 ......................................................................................12

S.C. Code Ann. § 7-15-700(A) ................................................................................12

Tex. Elec. Code Ann. § 86.007(a)(2) ......................................................................12

Utah Code Ann. § 20A-3a-204(2)(a) ......................................................................12

Va. Code Ann. § 24.2-709(B) ..................................................................................12

W. Va. Code § 3-3-5(g)(2) ......................................................................................12

Wash. Rev. Code Ann. § 29A.40.091 ......................................................................12

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 5

**LEGISLATIVE MATERIALS**

156 Cong. Rec. S4513–02 (daily ed. May 27, 2010)........................................................13

Cong. Globe, 42d Cong., 2d Sess., 141 (1871)................................................................2

Cong. Globe, 42d Cong., 2d Sess. 3407-08 (1872) ........................................................3

*House Bill 1521*, Miss. Leg.,
   https://billstatus.ls.state.ms.us/2020/pdf/history/HB/HB1521.xml (last visited
   Mar. 6, 2024)..................................................................................................................4

**OTHER AUTHORITIES**

Cases Raising Claims Under the Uniformed and Overseas Citizen Absentee
   Voting Act, DEP'T OF JUST., (last accessed Mar. 6, 2024) (collecting cases),
   available at https://www.justice.gov/crt/cases-raising-claims-under-
   uniformed-and-overseas-citizen-absentee-voting-act ..................................................8

Edward B. Moreton, Jr., *Voting by Mail*, 58 S. Cal. L. Rev. 1261 (1985) ....................10

J.H. Benton, VOTING IN THE FIELD (1915) .....................................................................11

John C. Fortier & Norman J. Ornstein, *The Absentee Ballot and the Secret Ballot:*
   *Challenges for Election Reform*, 36 U. MICH. J.L. REFORM 483 (2003) ....................12

Joseph P. Harris, ELECTION ADMINISTRATION IN THE UNITED STATES (1934)...............10, 11

N. Webster, An American Dictionary of the English Language (1844)...........................8

Nat'l Conference of State Legislatures, *Table 11: Receipt and Postmark*
   *Deadlines for Absentee/Mail Ballots* (July 12, 2022),
   https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-
   deadlines-for-absentee-mail-ballots ............................................................................12

P. Orman Ray, *Absent Voters*, 8 AM. POL. SCI. REV. 442, 442-43 (1914) ....................10

P. Orman Ray, *Absent-voting Laws*, 12 AM. POL. SCI. REV. 251 (1917)..................10, 11

P. Orman Ray, *Military Absent-voting Laws*, 12 AM. POL. SCI. REV. 461 (1918)...........11

P. Orman Ray, *Absent-voting Laws*, 18 AM. POL. SCI. REV. 321 (1924) .......................11

## INTRODUCTION

The Republican National Committee, the Mississippi Republican Party, two individual plaintiffs, and the Libertarian Party of Mississippi (the "Plaintiffs")[1] sued several Mississippi officials (the "named Defendants"), alleging that a Mississippi statute, Miss. Code § 23-15-637(1)(a), violates federal law and as a result, Plaintiffs' constitutional rights. Section 23-15-637 forms part of Mississippi's Absentee Balloting Procedures Law, setting the deadline for receipt of mail-in ballots. To be counted, a mail-in ballot must "be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." *Id.* Plaintiffs ask the Court to enjoin this "Ballot Receipt Deadline." They argue that federal law prohibits counting mail-in ballots received after the date of the election—even if those ballots were completed and mailed by election day. That argument has no support in federal law, and Plaintiffs' suits must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

Federal law establishes election day as the date on which the "election" of members of Congress (2 U.S.C. §§ 1, 7) and the "appoint[ment]" (3 U.S.C. § 1) of presidential electors occurs. But the federal requirement that the election, or appointment, occur on a single day is satisfied by state laws that ensure that the "election"—the "act of choosing a person to fill an office"—occurs by the close of election day. *Foster v. Love*, 522 U.S. 67, 71 (1997). Once the voters have made their final *choice*, the relevant "election" or "appoint[ment]" ends, and any additional time it takes to receive and tally ballots does not alter the choice that has already been made.

Mississippi's Ballot Receipt Deadline comports with these "election day statutes" by requiring that all ballots be postmarked by election day. In effect, Mississippi has established a mailbox rule: absentee votes are cast upon mailing, which must happen by election day. Indeed, Mississippi is far from alone in establishing this sort of mailbox rule. By statute, 28 States and the District of Columbia allow election officials to count absentee ballots that arrive after election day.

---

[1] The Libertarian Party of Mississippi filed a separate suit, Case No. 1:24-cv-37, which the Court consolidated with the other plaintiffs' action, Case No. 1:24-cv-25. The DNC's motion to dismiss pertains to both complaints, so the Court need not address the cases separately.

Many of the statutes apply to *all* voters; others apply only to those voters who are overseas—in particular, members of the military serving our country abroad. Collectively, these statutes protect the franchise of countless citizens. Yet under Plaintiffs' theory, they would all be invalid.

Plaintiffs' constitutional claims based on the rights to vote and stand for office fail for the additional reason that Mississippi's Ballot Receipt Deadline places no *burden* on the Plaintiffs' constitutional rights. Instead, the Ballot Receipt Deadline simply ensures that eligible voters may exercise their franchise pursuant to the legislature's establishment of their right to vote absentee by mail.

## BACKGROUND

### I.   CONGRESS ESTABLISHES A UNIFORM ELECTION DAY

For almost a hundred years, "each State" was free to fix its federal elections "upon a different day." *See Foster*, 522 U.S. at 74 (quoting Cong. Globe, 42d Cong., 2d Sess., 141 (1871) (remarks of Rep. Butler)). This practice threatened to (and actually did) "distort[]" the voting process. *Id.* at 73. The "results of an early federal election," like the 1840 election in Pennsylvania and other states, exerted "influence" on later State elections, thereby providing certain voters an "undue advantage" in influencing federal elections. *Id.* at 73-74. Also, States were free to set their congressional elections on a different day from the already-fixed day for appointment of presidential electors. *See id.* at 73; *see also* Act of Jan. 23, 1845, 28 Cong. ch. 1, 5 Stat. 721 (setting date for appointment of presidential electors).

To curb these adverse effects, Congress required that all congressional elections occur on a single day. In 1872, Congress enacted a provision that "fixed and established" the day for the "election" of "Representatives." *See* Act of Feb. 2, 1872, 42 Cong. ch. 11, § 3, 17 Stat. 28, 28. Amended a few times over the years, that provision was eventually codified as 2 U.S.C. § 7. And that Section now requires that "the election" of "Representatives" occur on the "Tuesday next after the 1st Monday in November." After the Seventeenth Amendment was ratified, providing for the direct election of Senators, Congress enacted a similar provision applicable to Senators. *See* Act of June 4, 1914, 63 Cong. ch. 103, § 1, 38 Stat. 384, 384. That statute requires the "elect[ion]" of

Senators to occur on the same day as the "election" of Representatives, *id.*, and it was codified in 2 U.S.C. § 1 with no material change. Collectively, these statutes "reflect[] Congress's concern that citizens be able to exercise their right to vote." *See Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 777 (5th Cir. 2000) (citing Cong. Globe, 42d Cong., 2d Sess. 3407-08 (1872)).

More recently, Congress amended the statute that sets the date for "appoint[ment]" of presidential electors. *See* Electoral Count Reform and Presidential Transition Improvement Act of 2022, Pub. L. No. 117-328, div. P, 136 Stat. 4459, 5233-34 (enacted as part of an appropriations act and codified in scattered sections of Title 3). In most circumstances, the appointment of electors also occurs on the "Tuesday next after the first Monday in November." 3 U.S.C. § 21.[2]

## II.    MISSISSIPPI LEGISLATORS ENACT A BALLOT RECEIPT DEADLINE

In Mississippi, certain voters are entitled to vote absentee by mail. This includes voters who are enlisted or commissioned members of the Armed Forces, Miss. Code §§ 23-15-673, 23-15-675; voters who must work on election day during the times at which the polls are open, *id.* § 23-15-713(h); voters who have permanent or temporary disabilities that impact their ability to vote, *id.* § 23-15-713(d); voters who are "away from [their] county of residence on election day," *id.* § 23-15-713(c); and voters who are members of Mississippi congressional delegation or employees of any member of that delegation, *id.* § 23-15-713(g). *See also id.* § 23-15-627 (identifying eligible voters in application for absentee ballot). Eligible voters must apply, and if their applications are approved, the registrar will mail them an absentee ballot and return envelope. *See id.* §§ 23-15-627 (application), 23-15-719 (process). After an absentee voter complete their ballot, they must mail it to the address provided on the official return envelope. *Id.* § 23-15-719(1)

To be counted, an absentee ballot returned by mail must "be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." *Id.* § 23-15-637(1)(a). This Ballot Receipt Deadline was enacted in 2020 with

---

[2] If a State that appoints electors by popular vote "modifies the period of voting" based on "extraordinary and catastrophic" events, "election day" includes the "modified period of voting." *See* 3 U.S.C. § 21. That provision was not the basis for Mississippi's Ballot Receipt Deadline.

overwhelming bipartisan support. *See House Bill 1521*, Miss. Leg., https://billstatus.ls.state.ms.us/ 2020/pdf/history/HB/HB1521.xml (last visited Mar. 6, 2024) (collecting legislative history). Measures in the House, Senate, and the Conference Committee report were all adopted by wide (sometimes unanimous) margins that were not divided along political lines. *See id.* (linking to vote tallies). Governor Reeves signed the bill into law on July 8, 2020. *Id.*

## III. PLAINTIFFS SUE MISSISSIPPI OFFICIALS TO CHALLENGE THE BALLOT RECEIPT DEADLINE

The Republican National Committee, the Mississippi Republican Party, and two individual plaintiffs raise three claims, all of which assert a conflict between federal law and Mississippi's Ballot Receipt Deadline. *See* Case No. 1:24-cv-25, Compl. ¶¶ 62-80 ("RNC Compl."). The first claim is a straightforward preemption argument: by requiring Mississippi counties to count mail-in ballots that are "received up to five business days after Election Day," Section 23-15-637(1)(a) allegedly conflicts with federal law. RNC Compl. ¶ 67. The two other claims, which purport to sound in constitutional provisions, follow from that alleged conflict. By counting votes that have been received after Election Day, these plaintiffs claim, Mississippi officials are "depriving Plaintiffs of rights protected under the First and Fourteenth Amendment." RNC Compl. ¶ 72. Specifically, these plaintiffs claim they must "spend money" and other resources in reliance "on unlawful provisions of state law." RNC Compl. ¶ 72. Finally, they allege the same Mississippi statute "violates the right to vote" by diluting "honest votes." RNC Compl. ¶ 77.

The Libertarian Party of Mississippi raises three claims, all of which purport to sound in constitutional rights. Case No. 1:24-cv-37, Compl. ¶¶ 57-81 ("Libertarian Party Compl."). Each claim is premised on the same purported conflict with federal law on which the RNC complaint is based. *See* Libertarian Party Compl. ¶¶ 58, 65, 76-77. This is true even of the claim that purports to sound in the Elections and Electors Clauses. *See* Libertarian Party Compl. ¶¶ 60-81. That claim alleges that Mississippi law establishes an election day that conflicts with (or usurps) Congress's choice to enact the federal election day statutes. *See* Libertarian Party Compl. ¶¶ 60-81. The other

two counts in the Libertarian Party's complaint, like similar counts in the RNC complaint, purport to sound in the right to vote and right to stand for office.  Libertarian Party Compl. ¶¶ 58, 65.

## LEGAL STANDARD

Rule 12(b)(6) requires that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Id.* at 664.  The Court is not "bound to accept as true a legal conclusion couched as a factual allegation," *id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  And dismissal is required whenever a claim is based on an "outlandish legal theory" that cannot be the basis for relief irrespective of the facts.  *Neitzhe v. Williams*, 490 U.S. 319, 327 (1989).

## ARGUMENT

## I.   PLAINTIFFS CANNOT STATE A CLAIM FOR RELIEF BECAUSE THEIR SUITS ARE BUILT UPON LEGAL ERROR

Plaintiffs' claims all rest on the assertion that Mississippi's statutory framework for counting mail-in ballots is preempted by federal statutes that establish a nationwide federal election day.  That assertion is meritless.  The federal statutes providing for the election to occur on election day require only that the voters' choice of candidate occur by election day.  Nothing in federal law prohibits States from counting votes *received* later so long as the relevant *choice* has occurred by election day.  No conflict thus exists between federal law and Mississippi's Ballot Receipt Deadline.  *See Neitzhe*, 490 U.S. at 327 (claims without legal basis may be dismissed); *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 573 (5th Cir. 2023) (same).  Plaintiffs' constitutional claims based on the right to vote and right to stand for office also fail for an independent reason: Mississippi law does not burden the Plaintiffs' constitutional rights.

### A.   Federal Law Does Not Require Ballots to Be Received or Counted by Election Day

Plaintiffs' theory that, to be counted, a ballot must be *received* by election day finds no support in any federal law.  The precise nature of that theory is less than clear.  Plaintiff seems to

be arguing either (1) votes must be *cast* by election day and the act of "casting" requires receipt by an election official or (2) votes must be cast *and* received by election day. But that distinction is immaterial for present purposes. The "election" and "appoint[ment]" that federal law requires to happen on election day occurs when citizens *choose* their preferred candidates. Nothing in federal law speaks to when a properly submitted ballot must be received. Indeed, such a conclusion would be inconsistent with a plain understanding of federal statutes and longstanding, undisturbed state practices.

1.   The Plain Language of Federal Law Does Not Prevent States from Counting Ballots Received After Election Day

As with all questions of statutory interpretation, the court must start with the plain terms of the relevant statutes. In arguing that federal law requires all votes to be *received* by election day, Plaintiffs ignore the plain text of numerous statutes. The "election" of members of Congress (2 U.S.C. §§ 1, 7) and "appointment" of presidential electors (3 U.S.C. § 1) occurs once all citizens *choose* their preferred candidates, even if state law permits those votes to be received after election day.

**First**, the term "election," as used in the relevant federal statutes, means the "combined actions of voters and officials" that makes a "final selection of an officeholder." *Foster*, 522 U.S. at 71 (citing 1869 edition of Webster's dictionary, published just before Congress enacted the statute that became 2 U.S.C. § 7). In other words, the election is the voters' act of choosing a candidate though a process managed by election officials. In providing that "the election" of a Senator or Representative must take place on election day, therefore, Sections 1 and 7 require that the "act of choosing a person to fill an office" occur by the close of election day. *Id*. Administrative efforts, whether before or after "the election," have no bearing on when that election—the voters' act of selection—occurred. *Cf. id.* at 71-72; *Bomer*, 199 F.3d at 776 (holding that some acts may be performed "before election day" without running afoul of Section 7). That it might take some time to determine which officeholder has been elected—for example, time to receive ballots, count votes, and certify results—is of no import. *E.g.*, *Harris v. Fla. Elections*

-6-

*Canvassing Comm'n*, 122 F. Supp. 2d 1317, 1325 (N.D. Fla. 2000) (explaining that votes are "[r]outinely" counted after election day). The *choice* of officeholder is made once all voters *submit* their votes. At that point, the "election" has been completed.

Other provisions in Title 2 confirm this plain reading of "election." A number of provisions equate the *election* of an officeholder with that officeholder having been *chosen*. 2 U.S.C. §§ 1a (requiring "the executive of the State from which any Senator has been *chosen* to certify his *election*"), 381 (defining "election" to mean "an official general or special election to *choose*" a Representative). Section 1 itself employs this phrasing by tying the date on which a Senator "shall be elected" to the date of "the regular election" at which a "Representative" is to be "*chosen*." *Id.* § 1. Each of these provisions suggest the core of an "election" is *choice*. And the only *choice* involved in the process for mail-in voting is the voter's completion and submission of her ballot, which forms a small part of voters' collective *choice* of an officeholder. That collective choice is made once all voters submit their votes. Thus, federal law does not speak to when officials must complete the ministerial acts of receiving and counting the votes that were submitted by election day.

Provisions outside of Title 2 are in accord. Most clearly, federal law recognizes that states may impose ballot receipt deadlines that post-date election day. Congress has guaranteed that certain members of the uniformed services may vote in elections for federal office by absentee ballot, even if denied a ballot by their home state. *See* 52 U.S.C. § 20303(a)(1). To implement that guarantee, Congress established procedures for collection and delivery of absentee ballots to state election officials. *See id.* § 20304. In most circumstances, a completed absentee ballot must be collected by some presidential designee by the "seventh day preceding" the "general election" and then transferred to the United States Post Office. *Id.* § 20304(b)(3). Then, the ballot must be delivered to appropriate election officials "not later than the date by which an absentee ballot must be **received** in order to be **counted** in the election." *id.* § 20304(b)(1) (emphases added). These provisions recognize that the "election" itself occurs on a particular date—and further recognize that the date on which a ballot must be "received" to be "counted" after being submitted in the

election may be a different date. *Id.* In other words, the act of receiving the votes is not a part of the election itself. The "election" is the voters' choice of a candidate, and the process of receiving and counting ballots is a ministerial act aimed at identifying the results of the election.

Moreover, in addressing these military-voting statutes, courts often recognize that ballot receipt deadlines may be extended well past election day. Specifically, the Attorney General is authorized to enforce these military-voting statutes, which are part of the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA). 52 U.S.C. § 20307(a) (providing enforcement authority). Exercising that authority, the government has sued states on several occasions and secured orders that ***require*** States to extend their deadlines for receipt of absentee ballots— sometimes several days after election day—to prevent disenfranchisement of military members serving overseas. *See* Cases Raising Claims Under the Uniformed and Overseas Citizen Absentee Voting Act, DEP'T OF JUST., (last accessed Mar. 6, 2024) (collecting cases), available at https://www.justice.gov/crt/cases-raising-claims-under-uniformed-and-overseas-citizen-absentee-voting-act. That practice cannot be reconciled with Plaintiffs' claim that the election day statutes require all ballots to have been received as of election day.

**Second**, federal statutes providing that the "appointment" of presidential electors must occur on election day similarly refer to when those electors are finally *chosen*, irrespective of ministerial efforts before or after that choice. *See* 3 U.S.C. §§ 1, 21. The term "appoint[ment]" was first introduced into the statutory provisions in 1845, and at that time, "appointment" meant "*designation* to office." N. Webster, An American Dictionary of the English Language at 46 (1844) (also defining appoint and appointed). "Appointment" is thus the designation of a person to hold an office—a definition that parallels *Foster*'s definition of "election" as the "final *selection*" of an officeholder. *See Foster*, 522 U.S. at 71 (emphasis added). "Designation," "selection," and "choice" all get at the same portion of the electoral process—the submission of votes. This means that, when votes are submitted for the electors, those electors have received the "appointment" required under Section 1 of Title 3.

Surrounding portions of Title 3 confirm the proper interpretation of "appointed" as used in that provision. In particular, 3 U.S.C. § 5 distinguishes the "appointment" of electors from the "ascertainment of appointment of electors," with the latter occurring some period of time after election day pursuant to state canvassing laws. Section 5 requires that each State's executive must "issue a certificate of ascertainment of appointment of electors" not later than "6 days before" the "meeting of the electors." 3 U.S.C. § 5(a)(1). The certificate must set forth "the names of the electors *appointed* and *the canvass or other determination* under the laws of such State of the *number of votes given or cast* for each person for whose appointment any and all votes have been given or cast." *Id.* § 5(a)(2)(A) (emphases added). Reading Section 1 and Section 5 together, it is clear that the "appointment" of electors refers to the *choice* of a candidate through the casting of ballots, and that choice occurs when a vote is "*given.*" By contrast, "ascertainment" of the winning candidate occurs through the separate process of counting ballots.

Congress's recent expansion of the definition of "election day" offers further support for understanding the appointment of electors to be complete upon the submitting of votes. 3 U.S.C. § 21. Section 21 permits States to expand the "period of *voting*" to account for "extraordinary and catastrophic" events. *Id.* (emphasis added). When the state does so, "'election day' shall include the modified period of voting." *Id.* That confirms that the term "election day" as used in 3 U.S.C. § 1, focuses on the period of voting, rather than the date on which ballots are received or counted, and that appointment of electors occurs when all votes are submitted pursuant to state law. Ministerial actions, like receiving ballots, have no impact on when the final choice of officeholder has been made.

### 2. Plaintiffs' Interpretation Cannot Be Squared with Historical Practices

Courts may not "read the federal election day statutes in a manner that would prohibit . . . a universal, longstanding practice." *Bomer*, 199 F.3d at 776. Yet accepting Plaintiffs' radical theory of the election day statutes would do just that. For more than a century, states have used absentee balloting frameworks like Mississippi's—that is, frameworks that require ballots to be mailed by election day but permit them to be received and then counted afterwards. Those statutes

remain prevalent today.  Plaintiffs' theory would cause mass disruption and chaos, upending long-established laws in this election and future ones.  It would result in the disenfranchisement of countless voters, including in the military and overseas.

States have permitted absentee balloting for "[m]ore than a century."  *Id.* (citing Edward B. Moreton, Jr., *Voting by Mail*, 58 S. Cal. L. Rev. 1261, 1261–62 (1985)).  Indeed, all but four states had some form of absentee voting provisions by 1924.  P. Orman Ray, *Absent-voting Laws*, 18 AM. POL. SCI. REV. 321, 321 (1924).  And for civilian voting provisions, these States fell into one of "two general types, namely, the Kansas and North Dakota types."  P. Orman Ray, *Absent-voting Laws*, 12 AM. POL. SCI. REV. 251, 251 (1917).  States in both camps generally permitted votes *submitted* by election day to be received and counted at a later date.  Around the same time, commentators even recommended removing "[t]ime restrictions" for "delivery of the ballot after it has been marked," "provided that the ballot is mailed on or before the day of the election and before the hour for closing the polls."  Joseph P. Harris, ELECTION ADMINISTRATION IN THE UNITED STATES 300 (1934).

For example, all statutes in the first (Kansas) camp allowed for the receipt and counting of ballots *after* election day.  *See* P. Orman Ray, *Absent Voters*, 8 AM. POL. SCI. REV. 442, 442-43 (1914); Harris, ELECTION ADMINISTRATION at 287-288.  Under those statutes, the absentee voter was required to present himself at a polling place where he was located on election day, swear to be a qualified voter (among other things), and complete a ballot.  Ray, 8 AM. POL. SCI. REV. at 443 (summarizing Kansas practice).  Then, the vote would be "sent by mail to the proper official" before "the result of the official canvass is declared."  *Id.*  Implicitly, this framework established that ballots submitted on election day would be received by mail after election day, and the "result" would be declared after election day.  And some states even imposed explicit ballot receipt deadlines, like the six-day deadline in Washington's statute.  Ray, 12 AM. POL. SCI. REV. at 253-54.

While statutes in the second (North Dakota) camp generally required absentee ballots to be received by election day, some also permitted ballots to be received after election day.  *See id.* at

254, 258-259; *Harris*, ELECTION ADMINISTRATION at 291.  Under those statutes, an absentee voter was required to complete his ballot before an official authorized to administer oaths and then mail the ballot to his polling place to be opened and counted on election day.  Ray, 12 AM. POL. SCI. REV. at 254, 258-259.   But there were exceptions to that general practice.  California and Pennsylvania deferred the "counting of absent[ ]voters' ballots" until "the official canvas."  P. Orman Ray, *Absent-Voting Laws*, 18 AM. POL. SCI. REV. 321, 322 (1924); *see also Harris*, ELECTION ADMINISTRATION at 291 (noting that, as of 1934, California allowed counting of ballots received within fifteen days of the election).  In this way, the California and Pennsylvania laws more "closely conform to the Kansas (1911) statute," but both made "more adequate provisions for safeguarding the secrecy of the ballot."  Ray, 18 AM. POL. SCI. REV. at 322.

Many states also passed statutes specifically aimed at allowing "qualified voters in military service to vote outside their home precincts."  *See* P. Orman Ray, *Military Absent-voting Laws*, 12 AM. POL. SCI. REV. 461, 461 (1918).[3]  Those laws date from the Civil War, *see id.* at 462, when several states enacted laws ensuring that soldiers could exercise their franchise.  *See generally* J.H. Benton, VOTING IN THE FIELD (1915) (summarizing Civil War-era practices).  Several States allowed Civil War soldiers to "*vote* in the field" and extended the "time for canvassing the votes" thereafter received in the relevant state.  *Id.* at 317-318 (emphasis added).  Although many northern States did not extend the time for counting, that was because it was "understood that a sufficient period would elapse between the day of the election, which was the day on which the soldiers were to vote in the field, and the counting of the votes" in the relevant state.  *Id.* at 318.  Fifty years later, many states were still allowing military absentees to vote in the field on election day and have their voted counted in their home state at some later time.  *See Military Absent-voting Laws*, 12 AM. POL. SCI. REV. at 468-69 (discussing counting of ballots).

---

[3] In some states, a single provision allowed for both military and civilian absentee voters.  *See* Ray, 12 AM. POL. SCI. REV. at 461.

Although courts did invalidate some of these absentee-ballot statutes, there was no suggestion that these statutes conflicted with federal law. The Kentucky Supreme Court invalidated that State's absentee-voting provision based on a state constitutional provision that required voting "at the polls." *See Clark v. Nash*, 234 S.W. 1 (Ky. 1921). But the DNC is not aware of a court invalidating a state law based on the federal election day statutes. *Cf.* John C. Fortier & Norman J. Ornstein, *The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. MICH. J.L. REFORM 483, 498-99 (2003) (collecting some challenges to absentee voting provisions applicable to the military). And Plaintiffs have not identified any such ruling.

Congress's enactment of the "election day" statutes in 1872 must be construed against this unbroken historical practice. The uniform understanding of elections was that the receiving of votes was something that could occur *after* the election itself.

Today, at least 28 States and the District of Columbia permit mailed ballots to arrive after election day for at least some voters.[4] Even when states do not permit all late-arriving ballots to be counted, they will often count late-arriving votes from overseas citizens.[5] This reflects the entirely reasonable assumption that mailed ballots will take some time to arrive from overseas, and

---

[4] *See* Ala. Code § 17-11-18(b); Alaska Stat. § 15.20.081; Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii); Cal. Elec. Code § 3020(b); D.C. Code § 1-1001.05(a)(10B); Fla. Stat. § 101.6952(5); Ga. Code Ann. § 21-2-386(a)(1)(G); 10 Ill. Comp. Stat. 5/19-8, 10 Ill. Comp. Stat. 5/18A-15; Ind. Code § 3-12-1-17(b); Kan. Stat. Ann. 25-1132(b); Md. Code Ann., Elec. Law, § 9-302(c)(1); Mass. Gen. Laws ch. 54 § 93; Miss. Code Ann. § 23-15-637; Mo. Rev. Stat. § 115.920(1); Nev. Rev. Stat. § 293.269921(1)(b), (2); N.J. Stat. Ann. § 19:63-22(a); N.Y. Elec. Law § 8-412(1); N.C. Gen. Stat. § 163A-1310; N.D. Cent. Code Ann. § 16.1-07-09; Ohio Rev. Code Ann. § 3509.05(D)(2)(a); Or. Rev. Stat. § 254.470(6)(e)(B); 25 Pa. Cons. Stat. § 3511(a); R.I. Gen. Laws § 17-20-16; S.C. Code Ann. § 7-15-700(A); Tex. Elec. Code Ann. § 86.007(a)(2); Utah Code Ann. § 20A-3a-204(2)(a); Va. Code Ann. § 24.2-709(B); Wash. Rev. Code Ann. § 29A.40.091; W. Va. Code § 3-3-5(g)(2) (tied to day of canvassing, which is five days after election); *see also* Nat'l Conference of State Legislatures, *Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots* (July 12, 2022), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots.

[5] Ala. Code § 17-11-18(b); Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii); Fla. Stat. § 101.6952(5); Ga. Code Ann. § 21-2-386(a)(1)(G); Ind. Code § 3-12-1-17(b); Mo. Rev. Stat. § 115.920(1); 25 Pa. Cons. Stat. § 3511(a); R.I. Gen. Laws § 17-20-16; S.C. Code Ann. § 7-15-700(A).

it serves as an important protection for the franchise of military voters stationed abroad while serving our country. It is also consistent with Congress's clear direction that citizens who are overseas, including members of the military, must not be disenfranchised. *Bomer*, 199 F.3d at 777 (discussing purposes behind UOCAVA, including how it requires States to provide absentee ballots to certain voters); *see also Doe v. Walker*, 746 F. Supp. 2d 667, 670-71 (D. Md. 2010) (discussing purposes of military-voting acts); 156 Cong. Rec. S4513–02 (daily ed. May 27, 2010) (statement of Sen. Schumer) (recounting legislative history of Military and Overseas Voter Empowerment Act, Pub. L. No. 111-84, §§ 577-82, 583(a), 584-87, 123 Stat. 2190 (2009)).

Accepting Plaintiffs' argument would invalidate those statutes, and disenfranchise mail-in voters, including members of the military who vote in Mississippi. It also cannot be reconciled with longstanding historical practice. Plaintiff's radical and unsupported construction of federal law therefore must be rejected. *Bomer*, 199 F.3d at 776.

### 3.    Plaintiffs' Interpretation Would Lead to Absurd Results

Statutes should be interpreted to reach "a sensible construction that avoids attributing to [Congress] either an unjust or an absurd conclusion." *United States v. Granderson*, 511 U.S. 39, 56 (1994) (quotation marks omitted). Indeed, avoiding absurd results is "[a]xiomatic in statutory interpretation." *United States v. A Female Juvenile*, 103 F.3d 14, 16 (5th Cir. 1996). Although the full scope of Plaintiffs' position is obscure, what is clear is the absurd results that will follow if that position were adopted. Requiring all votes to be submitted *and* received as of election day would work mischief, regardless of whether that requirement was based on the meaning of "casting" a vote or based on some requirement that votes be cast and received as of election day.

To start, Plaintiffs offer no meaningful basis for distinguishing between votes received *after* election day and votes received *before* election day. If counting a ballot received after election day "holds voting open after Election Day," *see* RNC Compl. ¶ 68; Libertarian Party Compl. ¶ 42, it would seem to follow that counting a ballot received before election day would likewise extend the "election" to a period before the congressionally prescribed day. That would,

however, mean that absentee voting would be valid only for votes submitted and received *on* Election Day itself, leading to an absurdly difficult (if not impossible) system for voting by mail.

In response to this problem, Plaintiffs might contend (atextually) that the "election" must be complete and *final* as of election day, but can begin taking place before election day. But elections are *never* final as of election day. *See Millsaps v. Thompson*, 259 F.3d 535, 546 (6th Cir. 2001) (recognizing and explaining in detail how "official action to confirm or verify the results of the election extends well beyond federal election day"). Extensive counting and certification efforts occur thereafter, and Plaintiffs make no claim that *those* efforts improperly hold open the day for elections. Nor could they. Requiring election officials to tally millions of votes by midnight on election day would be absurd.[6] It would also require Plaintiffs to draw a meaningful distinction between receipt and counting of votes, which they have not done under either possible articulation of their position. Instead, the only reasonable understanding of the "final selection" language in *Foster* is the plain meaning of the statutory language as articulated above: the relevant *choice* must conclude by election day. Surrounding ministerial efforts, whether before or after the election, are irrelevant.

> 4.    Tossing Out Ballots Submitted Before, but Received After, Election Day Would Frustrate the Purposes Animating Federal Law

Plaintiffs' interpretation cannot be squared with the purpose of the election day statutes. As the Fifth Circuit has explained, the election day statutes "reflect[] Congress's concern that citizens be able to exercise their right to vote." *Bomer*, 199 F.3d at 777. That court could not "conceive that Congress intended the federal election day statutes to have the effect of impeding

---

[6] This interpretation would also result in serious constitutional and statutory problems. For example, the inevitable inability to count all votes submitted on election day by midnight would create Equal Protection problems—treating similarly situated voters differently by the pure happenstance of whether officials were able to count their votes in time. It might also be in tension with 52 U.S.C. § 10502(d), which requires States to provide absentee voting for presidential elections and to hold open the deadline for receipt of those votes at least until election day. If states are unable to count all votes received on election day under Section 10502(d), Plaintiffs' theory would bar them from doing so after election day (in violation of federal law).

citizens in exercising their right to vote." *Id.* That would be the ***precise*** result of accepting Plaintiffs' position. Plaintiffs would have Mississippi election officials toss out perfectly good votes cast by election day simply because they were received after election day. But that cannot be what Congress intended.

Likewise, Section 23-15-637(1)(a) does not "foster either of the primary evils identified by Congress as reasons for passing the federal statutes[.]" *Bomer*, 199 F.3d at 777. Nothing about that statute establishes two (or more) election days: every vote must be submitted as of election day. *See id.* Plaintiffs' allegation that Mississippi law "holds open" election day just ignores the clear operation of Section 23-15-637(1)(a), which guarantees that to be counted every vote must be cast by election day. Moreover, ballots arriving a bit ***later*** cannot create ***earlier*** results that might distort other elections. *See id.*

In short, Plaintiffs' interpretation would stretch the election day statutes beyond their purpose. As the Fifth Circuit has held, that is a strong reason to reject that interpretation. *Bomer*, 199 F.3d at 777.

**B.    Plaintiffs' Preemption Claim Fails Because There Is No Conflict Between Federal Law and Mississippi Law**

To prevail on their preemption claim, Plaintiffs must establish that Section 23-15-637 directly conflicts with federal law. They cannot do so.

Under the Constitution, States are responsible for "the mechanics" of federal elections. *Foster*, 522 U.S. at 69. They are "given the initial task" of prescribing the manner of such elections, *Storer v. Brown*, 415 U.S. 724, 729-30 (1974)—an authority that empowers States to "provide a complete code for congressional elections," including as to "protection of voters, prevention of fraud and corrupt practices, [and] counting of votes," *Smiley v. Holm*, 285 U.S. 355, 366 (1932), subject, of course, to Congress's superior authority as well as all applicable federal and state constitutional constraints. *See Moore* v. *Harper*, 600 U.S. 1, 10 (2023); *Foster*, 522 U.S. at 69; *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832-33 (1995). Courts have consistently

held that state laws on the receipt and counting of ballots are preempted only if they "directly conflict" with the federal election day statutes, *Bomer*, 199 F.3d at 775.

There is no conflict between federal law and Mississippi's Ballot Receipt Deadline. Federal law does not forbid the receipt or counting of votes after election day, only requiring the final *choice* of candidates be finalized by election day. Mississippi law complies with the governing federal law by requiring all votes to be completed and submitted, and thus the "election" to conclude, as of election day. Miss Code § 23-15-637(1)(a). Mississippi law provides that absentee ballots are cast when they are completed and mailed; receipt occurs after the votes have already been cast. That distinction is borne out in various provisions of the Mississippi Code. *E.g.*, Miss. Code §§ 23-15-637(2) ("The registrar shall deposit all absentee ballots which have been ***timely cast*** and ***received by mail*** ...." (emphasis added)), 23-15-645(1) (explaining that "absentee ballots" will be announced simultaneously with "all ***other*** votes cast on election day" (emphasis added)), 23-15-699 (discussing when the "registrar has ***received*** a ***voted*** absentee ballot" (emphasis added)). Section 23-15-637(1)(a) thus ensures that votes are cast by election day, requiring absentee ballots be "postmarked" by that day. No more is required under federal law, and there is no conflict here.

Indeed, courts have reached the same conclusion with respect to comparable provisions enacted in other states. *Bost v. Illinois State Bd. of* Elections, No. 22-CV-02754, 2023 WL 4817073, at *11 (N.D. Ill. July 26, 2023); *see Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020); *cf. Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 368 n.23 (Pa. 2020). In each case, state law required all ballots be cast by election day but permitted those ballots to be received and/or counted later. And every court held, for reasons similar to those articulated above, that the state statutes complied with federal law. *Bost* concluded that Illinois law "operates harmoniously" with the federal election day statutes, despite allowing for ballots received after election day to be counted, because votes must be cast by election day. *Bost*, 2023 WL 4817073 at *11. *Way* reached the same conclusion, *Way*, 492 F. Supp. 3d at 372 ("Plaintiffs direct the Court to no federal law regulating methods of determining the timeliness of mail-in

ballots or requiring that mail-in ballots be postmarked."), and so did *Boockvar*, 238 A.3d at 368 n.23 ("[A]llowing the tabulation of ballots received after Election Day does not undermine the existence of a federal Election Day").

### C.     Plaintiffs' Constitutional Claims Fail for Independent Reasons

Plaintiffs also assert constitutional claims based on the right to vote and based on the right to stand for election.  Those claims fail for an independent reason:  nothing about Mississippi law burdens Plaintiffs' right to vote or stand for office, and there are no allegations in the complaint that plausibly claim otherwise.   To the contrary, Plaintiffs are seeking to diminish the right to vote.

Burdens on a citizen's right to vote are reviewed under the *Anderson-Burdick* test. *See Texas League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 143 (5th Cir. 2020) (assuming right to vote was implicated); *Texas Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996). The first step is to determine whether the right has been burdened at all.  *See Texas League of United Latin Am. Citizens*, 978 F.3d at 144-45 (explaining how actions that made it easier to vote did not burden the right to vote). Laws that do not make it harder to vote do not implicate the right to vote. *Id.* at 144.  The same is true of laws that do not impede a candidate's ability to stand for office. *Cf. Texas Indep. Party*, 84 F.3d at 184 (applying the same *Anderson-Burdick* framework in the context of the right to stand office).

Nothing about the Ballot Receipt Deadline law makes it harder for voters to exercise their right to vote or for candidates to run for office.  It simply ensures that qualified voters do not have their timely-cast ballots rejected. It accordingly *protects* the right to vote.  Indeed, it is Plaintiffs' claim that threatens to impede the right to vote.  Their theories therefore fail to state a claim under *Anderson-Burdick*.  *See Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (affirming dismissal of challenge to law that "does not burden anyone's right to vote" and instead "makes it easier for some voters to cast their ballots by mail").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' suits for failure to state a claim upon which relief may be granted.

Respectfully submitted, this the 6th day of March, 2024.

DEMOCRATIC NATIONAL COMMITTEE

/s/ David W. Baria
David W. Baria, MSB #8646

David W. Baria, MSB #8646
COSMICH, SIMMONS & BROWN, PLLC
544 MAIN STREET
BAY ST. LOUIS, MS  39520
T:  228-242-4987
F:  601-863-0078
E: david.baria@cs-law.com