# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; and MATTHEW LAMB,<br><br>Plaintiffs,<br><br>v.<br><br>JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, TONI JO DIAZ, BECKY PAYNE, BARBARA KIMBALL, CHRISTENE BRICE, and CAROLYN HANDLER, *in their official capacities as members of the Harrison County Election Commission*, and MICHAEL WATSON, *in his official capacity as the Secretary of State of Mississippi*,<br><br>Defendants. | Case Nos.  1:24-CV-00025-LG-RPM<br>            1:24-CV-00037-LG-RPM<br><br>**MEMORANDUM IN SUPPORT OF DEMOCRATIC NATIONAL COMMITTEE'S MOTION TO INTERVENE AS DEFENDANT** |
| LIBERTARIAN PARTY OF MISSISSIPPI,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, TONI JO DIAZ, BECKY PAYNE, BARBARA KIMBALL, CHRISTENE BRICE, and CAROLYN HANDLER, *in their official capacities as members of the Harrison County Election Commission*, and MICHAEL WATSON, *in his official capacity as the Secretary of State of Mississippi*,<br><br>Defendants. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................2

    A. Statutory Background ..................................................................................................2

    B. The Democratic National Committee .........................................................................3

    C. Plaintiffs' Lawsuits ......................................................................................................3

III. ARGUMENT .........................................................................................................................4

    A. The DNC Is Entitled to Intervene as of Right Under Rule 24(a) ................................4

        1. The Motion to Intervene Is Timely ..................................................................5

        2. The DNC Has a Significant Protectable Interest in the Outcome of the Litigation ..................................................................................................6

        3. Denial of the Motion to Intervene Will Impair the DNC's Ability to Protect Its Interests ...........................................................................................9

        4. The DNC's Interests Are Not Adequately Represented by the Existing Parties ................................................................................................9

    D. In the Alternative, the DNC Should Be Granted Permissive Intervention Under Rule 24(b) ........................................................................................................11

    E. Alternatively, the DNC Should Be Granted Leave to Participate *Amicus Curiae* ........................................................................................................................12

IV. CONCLUSION ...................................................................................................................12

CERTIFICATE OF SERVICE ..................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ass'n of Prof. Flight Attendants v. Gibbs*,
 804 F.2d 318 (5th Cir. 1986) ................................................................................................... 5

*Brumfield v. Dodd*,
 749 F.3d 339 (5th Cir. 2014) ................................................................................................... 9

*Builders Ass'n of Greater Chicago v. Chicago*,
 170 F.R.D. 435 (N.D. Ill. 1996) ............................................................................................... 8

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
 595 U.S. 267 (2022) ................................................................................................................. 5

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
 647 F.3d 893 (9th Cir. 2011) ............................................................................................. 9, 10

*Cobell v. Norton*,
 246 F. Supp. 2d 59 (D.D.C. 2003) ......................................................................................... 12

*Democratic Nat'l Comm. v. Bostelmann*,
 No. 20-cv-249, 2020 WL 1505640 (W.D. Wis. Mar. 28, 2020) .............................................. 8

*Diaz v. Southern Drilling Corp.*,
 427 F.2d 1118 (5th Cir. 1970) ................................................................................................. 5

*Donald J. Trump for President, Inc. v. Murphy*,
 No. 20-cv-10753, 2020 WL 5229209 (D. N.J. Sept. 01, 2020) ............................................... 9

*Edwards v. City of Houston*,
 78 F.3d 983 (5th Cir. 1996) ..................................................................................................... 5

*Field v. Anadarko Petroleum Corp.*,
 35 F.4th 1013 (5th Cir. 2022) .................................................................................................. 5

*Grutter v. Bollinger*,
 188 F.3d 394 (6th Cir. 1999) ................................................................................................... 9

*Issa v. Newsom*,
 No. 2:20-cv-01044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ......................... 5, 7, 9, 10

*John Doe No. 1 v. Glickman*,
 256 F.3d 371 (5th Cir. 2001) ................................................................................................... 5

*La Union del Pueblo Entero v. Abbott*,
   29 F.4th 299 (5th Cir. 2022) ............................................................................................. passim

*McCutcheon v. FEC*,
   572 U.S. 185 (2014) ..................................................................................................................7

*Newby v. Enron Corp.*,
   443 F.3d 416 (5th Cir. 2006) ..................................................................................................11

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
   355 F. Supp. 2d 1061 (N.D. Cal. 2005) ..................................................................................12

*Owen v. Mulligan*,
   640 F.2d 1130 (9th Cir. 1981) ..................................................................................................7

*Paher v. Cegavske*,
   No. 3:20-cv-00243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ...............................5, 7, 9, 11

*In re Roxford Foods Litig.*,
   790 F. Supp. 987 (E.D. Cal. 1991) .........................................................................................12

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ..................................................................................................10

*St. Bernard Par. v. Lafarge N. Am., Inc.*,
   914 F.3d 969 (5th Cir. 2019) ....................................................................................................5

*Texas Democratic Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) ...............................................................................................7, 10

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ....................................................................................................6

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) .............................................................................................................9, 10

*United States ex rel Hernandez v. Team Fin., L.L.C.*,
   80 F.4th 571 (5th Cir. 2023) ...................................................................................................11

*United States v. Classic*,
   313 U.S. 299 (1941) ..................................................................................................................7

*United States v. Louisiana*,
   751 F. Supp. 608 (E.D. La. 1990) ...........................................................................................12

*Vote Choice, Inc. v. DiStefano*,
   4 F.3d 26 (1st Cir. 1993) ...........................................................................................................8

*Voto Latino v. Hirsch*,
 No. 1:23-cv-861, 2024 WL 230931 (M.D.N.C. Jan. 21, 2024) ................................................8

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
 834 F.3d 562 (5th Cir. 2016) ................................................................................................10

**STATE STATUTES**

Miss. Code § 23-15-627 ............................................................................................................... 2

Miss. Code § 23-15-637 ............................................................................................................1, 9

Miss. Code § 23-15-637(1)(a) ............................................................................................. passim

Miss. Code § 23-15-673 ............................................................................................................... 2

Miss. Code § 23-15-675 ............................................................................................................... 2

Miss.Code § 23-15-713(c) ........................................................................................................... 2

Miss. Code § 23-15-713(d) .......................................................................................................... 2

Miss. Code § 23-15-713(g) .......................................................................................................... 2

Miss. Code § 23-15-713(h) .......................................................................................................... 2

Miss. Code § 23-15-719(1) .......................................................................................................... 2

**FEDERAL RULES**

Fed. R. Civ. P. 24 ........................................................................................................................12

Fed. R. Civ. P. 24(a) ........................................................................................................ 1, 4, 6, 8

Fed. R. Civ. P. 24(b) .............................................................................................................. 2, 11

Fed. R. Civ. P. 24(c) .................................................................................................................... 2

**LEGISLATIVE MATERIALS**

*House Bill 1521*, Miss. Leg.,
 https://billstatus.ls.state.ms.us//pdf/history/HB/HB1521.xml (last visited Mar.
 6, 2024) ....................................................................................................................................3

**TREATISES**

7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1909 (3d
 ed. 2023) ................................................................................................................................10

## I.      INTRODUCTION

The Republican National Committee, the Mississippi Republican Party, two individual plaintiffs, and the Libertarian Party of Mississippi (the "Plaintiffs")[1] sued several Mississippi officials (the "named Defendants"), alleging that a Mississippi statute, Miss. Code § 23-15-637(1)(a), violates federal law and as a result, Plaintiffs' constitutional rights.  Section 23-15-637 forms part of Mississippi's Absentee Balloting Procedures Law, setting the deadline for receipt of mail-in ballots.  To be counted, a mail-in ballot must "be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." *Id.* Plaintiffs ask the Court to enjoin this "Ballot Receipt Deadline."  They argue that federal law prohibits counting mail-in ballots received after the date of the election—even if those ballots were completed and mailed by election day.

The Democratic National Committee ("DNC") is entitled to intervene as a defendant in the above-captioned suits.  *See* Fed. R. Civ. P. 24(a)(2) (providing for intervention as of right).  The DNC, and its counterpart the Republican National Committee, are regularly permitted to intervene as of right in suits challenging state election procedures.  This practice reflects the simple notion that the DNC, as the national committee of the Democratic Party, has a strong and particularized interest in how elections are run, and in seeing that Democratic candidates succeed.  That interest is especially pronounced in cases like these, where the Plaintiffs are attempting to disenfranchise countless voters and stack the deck in favor of Republican candidates.  The DNC's motion is timely, and no prejudice to the parties will result from permitting the DNC to join these suits.  Specifically, the DNC will conform to the recently entered schedule.  *See* Case No. 1:24-cv-25, ECF No. 38.  The DNC therefore easily satisfies Rule 24(a)(2)'s requirements for mandatory intervention, and the Court "must" grant the DNC's motion to intervene.  *See* Fed. R. Civ. P. 24(a).

---

[1] The Libertarian Party of Mississippi filed a separate suit, Case No. 1:24-cv-37, which the Court consolidated with the other plaintiffs' action, Case No. 1:24-cv-25.  The DNC's motion to intervene pertains to both suits, so the Court need not address the cases separately.

But even if the Court disagrees on that score, the DNC should be allowed to intervene permissively under Rule 24(b) or be permitted to appear as an *amicus curiae*. Although the DNC's legal arguments in defense of Section 23-15-637(1)(a) will overlap to some extent with those of the named Defendants (or intervenors), the DNC will offer a unique perspective that would aid the Court in making its ultimate determination. The DNC's proposed motion to dismiss, attached as Exhibit B, reflects that perspective.[2]

## II.   BACKGROUND

### A.   Statutory Background

In Mississippi, certain voters are entitled to vote absentee by mail. This includes voters who are enlisted or commissioned members of the Armed Forces, Miss. Code §§ 23-15-673, 23-15-675; voters who must work on election day during the times at which the polls are open, *id.* § 23-15-713(h); voters who have permanent or temporary disabilities that impact their ability to vote, *id.* § 23-15-713(d); voters who are "away from [their] county of residence on election day," *id.* § 23-15-713(c); and voters who are members of Mississippi's congressional delegation or employees of any member of that delegation, *id.* § 23-15-713(g). *See also id.* § 23-15-627 (identifying eligible voters in application for absentee ballot). Eligible voters must apply, and if their applications are approved, the registrar will mail them an absentee ballot and return envelope. *See id.* §§ 23-15-627 (application), 23-15-719 (process). After an absentee voter has completed their ballot, they must mail it to the address provided on the official return envelope. *Id.* § 23-15-719(1).

---

[2] The attached motion to dismiss satisfies the DNC's obligation to provide a pleading with its motion to intervene, *see* Fed. R. Civ. P. 24(c), but the DNC is prepared to follow any procedure and schedule the Court prefers, including forgoing the pleadings stage in favor of resolution on cross-motions for summary judgment. *See* Case No. 1:24-cv-25, ECF No. 27 (granting named Defendants motion for exemption from answering or otherwise responding to the complaint). The DNC is willing to conform to the current schedule for summary judgment. Case No. 1:24-cv-25, ECF No. 38.

To be counted, an absentee ballot returned by mail must "be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." *Id.* § 23-15-637(1)(a). This Ballot Receipt Deadline was enacted in 2020 with overwhelming bipartisan support. *See House Bill 1521*, Miss. Leg., https://billstatus.ls.state.ms.us/2020/pdf/history/HB/HB1521.xml (last visited Mar. 6, 2024) (collecting legislative history). Measures in the House, Senate, and the Conference Committee report were all adopted by wide (sometimes unanimous) margins that were not divided along political lines. *See id.* (linking to vote tallies). Governor Reeves signed the bill into law on July 8, 2020. *Id.*

### B. The Democratic National Committee

The DNC is the oldest continuing party committee in the United States. Its organizational purposes and functions are to communicate the Democratic Party's position and messages on issues; protect voters' rights; and aid and encourage the election of Democratic candidates at the national, state, and local levels, including by persuading and organizing citizens not only to register to vote as Democrats, but also to cast their ballots for Democratic candidates. The DNC is composed of its chair, vice chairs, and over 200 members elected by Democrats in every U.S. state and territory and the District of Columbia. The DNC also represents millions of voters scattered about the country, including many within Mississippi.

### C. Plaintiffs' Lawsuits

The Republican National Committee, the Mississippi Republican Party, and two individual plaintiffs raise three claims, all of which assert a conflict between federal law and Mississippi's Ballot Receipt Deadline. *See* Case No. 1:24-cv-25, Compl. ¶¶ 62-80 ("RNC Compl."). The first claim is a preemption argument: by requiring Mississippi counties to count mail-in ballots that are "received up to five business days after Election Day," Section 23-15-637(1)(a) allegedly conflicts with federal law. RNC Compl. ¶ 67. The two other claims, which purport to sound in constitutional provisions, are premised on that alleged conflict. By counting votes that have been received after Election Day, these plaintiffs claim, Mississippi officials are "depriving Plaintiffs of rights protected under the First and Fourteenth Amendment." RNC Compl. ¶ 72. Specifically,

these plaintiffs claim they must "spend money" and other resources in reliance "on unlawful provisions of state law." RNC Compl. ¶ 72. Finally, they allege the same Mississippi statute "violates the right to vote" by diluting "honest votes." RNC Compl. ¶ 77.

The Libertarian Party of Mississippi raises three claims, all of which purport to sound in constitutional rights. Case No. 1:24-cv-37, Compl. ¶¶ 57-81 ("Libertarian Party Compl."). Each claim is premised on the same purported conflict raised in the RNC complaint. *See* Libertarian Party Compl. ¶¶ 58, 65, 76-77. This is true even of the claim that purports to sound in the Elections and Electors Clauses. *See* Libertarian Party Compl. ¶¶ 60-81. That claim relies on an allegation that Mississippi law establishes an election day that conflicts with (or usurps) Congress's choice to enact the federal election day statutes. *See* Libertarian Party Compl. ¶¶ 60-81. The other two counts in the Libertarian Party's complaint, like similar counts in the RNC complaint, purport to sound in the right to vote and right to stand for office. Libertarian Party Compl. ¶¶ 58, 65.

Vet Voice Foundation and the Mississippi Alliance for Retired Americans ("Intervenor-Defendants") moved to intervene as defendants in the suit filed by the Republican National Committee and other plaintiffs. *See* Case No. 1:24-cv-25, ECF No. 6. The Court granted that motion as unopposed.

**III.   ARGUMENT**

    **A.   The DNC Is Entitled to Intervene as of Right Under Rule 24(a)**

The DNC satisfies all four requirements for intervention as of right. *See* Fed. R. Civ. P. 24(a). Specifically, (1) this application for intervention is "timely," (2) the DNC has an "interest" in the subject of these actions, (3) the disposition of these cases will "impair" the DNC's ability to protect its interests, and (4) there is "inadequate representation" of DNC's interests by existing parties[3] to this litigation. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir.

---

[3] To date, the Court has not ruled on a motion to intervene filed by Disability Rights Mississippi and the League of Women Voters of Mississippi. *See* Case No. 1:24-cv-25, ECF No. 18. Because the DNC's interests would not be adequately represented even if those parties intervene, the pending motions have no impact of the relief requested here.

2022) (cleaned up) (reciting four-element test). The DNC (and other party committees) are regularly permitted to intervene as of right in suits regarding states' election procedures, and there is no reason these cases should be treated any differently. *E.g.*, *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020).

### 1. The Motion to Intervene Is Timely

Timeliness is a holistic inquiry, considering "all the circumstances." *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022) (quoting *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022)). If a motion is filed before any "legally significant proceedings," it will generally be timely. *See Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970). Prejudice is also relevant to the timeliness inquiry: the court should consider both the burden on existing parties from granting the motion and the burden on the proposed intervenor from denying the motion. *See St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 975 (5th Cir. 2019). Finally, the Fifth Circuit has required courts to consider any "usual circumstances" that might bear on timeliness. *See id.* at 975-76.

The timeliness of this motion cannot be seriously questioned. The DNC seeks to intervene barely a month after the Plaintiffs filed their suits and before any legally significant proceedings. No party has answered; dispositive motions have not yet been briefed; and no hearing has been held. That, alone, should end the inquiry. The Fifth Circuit has upheld the timeliness of intervention motions filed much longer after the filing of the complaint. *See, e.g.*, *Ass'n of Prof. Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (delay of five months); *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (delay of 37 and 47 days); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (delay of one month); *cf. Edwards*, 78 F.3d at 1001 (explaining that most denials of intervention based on untimeliness involve motions filed after judgment was entered).

All other factors also support the timeliness of the DNC's motion. The existing parties will suffer no prejudice if the DNC intervenes. The DNC is prepared to adhere to the current case

schedule without delay. *See* Case No. 1:24-cv-25, ECF No. 38. By contrast, the DNC would suffer great prejudice if it were barred from participating in these suits, thereby foreclosing its ability to protect the significant interests outlined below. And there are no unusual circumstances that would justify a conclusion that the DNC's intervention motion is untimely.

### 2. The DNC Has a Significant Protectable Interest in the Outcome of the Litigation

Any "direct, substantial, legally protectable interest in the proceedings" will suffice to satisfy the interest requirement in Rule 24(a)(2). *La Union*, 29 F.4th at 305 (citation omitted). This inquiry "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). But a "legally enforceable" interest, such that the intervenor would have "standing to pursue [its] own claim," is not required. *La Union*, 29 F.4th at 305 (citation omitted). And the "interest requirement" is relaxed in "a case involving a public interest question" raised by a "public interest group." *Id.* at 305-06 (citation omitted).

This standard is readily met here. Plaintiffs allege that a Mississippi statute, which has been in effect for years, is invalid. *See* RNC Compl. ¶ 5 (seeking to enjoin Miss. Code § 23-15-637(1)(a)); Libertarian Party Compl. ¶¶ 1, 10. They claim that, under federal law, every absentee vote must be received (and by implication, possibly counted) by election day. If successful, Plaintiffs' challenge would make casting a vote more difficult for thousands of Mississippians, including numerous members of the DNC. *See* RNC Compl. ¶ 58 (explaining that Mississippi received 22,221 absentee ballots in the 2022 general election and 142,591 in 2020 general election). The DNC and its members have at least three powerful interests in preventing that deeply unfair result.

**First**, the disposition of these suits will impact the strong interest of DNC members and constituents in having their votes counted. The DNC has members and constituents in Mississippi who will avail themselves of § 23-15-637(1)(a)'s absentee ballot procedures. "Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state

to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). Indeed, "[t]here is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014). If Plaintiffs' challenge is successful, numerous Democratic Party voters who are unable to vote in person on Election Day could lose the ability to have their votes counted. This includes many voters who are not members of, or represented by, the Intervenor-Defendants. The DNC has an overriding interest in preventing that outcome.

**Second**, if Plaintiffs succeed, the DNC will have to devote resources to encourage Mississippi voters to complete and mail their ballots well before election day to avoid disenfranchisement. Avoiding that expenditure is a "direct" and "substantial" interest of the DNC itself, separate from the interests of its constituent members. *See La Union*, 29 F.4th at 306; Miss. Code § 23-15-637(1)(a). In *La Union*, the Fifth Circuit upheld a similar interest as sufficient to support Republican Party committees' intervention as of right: the challenged statute would have required the party committees to expend resources training poll watchers and volunteers. That reasoning applies equally here.

**Third**, these suits threaten to prevent the election of Democratic candidates. *See* RNC Comp. ¶¶ 57-59. Interference with a political party's electoral prospects constitutes a particularized interest. *E.g.*, *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 (5th Cir. 2006) (holding that a "basis for the [Texas Democratic Party's] direct standing is harm to its election prospects" and that "a political party's interest in a candidate's success is not merely an ideological interest"); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient interest for intervention). And courts have permitted political parties to intervene on these grounds. *See, e.g.*, *Issa*, 2020 WL 3074351, at *3 (granting intervention of state party where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates" (citation omitted)); *Paher*, 2020 WL 2042365, at *2 (similar). No other

defendant or Intervenor-Defendant has an interest in the election of candidates, let alone Democratic candidates specifically.

One of the operative complaints is clearly intended to disadvantage Democratic candidates and reduce the competitiveness of Mississippi political races. That complaint alleges that mail-in ballots can result in a "blue shift" because "ballots from Democratic voters" tend to arrive later. RNC Compl. ¶ 57. Thus, according to some plaintiffs, counting votes "received" after election day "specifically and disproportionately harms Republican candidates and voters." RNC Compl. ¶ 59. In other words, those plaintiffs seek to invalidate Section 23-15-637(1)(a) to benefit Republican candidates and disadvantage Democratic candidates. *Cf. Vote Choice, Inc. v. DiStefano*, 4 F.3d 26, 38 (1st Cir. 1993) ("Because a head-to-head election has a single victor, any benefit conferred on one candidate is the effective equivalent of a penalty imposed on all other aspirants for the same office."). That attack on Democratic candidates, even if based on unsupported and unsupportable facts, gives rise to a protectable interest for the DNC to come to those candidates' defense. The DNC provides extensive support for Democratic candidates as a core part of its purpose, including by providing candidates data, tools, and infrastructure to run their campaigns; providing candidates with strategic advice; and developing the foundational materials that govern the presidential nominating process. Plaintiffs' suits will harm electoral competition in Mississippi.

Ultimately, the DNC is "uniquely qualified" to defend against these suits. *E.g.*, *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (explaining the DNC is uniquely qualified to oppose the RNC); *see also Builders Ass'n of Greater Chicago v. Chicago*, 170 F.R.D. 435, 441 (N.D. Ill. 1996) (similar). Plaintiffs' argument cuts at the very core of the DNC's purposes, which include protecting the legal rights of voters and encouraging the election of Democratic candidates at the national, state, and local levels. *See Voto Latino v. Hirsch*, No. 1:23-cv-861, 2024 WL 230931, at *11 (M.D.N.C. Jan. 21, 2024) (recounting the DNC's purposes). Thus, the DNC's interests are particularized and legally protectable, satisfying Rule 24(a)(2).

### 3. Denial of the Motion to Intervene Will Impair the DNC's Ability to Protect Its Interests

A proposed intervenor bears the "*minimal*" burden of showing the relevant suit "may" impair or impede on the ability to protect their interests. *Brumfield v. Dodd*, 749 F.3d 339, 344 & n.2 (5th Cir. 2014) (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)). Courts have "little difficulty" finding that burden satisfied when the proposed intervenor has a "significant protectable interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citation omitted).

There is little question that disposition of these matters will impair the DNC's ability to protect its interests. Any decision invalidating the relevant portions of Section 23-15-637(1)(a) will place additional burdens on absentee voters—including members of the Democratic Party and voters who would support Democratic candidates. Likewise, if Plaintiffs succeed, the DNC will need to expend resources to prevent the disenfranchisement of numerous voters. And a decision invalidating Section 23-15-637 would harm Democratic candidates' election prospects. All told, a decision in Plaintiffs' favor will impair the DNC's interests in protecting the legal rights of voters and encouraging the election of Democratic candidates.

These cases resemble the numerous decisions in which Courts found that a political party committee may intervene to prevent restrictions on voting access. *E.g. Paher*, 2020 WL 2042365, at *4 (granting DNC intervention in election law case brought by conservative interest group); *Issa*, 2020 WL 3074351, at *3 (granting Democratic Congressional Campaign Committee and California Democratic Party intervention in lawsuit by Republican congressional candidate); *Donald J. Trump for President*, *Inc.* v. *Murphy*, No. 20-cv-10753, 2020 WL 5229209, at *1 (D. N.J. Sept. 01, 2020) (granting Democratic Congressional Campaign Committee intervention in lawsuit by Republican candidate and party entities).

### 4. The DNC's Interests Are Not Adequately Represented by the Existing Parties

A proposed intervenor bears the "minimal" burden of showing its interests "may" not be adequately represented by any existing party. *La Union*, 29 F.4th at 307; *see Trbovich v. United*

*Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972).  Courts are typically "liberal in finding" this requirement is met because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests."  7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1909 (3d ed. 2023).  Even when adequate representation is presumed, that presumption can be overcome by showing the proposed intervenor has different interests germane to the cases at bar.  *See La Union*, 29 F.4th at 308.  The DNC more than meets that burden here.

The named Defendants, state officials charged with oversight of Mississippi elections, do not share the DNC's particular interest in the votes of Democratic Party members and the election of Democratic candidates.  Their stake is defined by their statutory duties, requiring them to "represent the broad public interest," *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994), and serve a "broad public mission," *see Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016).  The Intervenor-Defendants also do not have any interest in the votes of *Democratic* Party members and the election of *Democratic* candidates.

By contrast, the DNC's interests are much more particular.  The DNC's mission is to ensure that as many of its voters who have cast ballots have their votes counted and to have its candidates elected.  *See Issa,* 2020 WL 3074351, at *4 ("While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures."); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (citation omitted)); *Wal-Mart Stores*, 834 F.3d at 569; *Trbovich,* 404 U.S. at 538–39.  And the DNC's interests are at the core of these cases.  Plaintiffs' actions would

disenfranchise voters and will harm Democratic candidates. Nothing could be more "germane" to the DNC's purposes. *See La Union*, 29 F.4th at 308 (citation omitted).

In fact, the DNC's specific interests are likely to result in the DNC presenting different, even inconsistent, arguments compared to those offered by the named Defendants and Intervenor-Defendants. *See Paher*, 2020 WL 2042365, at *2 (granting intervention where litigants in state court action including voter engagement non-profit "may present arguments about the need to safeguard Nevadan's right to vote that are distinct from Defendants' arguments"). While the named Defendants are likely to defend Mississippi state law and their oversight of the election, they may not raise the merits arguments in the DNC's proposed motion to dismiss or that the DNC may present in future briefing. *See* Exhibit B.

### D. In the Alternative, the DNC Should Be Granted Permissive Intervention Under Rule 24(b)

If the Court does not grant intervention as a matter of right, the DNC respectfully requests that the Court exercise its discretion to allow it to intervene under Rule 24(b). Rule 24(b) permits intervention upon timely application when the "applicant's . . . defense and the main action have a question of law or fact in common." *Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006) (citation omitted). The timeliness analysis is no different than the analysis for mandatory intervention. *United States ex rel Hernandez v. Team Fin.*, *L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023). And the Fifth Circuit "has accepted that the claim or defense portion of Rule 24(b) is to be construed liberally." *Id.* at 577 (cleaned up).

The DNC easily meets the requirements for permissive intervention. As discussed above, its motion is timely. *See supra*, pp. 5-6. There is also one core "question of law" undergirding the named Defendants' and DNC's positions: the validity of Section 23-15-637(1)(a). Although each party will undoubtedly approach that question in different ways, informed by their unique interests, this is more than enough to satisfy the Fifth Circuit's "liberal" understanding of Rule 24(b). *Hernandez*, 80 F.4th at 578.

### E.  Alternatively, the DNC Should Be Granted Leave to Participate *Amicus Curiae*

The Court should grant the DNC leave to intervene.  Nonetheless, in the event the Court does not, the DNC seeks leave of the Court to participate as *amicus curiae*.  "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'"  *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (quoting *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003)).  "There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as amicus must merely make a showing that his participation is useful to or otherwise desirable to the court."  *In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991) (quoting *United States v. Louisiana*, 751 F. Supp. 608, 620 (E.D. La. 1990)).  As the representative of thousands of Mississippi Democrats and the Democratic Party's candidates for state and federal office, the DNC has a unique perspective not shared by any of the existing parties to these cases. And for the reasons explained above, *supra*, the DNC is likely to assist the Court by raising arguments not raised by the named Defendants or Intervenor-Defendants.

### IV.  CONCLUSION

For the foregoing reasons, the Court should grant the DNC's motion for leave to intervene pursuant to Rule 24, or, in the alternative, permit the DNC to participate as *amicus curiae.*

Respectfully submitted, this the 6th day of March, 2024.

DEMOCRATIC NATIONAL COMMITTEE

/s/ David W. Baria
David W. Baria, MSB #8646

David W. Baria, MSB #8646
COSMICH, SIMMONS & BROWN, PLLC
544 MAIN STREET
BAY ST. LOUIS, MS  39520
T:  228-242-4987
F:  601-863-0078
E: david.baria@cs-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to counsel of record.

This the 6th day of March, 2024.

/s/ David W. Baria<br>
David W. Baria