IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, et al. | PLAINTIFFS |
| v. | CAUSE NO. 1:24cv25-LG-RPM |
| JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County, et al. | DEFENDANTS |

*and*

| | |
|---|---|
| VET VOICE FOUNDATION and MISSISSIPPI ALLIANCE OF RETIRED AMERICANS | INTERVENOR DEFENDANTS |

*consolidated with*

| | |
|---|---|
| LIBERTARIAN PARTY OF MISSISSIPPI | PLAINTIFF |
| v. | CAUSE NO. 1:24cv37-LG-RPM |
| JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County, et al. | DEFENDANTS |

**ORDER DENYING MOTIONS OF DISABILITY RIGHTS OF MISSISSIPPI AND LEAGUE OF WOMEN VOTERS OF MISSISSIPPI TO INTERVENE AND GRANTING IN PART THE MOTION OF THE DEMOCRATIC NATIONAL COMMITTEE TO INTERVENE**

**BEFORE THE COURT** are the [18] Motion to Intervene filed by Disability Rights of Mississippi ("DRMS") and the League of Women Voters Mississippi ("the League") and the [45] Motion to Intervene filed by the Democratic National Committee ("DNC"). At times, the Court will collectively refer to DRMS, the

League, and DNC as "the movants." These movants seek to intervene as defendants in this case alleging that Miss. Code Ann. § 23-15-637(1)(a) violates federal election law. After reviewing the Motions, the record in this matter, and the applicable law, the Court finds that the Motions to Intervene should be denied because the currently existing parties to this lawsuit adequately represent the interests of the movants. However, the Court finds that the movants should be permitted to submit amici briefs to the Court by March 26, 2024, the deadline previously set forth in the Court's [38] Summary Judgment Briefing Scheduling Order.

## BACKGROUND

The plaintiffs in this consolidated action assert that Miss. Code Ann. § 23-15-637(1)(a) provides for absentee ballots received after Election Day to be counted in violation of federal law. Vet Voice Foundation and Mississippi Alliance for Retired Americans filed a [6] Motion to Intervene on February 9, 2024, which the Court granted on March 4, 2024. DRMS and the League filed their Motion to Intervene on February 21, 2024, and DNC filed its Motion to Intervene on March 6, 2024.

## DISCUSSION

### I. INTERVENTION OF RIGHT

"The very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). Fed. R. Civ. P. 24(a) provides that a court must permit a party to intervene if: (1) the application

for intervention is timely; (2) the applicant has an interest relating to the property or transaction that is the subject of the action; (3) the applicant is positioned in such a way that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest is inadequately represented by the existing parties to the lawsuit. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). "The court should liberally construe the test for mandatory intervention and allow intervention where no one would be hurt, and the greater justice could be attained." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021) (quoting *Texas v. United States*, 805 F.3d 653, 656-57 (5th Cir. 2015)). The party seeking to intervene must prove all four elements set forth in Fed. R. Civ. P. 24(a) in order to demonstrate a right to intervene. *Brumfield*, 749 F.3d at 341; *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

The first element is timeliness, which is determined by examining four factors: (1) "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene"; (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case"; (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied"; and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." *Edwards*, 78 F.3d at 1000 (quoting *Stallworth v. Monsanto*

*Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)). This case has been pending for less than two months, discovery has not been conducted, and dispositive motions have not been filed. *See Edwards*, 78 F.3d at 1000-01 (finding that motions to intervene filed within 37 to 47 days of receiving notice of the action were timely). The Motions to Intervene are timely.

To demonstrate the second element, the movants must prove that they have a "direct, substantial, legally protectable interest in the proceedings." *Edwards*, 78 F.3d at 1004. The first movant, DRMS, is a non-profit corporation that serves as Mississippi's protection and advocacy system for citizens with disabilities. (Mot., Ex. A at 2, ECF No. 18-1) (citing 42 U.S.C. § 10801, et seq.; 42 U.S.C. § 15041, et seq.).[1] DRMS claims it has an interest in this lawsuit because:

> [i]f Plaintiffs' requested relief is granted, DRMS's members will . . . face substantially increased risk of disenfranchisement, and DRMS would need to expend additional resources to update those materials and trainings, and to warn individuals with disabilities that they face a higher risk of disenfranchisement if they vote by absentee ballot.

(*Id.* at 3). Polly Tribble, DRMS's Executive Director of Disability Rights Mississippi testifies:

---

[1] The Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10801, et seq., was enacted to "(1) to ensure that the rights of individuals with mental illness are protected; and (2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness . . . ." 42 U.S.C. § 10801(b). The purpose of the Developmental Disabilities Assistance and Bill of Rights Act is "to provide for allotments to support a protection and advocacy system . . . in each State to protect the legal and human rights of individuals with developmental disabilities . . . ." 42 U.S.C. § 15041. Each state must have a protection and advocacy system in order to receive federal assistance for its Council on Developmental Disabilities. 42 U.S.C. § 15043(a)(1).

>Any attempt to roll back the accommodations that are afforded by the extended deadline past Election Day would harm or frustrate the organization's efforts by potentially dismantling the very provisions that make absentee voting accessible for individuals with disabilities.

(Mot., Ex. A at 8, ECF No. 18-1).

Meanwhile, the second movant — the League — describes itself as "a grassroots membership organization that seeks to involve citizens in the civic process, including by helping Mississippi voters navigate the absentee voting process." (*Id.*).  It has provided a declaration signed by its co-president, Margaret Ciraldo, in which she notes that a large number of the League's members are eligible to vote absentee because they are over age 65.  (Mot., Ex. B at 3-4, ECF No. 18-2).  She expresses concern that, if the relief requested by the plaintiffs is granted, League members who mail absentee ballots shortly before Election Day may become disenfranchised and the League would be required to expend significant additional resources on member education concerning absentee voting.  (*Id.* at 5-6).

The third movant is the DNC, which provides the following description of itself:

>The DNC is the oldest continuing party committee in the United States.  Its organizational purposes and functions are to communicate the Democratic Party's position and messages on issues; protect voters' rights; and aid and encourage the election of Democratic candidates at the national, state, and local levels, including by persuading and organizing citizens not only to register to vote as Democrats, but also to cast their ballots for Democratic candidates.  The DNC is composed of its chair, vice chairs, and over 200 members elected by Democrats in every U.S. state and territory and the District of Columbia.  The DNC also represents millions of voters scattered about the country, including many within Mississippi.

(DNC's Mem. at 8, ECF No. 46).  The DNC claims three interests in the outcome of this lawsuit.  First, disposition in plaintiffs' favor "will impact the strong interest of DNC members and constituents in having their votes counted."  (*Id*. at 6).  Second, the DNC will have to devote resources to encourage Mississippi voters to complete and mail their ballots well before election day to avoid disenfranchisement."  (*Id*. at 7).  Third, the plaintiffs' claims "threaten to prevent the election of Democratic candidates."  (*Id*.).

The Court finds that all three movants have demonstrated an interest in this litigation sufficient to justify intervention.  *See La Union*, 29 F.4th at 305-06 (holding that public interest groups who would be required to expend significant resources and whose ability to participate in the election process would be impacted by a lawsuit had demonstrated sufficient interest for intervention).

The third element requires proof that a ruling in favor of the plaintiffs "*may*, as a practical matter, impair or impede the movant's ability to protect that interest."  *Brumfield*, 749 F.3d at 344 (emphasis added).  This impairment must be practical, not theoretical, but it is not necessary for the movant to be bound by the judgment.  *Id*.  The movants have shown that their ability to protect their interests may be impaired by this lawsuit because a ruling in favor of the plaintiffs may result in the expenditure of resources and voter disenfranchisement for their members.  *See La Union*, 29 F.4th at 307 (finding that a public interest group has satisfied the impairment element for intervention where "amendments to the Texas

-6-

Election Code [would] change the entire election landscape for those participating as the Committees' members and volunteers").

Turning to the fourth element, which tends to be the most contested issue related to the right to intervene, the movants must show that the current parties to this lawsuit may inadequately represent the interests of the movants. *See id.* at 307-08. Adequate representation is presumed when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. If this presumption applies, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.*

The defendants, intervenor-defendants, and the movants have the same ultimate objective of upholding Miss. Code Ann. § 23-15-637(1)(a). The current intervenor-defendants and the movants also assert the same general interests — more difficulty and uncertainty in voting absentee for their members and the necessity of spending additional resources for voter education.[2]

None of the movants have rebutted the presumption of adequate representation. While the DNC asserts that it is likely to present "different, even inconsistent, arguments" from those of the intervenor-defendants, it has not

---

[2] The Fifth Circuit in *La Union* held that a state and its officials could not adequately represent the partisan interests of public interest groups. 29 F.4th at 309. That holding does not affect this lawsuit because two public interest groups with an interest in the rights and education of absentee voters have previously been accepted as intervenor-defendants. There is no need for multiple special interest groups to intervene to represent absentee voters.

-7-

identified what those arguments might be even though the intervenor-defendants' [6-4] proposed memorandum in support of its proposed motion to dismiss is available in the record. The Court has reviewed the [18-4], [45-2] memoranda that the movants intend to file if they are permitted to intervene and compared them to the [6-4] memoranda that the intervenor-defendants intend to file. These proposed memoranda assert similar arguments related to standing, lack of preemption, and failure to state a claim.

These proposed memoranda therefore reflect that the intervenor-defendants adequately represent the interests of the movants. For example, in an effort to show that its interests are different from that of the intervenor-defendants, the DNC argues that "[n]o other defendant or Intervenor-Defendant has an interest in the election of candidates, let alone Democratic candidates specifically." (DNC's Mem. at 13, ECF No. 46). In support of this argument, the DNC points to the following allegation in the Complaint filed by the Republican National Committee and others:

> Mail-in ballots from Democratic voters also tend to arrive late, in part because "Democratic get-out-the-vote drives — which habitually occur shortly before election day — may delay maximum Democratic voting across-the-board, and produce a 'blue shift' in late mail ballots."

(RNC Compl. at 10, ECF No. 1). However, the intervenor-defendant's proposed memorandum asserts a similar concern:

> [D]eclining to count ballots cast on or before election day, but received after election day would disenfranchise large numbers of Mississippians. In fact, Plaintiffs admit that is why they brought this suit. They believe the Ballot Receipt Deadline will "disproportionately break for Democrats," cutting into "fragile" "early Republican leads in

close races," Compl. ¶¶ 56–57, and accordingly seek to enjoin Defendants from counting ballots cast on or before election day by qualified voters because those voters are (allegedly) likely to vote for their political opponents. As the Fifth Circuit said in *Bomer*, "we cannot conceive that Congress intended the federal Election Day Statutes to have the effect of impeding citizens in exercising their right to vote. The legislative history of the statutes reflects Congress's concern that citizens be able to exercise their right to vote." 199 F.3d at 777 (citing Cong. Globe, 42d Cong., 2d Sess. 3407-08 (1872)). Plaintiffs' argument runs directly contrary to this recognized purpose and denigrates the very constitutional rights that Plaintiffs claim they seek to safeguard.

(Proposed Mem. at 23, ECF No. 6-4).

The movants have not proved that the defendants and intervenor-defendants to this lawsuit may inadequately represent the interests of the movants. Thus, the movants have not shown that they have a right to intervene in this lawsuit.

## II. PERMISSIVE INTERVENTION

Permissive intervention is permitted for anyone who: (1) is given a conditional right to intervene by a federal statute; or (2) has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1). "Permissive intervention is 'wholly discretionary' and may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471-72 (5th Cir. 1984)). The nature of this lawsuit, coupled with the upcoming election in November 2024, necessitate an expedited ruling in this lawsuit. Adding numerous public interest groups with similar concerns and goals as parties to this lawsuit would only serve to complicate and decelerate the resolution of this lawsuit, thus leading to additional confusion for

absentee voters and all interested parties. The movants' requests for permissive intervention are denied.

## III. AMICI CURIAE

In the alternative, the DNC seeks permission to file an amicus curiae brief. DRMS and the League have not made such a request, but the Court will nevertheless consider whether they should also be permitted to file amici briefs. *See Rowland v. GGNSC Ripley, LLC*, No. 313CV00011-DMB-SAA, 2016 WL 4136486, at *4 (N.D. Miss. Aug. 3, 2016) ("Amicus status may be granted sua sponte.").

"A non-party may submit a brief as an amicus curiae in order to assist the court in reaching a proper decision." *Id.* (citing *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008)). District courts look to Federal Rule of Appellate Procedure 29 for guidance concerning the standards for filing an amicus brief. *Id.*; *see also United States v. Olis*, No. CIV.A. H-07-3295, 2008 WL 620520, at *7 (S.D. Tex. Mar. 3, 2008). "Where a party has sought intervention but has been denied such relief, it is common practice to allow the applicant to file a brief amicus curiae . . . ." *Id.* (internal quotation marks omitted). The Court will exercise its discretion to permit the movants to file amici briefs. These briefs shall be filed on March 26, 2024, and shall be limited to thirty-five pages in length.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [18] Motion to Intervene filed by Disability Rights of Mississippi and the League of Women Voters Mississippi is **DENIED**. However, DRMS and the League are permitted to file

amici curiae briefs that are no more than **thirty-five pages** in length by **March 26, 2024**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [45] Motion to Intervene filed by the Democratic National Committee is **DENIED** to the extent that the DNC seeks to intervene as a party to this lawsuit and **GRANTED** to the extent that the DNC seeks permission to file an amicus curiae brief. The DNC's amicus brief will be due **March 26, 2024**, and it may be no longer than **thirty-five pages** in length.

**SO ORDERED AND ADJUDGED** this the 7th day of March, 2024.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE