**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION GULFPORT**

REPUBLICAN NATIONAL COMMITTEE, et al.,

     *Plaintiffs*,

     v.

JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*; et al.,

     *Defendants*,

VET VOICE FOUNDATION and MISSISSIPPI ALLIANCE OF RETIRED AMERICANS,

     *Intervenor-Defendants*.

---*consolidated with*---

LIBERTARIAN PARTY OF MISSISSIPPI,

     *Plaintiffs*,

     v.

JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*; et al.,

     *Defendants*.

No. 1:24-cv-25-LG-RPM

No. 1:24-cv-37-LG-RPM

**BRIEF OF *AMICI CURIAE* DISABILITY RIGHTS MISSISSIPPI
AND LEAGUE OF WOMEN VOTERS OF MISSISSIPPI
IN SUPPORT OF DEFENDANTS**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

INTEREST OF *AMICI CURIAE* ................................................................................. 1

ARGUMENT ................................................................................................................. 3

   I.    Voters with Disabilities Rely on the Current Mississippi Receipt Deadline Law and Will
       Face Disproportionate Harm if it is Struck Down. ............................................................ 3

  II.   Plaintiffs' Misinterpretation of the Federal Election Day Statutes Would Upend Routine
       Election Administration in Mississippi and Nationwide. .................................................. 6

      A.   Plaintiffs' Misinterpretation of the Federal Election Day Statutes Flouts Basic
           Principles of Statutory Interpretation and Binding Precedent. ................................... 7

      B.   Plaintiffs' Interpretation of the Federal Election Day Statutes Would Lead to Absurd
           Results and Disrupt Routine Election Administration in Mississippi and Across the
           Nation. ......................................................................................................................... 9

    CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bognet v. Sec'y Commonwealth of Pa.*,
  980 F.3d 336 (3d Cir. 2020)......................................................................................8

*Bost v. Ill. State Bd. of Elections*,
  No. 22-CV-02754, 2023 WL 4817073 (N.D. Ill. July 26, 2023)............................8

*Bush v. Gore*,
  531 U.S. 98 (2000)...................................................................................................13

*In re Chapman*,
  166 U.S. 661 (1897).................................................................................................10

*Donald J. Trump for President, Inc. v. Way*,
  492 F. Supp. 3d 354 (D.N.J. 2020) ..........................................................................8

*Foster v. Love*,
  522 U.S. 67 (1997)....................................................................................7, 8, 9, 14

*Jones v. U.S. Postal Serv.*,
  488 F. Supp. 3d 103 (S.D.N.Y. 2020).......................................................................6

*Millsaps v. Thompson*,
  259 F.3d 535 (6th Cir. 2001) ........................................................................9, 12, 15

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345 (Pa. 2020) ...........................................................................................8

*United States v. A Female Juvenile*,
  103 F.3d 14 (5th Cir. 1996) .......................................................................................9

*United States v. Granderson*,
  511 U.S. 39 (1994).....................................................................................................9

*Voting Integrity Project, Inc. v. Bomer*,
  199 F.3d 773 (5th Cir. 2000) ...........................................................................7, 10

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020) ..............................................................................14

**Statutes**

42 U.S.C. § 15043(a)(2)(A)(i) .................................................................................2

52 U.S.C. § 20104 ...............................................................................................3

52 U.S.C. § 20304(b)(l) .......................................................................................10

25 Pa. Cons. Stat. § 3511(a) ................................................................................11

Ala. Code § 17-11-18(b) ......................................................................................10

Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii) ...............................................................10

Fla. Stat. § 101.6952(5) .......................................................................................10

Ga. Code Ann. § 21-2-386(a)(1)(G) .....................................................................10

Ind. Code § 3-12-1-17(b) .....................................................................................10

Miss. Code Ann. § 23-15-573(3)(c), (d) ..............................................................13

Miss. Code Ann. § 23-15-581 ..............................................................................12

Miss. Code Ann. § 23-15-601 ..............................................................................12

Miss. Code Ann. § 23-15-603 .........................................................................12, 13

Miss. Code Ann. § 23-15-605 ..............................................................................13

Miss. Code Ann. § 23-15-629(1) ........................................................................2, 3

Miss. Code Ann. § 23-15-637 .......................................................................8, 10, 11

Miss. Code Ann. § 23-15-639 ..............................................................................11

Miss. Code Ann. § 23-15-643 ..............................................................................11

Miss. Code Ann. § 23-15-699(6) ..........................................................................11

Miss. Code Ann. § 23-15-713(d) ...........................................................................3

Mo. Rev. Stat. § 115.920(1) .................................................................................10

R.I. Gen. Laws § 17-20-16....................................................................................10

S.C. Code Ann. § 7-15-700(A) .............................................................................10

**Other Authorities**

Ayanna Alexander, *Voters With Disabilities Often Overlooked in Voting Battles*, ASSOCIATED PRESS (Apr. 2, 2023), https://bit.ly/3TzjcFy ........................................5

*Cast*, BLACK'S LAW DICTIONARY (11th ed. 2019) ..........................................................8

Cybersecurity & Infrastructure Security Agency, *Post Election Process Mapping* (last accessed Mar. 19, 2024), https://bit.ly/4atWR32 ............................................11

*Election*, BLACK'S LAW DICTIONARY (11th ed. 2019) ......................................................8

Lisa Schur & Douglas Kruse, *Fact Sheet: Disability and Voter Turnout in the 2020 Election* (July 2021), https://bit.ly/43vHeGe ................................................4

Lisa Schur, Douglas Kruse, & Mason Ameri, *Disability and Voting Accessibility in the 2022 Elections: Final Report on Survey Results Submitted to the Election Assistance Commission*, (May 2023), https://bit.ly/3x67V8d .....................................4

Miss. Sec. of State's Office, *County Elections Handbook* (June 2023), https://bit.ly/4cz2v63 ....................................................................................12

Nat'l Conf. of State Legis., *Canvass Deadlines* (last updated Feb. 26, 2024), https://bit.ly/3xaBkhC ....................................................................................13

Nat'l Conf. of State Legis., *Canvass, Certification and Contested Election Deadlines, and Voter Intent Laws* (last updated Oct. 26, 2022), https://bit.ly/3TzEmUc ....................................................................................12

Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 2: Excuses to Vote Absentee* (last updated Jan. 3, 2024), https://bit.ly/3VqWAK6 .......................4

Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots* (last updated July 12, 2022), https://bit.ly/3TOeaGK ..............................................................10

Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 16: When Absentee/Mail Ballot Processing and Counting Can Begin* (last updated Dec. 22, 2023), https://bit.ly/3Vx4npR ..............................................................11

U.S. Election Assistance Comm'n, *Canvassing and Certifying an Election* (Aug. 26, 2010), https://bit.ly/4cuddKY ....................................................................12

U.S. Election Assistance Comm'n, *Election Results, Canvass, and Certification* (May 25, 2022), https://bit.ly/43vRz4S ..................................................................13

Anthony Warren & Brendan Hall, *"We Just Want Change": At Least 10 Polling Places In Hinds Co. Not in ADA Compliance*, WLBT (Oct. 17, 2023), https://bit.ly/3PChbXZ....................................................................................................5

## INTRODUCTION

Plaintiffs' requested relief—eliminating Mississippi's requirement that timely cast absentee ballots be counted so long as they are received by election officials within five business days of the election—would not only lead to widespread adverse impacts on voters. But adopting their interpretation of the Federal Election Day Statutes would also upend election administration in Mississippi and across the country. *Amici curiae* Disability Rights Mississippi ("DRMS") and the League of Women Voters of Mississippi (the "League") write to advise the Court of the disenfranchisement and electoral chaos that would follow from a ruling in Plaintiffs' favor.

First, construing the Federal Election Day Statutes to require that all absentee ballots be received on or before Election Day would substantially increase the risk of disenfranchisement for broad swaths of voters. Voters with disabilities—whose rights DRMS is authorized by law to defend—disproportionately rely on mail-in ballots and would bear the brunt of that disenfranchisement. The Court should be loath to adopt a misconstruction of federal law that further burdens a marginalized population already facing heightened barriers to voting.

Second, Plaintiffs' interpretation of the Federal Election Day Statutes would mandate massive nationwide overhauls of essential post-election activities and destabilize election administration not just in Mississippi but in every state. Adopting this interpretation would also mean that election officials' post-election-day administrative acts—including collecting, tallying, and canvassing timely cast ballots and certifying election results—directly conflict with federal laws setting a calendar date for Election Day. These absurdities strongly counsel against adopting Plaintiffs' misreading.

## INTEREST OF *AMICI CURIAE*

This brief is submitted on behalf of *amici curiae* DRMS and the League. The Court previously concluded that both organizations had "demonstrated an interest in this litigation

1

sufficient to justify intervention" and "shown that their ability to protect their interests may be impaired by this lawsuit." Order, ECF No. 47 at 6.[1] Although the Court ultimately denied DRMS and the League's earlier motion to intervene, it granted them permission to file an amicus brief. *Id.* at 11.

**Disability Rights Mississippi.** DRMS is Mississippi's Protection and Advocacy agency ("P&A") and is authorized to pursue legal action on behalf individuals with disabilities in the State to protect their rights. 42 U.S.C. § 15043(a)(2)(A)(i). The scope of this authorization includes all Mississippians with disabilities who rely on absentee voting to exercise their right to vote. *Id.* ¶¶ 11–12, 14. Mississippi law specifically recognizes that many of these individuals face severe hardships that make it difficult for them to vote in person. *See* Miss. Code Ann. § 23-15-629(1). Many voters with disabilities not only depend on absentee voting, but also on the current ballot receipt deadline. DRMS has a critical interest in ensuring that Mississippi's absentee ballot receipt deadline is not enjoined, as it would substantially increase the risk that Mississippians with disabilities will be disenfranchised at disproportionate levels. If Plaintiffs' requested relief is granted, DRMS's members will likewise face substantially increased risk of disenfranchisement, and DRMS would need to expend additional resources to update those materials and trainings, and to warn individuals with disabilities that they face a higher risk of disenfranchisement if they vote by absentee ballot.

**The League of Women Voters of Mississippi.** The League is a grassroots membership organization that seeks to involve citizens in the civic process, including by helping Mississippi voters navigate the absentee voting process. The League has almost two hundred members in the state, a significant number of whom are eligible to vote by absentee ballot and many of whom do

---

[1] All docket references are to the docket in *RNC v. Wetzel*, No. 1:24-cv-25-LG-RPM.

so. The League dedicates significant resources to voter service projects, voter registration, get out the vote efforts, and public education about elections. In Mississippi, this includes providing digital resources on the absentee voting process. The League also distributes information flyers, posts on its website and social media accounts, and speaks to voters about the timeline for absentee voting, including Mississippi's post-Election-Day receipt deadline for absentee ballots. If Plaintiffs' requested relief is granted, it will substantially increase the risk that League members will be disenfranchised if they mail their absentee ballots close to Election Day. Further, the League expends resources to create informational materials and train volunteers to educate members about absentee voting procedures in Mississippi. The League would need to expend significant additional resources to update those materials and trainings, and to warn members about heightened disenfranchisement risks of returning absentee ballots, should Plaintiffs succeed.

## ARGUMENT

### I.  Voters with Disabilities Rely on the Current Mississippi Receipt Deadline Law and Will Face Disproportionate Harm if it is Struck Down.

Both state and federal law recognize that voters with disabilities are entitled to accommodations in the voting process including, crucially, the ability to vote absentee and mail in their ballots. *See, e.g.*, Miss. Code Ann. § 23-15-713(d) (extending absentee voting eligibility to "[a]ny person who has a temporary or permanent physical disability and who, because of such disability, is unable to vote in person without substantial hardship to himself, herself or others, or whose attendance at the voting place could reasonably cause danger to himself, herself or others."); *id.* § 23-15-629(1) (providing allowances for voters with permanent disabilities to automatically receive absentee ballots without reregistering); 52 U.S.C. § 20104 (requiring that states "make available registration and voting aids for Federal elections for handicapped and elderly individuals," prohibiting imposition of certain requirements for "handicapped voter[s] with respect

3

to an absentee ballot," and mandating "provide public notice, calculated to reach elderly and handicapped voters, of the availability of aids under this section . . . and the procedures for voting by absentee ballot."). Plaintiffs' argument flies in the face of these recognized rights and would have an outsized impact on voters with disabilities, who are significantly more likely to utilize mail-in ballots.

A national survey sponsored by the U.S. Election Assistance Commission ("EAC") found that about two-fifths (42%) of voters with disabilities used a mail-in ballot to vote in 2022, compared to one-third (35%) of voters without disabilities.[2] In Mississippi, which is one of only fourteen states that limit who can vote absentee,[3] voters with disabilities likely cast absentee ballots at even greater rates compared to voters without disabilities. Voters with disabilities were also particularly likely to return an absentee ballot by mail rather than using a drop box or taking a ballot to a polling place or election office.[4] In the 2020 presidential election, more than *half* (52%) of voters with disabilities voted by mail, compared to 40% of voters without disabilities.[5]

These trends can be explained, at least in part, by the fact that voters with disabilities consistently report higher incidences of voting difficulties than voters without disabilities. In 2022, 14% of all voters with disabilities reported difficulties voting, which is more than *three times higher* than voters without disabilities.[6] That number jumps even higher when focused on in-

---

[2] Lisa Schur, Douglas Kruse, & Mason Ameri, *Disability and Voting Accessibility in the 2022 Elections: Final Report on Survey Results Submitted to the Election Assistance Commission*, at 8 (May 2023), https://bit.ly/3x67V8d.

[3] Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 2: Excuses to Vote Absentee* (last updated Jan. 3, 2024), https://bit.ly/3VqWAK6.

[4] *Id.*

[5] Lisa Schur & Douglas Kruse, *Fact Sheet: Disability and Voter Turnout in the 2020 Election*, at 6 (July 2021), https://bit.ly/43vHeGe.

[6] Schur et al., *supra* note 2, at 9.

person voters—a whopping *20%* of in-person voters with disabilities reported difficulties in 2022.[7]
By comparison, only 6% of voters with disabilities reported difficulties in voting by mail.[8]

These national trends hold true for Mississippi voters, too. The populations that DRMS represents disproportionately vote by absentee mail ballot because of the particular difficulties they face with in-person voting. For example, in October 2023, DRMS assessed 66 polling places in Hinds County and found that at least 10 were out of compliance with the Americans with Disabilities Act (ADA).[9] Among other violations found at these voting locations, accessible voting machines did not work (or were simply not present), doors were not kept propped open, entryways were inaccessible, and curbs were not cut to allow those using wheelchairs to access sidewalks.[10]

Transportation also presents additional challenges for voters with disabilities. As an example, a blind Mississippi voter who intended to vote in person reported that she missed a local election because she was unable to secure transportation to a polling location.[11] Indeed, national data from the EAC show that only 70.8% of people with disabilities can drive their own or a family vehicle, compared to 90.5% of people without disabilities.[12]

If this Court agrees with Plaintiffs' position that absentee ballots must be received by Election Day to be counted, some voters with disabilities in Mississippi may have no choice other than to endure the indignities and difficulties inherent in in-person voting if they wish to ensure their vote is counted. The current rule allows a buffer for the receipt of mail-in ballots after Election

---

[7] *Id.*

[8] *Id.*

[9] Anthony Warren & Brendan Hall, "*We Just Want Change": At Least 10 Polling Places In Hinds Co. Not in ADA Compliance*, WLBT (Oct. 17, 2023), https://bit.ly/3PChbXZ.

[10] *Id.*

[11] Ayanna Alexander, *Voters With Disabilities Often Overlooked in Voting Battles*, ASSOCIATED PRESS (Apr. 2, 2023), https://bit.ly/3TzjcFy.

[12] Schur, et al., *supra* note 2*, at 58.

Day, so long as they are postmarked by Election Day. But if mail-in ballots must arrive by Election Day to be counted, voters' right to have their vote counted becomes substantially more dependent on the whims of an overburdened U.S. Postal Service, which has proven inconsistent in its ballot delivery timelines—especially when faced with high volumes of mail ballots—and could be interrupted by factors entirely outside voters' control. *See, e.g.*, *Jones v. U.S. Postal Serv.*, 488 F. Supp. 3d 103, 135 (S.D.N.Y. 2020) (granting injunction against U.S. Postal Service to ensure timely delivery of absentee ballots based, in part, on findings that "USPS has offered no satisfactory explanation for failing to set clear, uniform policies for the handling of Election Mail," and that there had been "meaningful documented delays in service, in the middle of a pandemic when service standards were already impaired and a vast influx of mail-in ballots expected").

Because voters with disabilities so disproportionately vote by mail—and face far greater difficulties voting in person—they would face disproportionate harms from Plaintiffs' requested relief.

## II.    Plaintiffs' Misinterpretation of the Federal Election Day Statutes Would Upend Routine Election Administration in Mississippi and Nationwide.

Plaintiffs' arguments that the Federal Election Day Statutes prohibit counting absentee ballots that are timely cast by voters on or before Election Day and received by election officials shortly thereafter as set out in Mississippi law flout the Supreme Court and Fifth Circuit's interpretation of the ordinary meaning of "election" in these statutes. But beyond their poor grasp of statutory interpretation, Plaintiffs' arguments lack merit because they would lead to absurd results with catastrophic consequences for election administration in Mississippi and across the nation that Congress did not intend and could not have intended. Plaintiffs' interpretation that Mississippi violates the Federal Election Day Statutes by merely receiving a timely cast ballot after Election Day—a purely administrative act by election officials—offers no limiting principle or

basic rationale for distinguishing ballot receipt from other post-election-day administrative acts by election officials, including ballot processing, counting, canvassing, and more. Accordingly, their strained interpretation of federal law would radically disrupt post-election procedures, rendering election administration effectively impossible in Mississippi and in every state.

A. **Plaintiffs' Misinterpretation of the Federal Election Day Statutes Flouts Basic Principles of Statutory Interpretation and Binding Precedent.**

In *Foster v. Love,* 522 U.S. 67 (1997), the Supreme Court analyzed the Federal Election Day Statutes and determined that "election" "plainly refer[s] to the combined actions of voters and officials meant to make a final selection of an officeholder." *Id.* at 71. Accordingly, the Court struck down a primary system that permitted the "final selection" of a winner to "conclude[] as a matter of law before the federal election day, with no act in law or in fact to take place on the date chosen by Congress." *Id.* at 72. Following *Foster*, the Fifth Circuit rejected a challenge under the Federal Election Day Statutes to Texas laws permitting early voting in federal elections. *See Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773 (5th Cir. 2000). Relying on the Supreme Court's "plain, common sense reading" of these statutes, the *Bomer* court disagreed with the argument that "the federal statutes, by establishing '*the* day for the election,' contemplate that the entire election, including all voting, will occur that day." *Id.* at 775 (quoting 2 U.S.C. § 7)). To the contrary, it held that "the plain language of the statute does not require all voting to occur on federal election day," rather, "[*a*]*ll* the statute requires is that the election be held that day." *Id.* at 776 (emphasis added).

These precedents establish that although the "combined actions of voters and officials meant to make a final selection of an officeholder" must not conclude before Election Day, *Foster,* 522 U.S. at 71, not all election-related actions of either voters or election officials need occur on that specific day, *Bomer*, 199 F.3d at 776. In reaching this conclusion, the Supreme Court and Fifth

Circuit's interpretation of the Federal Election Day Statutes comports with the ordinary meaning of an "election" as a process, rather than a single moment in time. *See Election*, Black's Law Dictionary (11th ed. 2019) ("The process of selecting a person to occupy an office . . . .").

Under Mississippi's Receipt Deadline law, no absentee ballot may be counted unless it was timely cast as indicated by an official postmark on or before the date of election. *See* Compl. ¶ 34, ECF No. 1; Miss. Code Ann. § 23-15-637(1)(a).[13] There can be no dispute that, in any sense of the word, the "actions" of Mississippi voters must be completed on or before Election Day. Therefore, an election official's mere *receipt* of a mailed ballot is neither a "combined action[] of voters and officials" that occurs after Election Day—as the voter completed their action on or before Election Day—nor an action "meant to make a final selection of an officeholder." *Foster,* 522 U.S. at 71.[14]

In another case brought under the Federal Election Statutes, the Sixth Circuit explained that "the plaintiffs' focus on the single act of receiving a ballot from a voter presents an unnatural and stilted conception of the actions taken by officials under [state] election laws and loses sight

---

[13] Under Mississippi's absentee voting provisions, a completed ballot has been "*timely cast*" the moment that it has been deposited in the mail with a postmark on or before Election Day—the registrar's act of "reciev[ing] [the ballot] by mail" is statutorily distinct from the voter's act of "cast[ing]" one's ballot. Miss. Code Ann. § 23-15-637(2); *see also Cast*, Black's Law Dictionary (11th ed. 2019) ("To formally deposit (a ballot) or signal one's choice (in a vote).").

[14] *See also Bognet v. Sec'y of the Commonwealth of Pa.*, 980 F.3d 336, 354 (3d Cir. 2020), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) (rejecting challenge to Pennsylvania's extension of absentee ballot receipt deadline to allow "counting ballots received within three days of Election Day" because "[t]he Deadline Extension and federal laws setting the date for federal elections can, and indeed do, operate harmoniously"); *Bost v. Ill. State Bd. of Elections*, No. 22-CV-02754, 2023 WL 4817073, *11 (N.D. Ill. July 26, 2023) (holding that Illinois's "Ballot Receipt Deadline Statute operates harmoniously with the federal statutes that set the timing for federal elections" because "[n]owhere in the text does the [state law] allow ballots postmarked or certified after Election Day to be counted"); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) (holding that there is "no direct conflict between" New Jersey's post-election receipt deadline and "the Federal Election Day Statutes" because "New Jersey law prohibits canvassing ballots cast after Election Day, in accordance with the Federal Election Day Statutes"); *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 368 n.23 (Pa. 2020) ("[A]llowing the tabulation of ballots received after Election Day does not undermine the existence of a federal Election Day, where the proposal requires that ballots be cast by Election Day . . . .").

of the fact that an official's mere receipt of a ballot without more is not an act meant to make a final selection." *Millsaps v. Thompson*, 259 F.3d 535, 546 (6th Cir. 2001). Rather, the array of official activities that routinely extend past Election Day—including receipt and processing of timely absentee ballots, tabulation of votes, canvassing of ballots, certification of results, and more—are independent, administrative duties of election officials meant only to ensure valid ballots are tallied and to verify the outcome of a concluded election. *See id.* at 546 n.5 ("[O]fficial action to confirm or verify the results of the election extends well beyond federal election day.").

Therefore, all the federal courts to interpret the Federal Election Day Statutes in the post-election context have found that actions taken by election officials to receive, tally, canvass, and certify votes do not implicate these statutes so long as voters submit their ballots on or before Election Day. By taking a contrary approach, Plaintiffs would sweep into these statutes not only the receipt of ballots, but all the other aspects of election administration that pertain to vote counting after Election Day. The consequences of such an interpretation would create both absurdity and chaos.

**B.    Plaintiffs' Interpretation of the Federal Election Day Statutes Would Lead to Absurd Results and Disrupt Routine Election Administration in Mississippi and Across the Nation.**

Laws should be interpreted to reach "'a sensible construction' that avoids attributing to [Congress] either 'an unjust or an absurd conclusion.'" *United States v. Granderson*, 511 U.S. 39, 56 (1994) (quoting *In re Chapman*, 166 U.S. 661, 667 (1897)); *see United States v. A Female Juvenile*, 103 F.3d 14, 16–17 (5th Cir. 1996) ("Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result."). Despite the ordinary meaning of the Federal Election Day Statutes, Plaintiffs insist that because "Congress established one specific day as the uniform, national Election Day for federal office," "[a] qualified ballot for federal office is not a legal vote unless it is received by the proper election officials by Election

Day." Compl. ¶¶ 65–66. Yet because all actions of voters are completed on or before Election Day, *see* Miss. Code Ann. § 23-15-637(1)(a), adopting Plaintiffs' interpretation would require the Court to conclude that election officials' post-election-day administrative acts—*e.g.*, collecting, tallying, and canvassing timely cast ballots and certifying election results—"directly conflict with federal election laws" setting a calendar date for Election Day. *Bomer*, 199 F.3d at 775. Such a holding would destabilize election administration not just in Mississippi but in every state.

Mississippi permits the counting of timely mailed absentee ballots that are received by election officials no later than five business days after Election Day. *See* Miss. Code Ann. § 23-15-637(1). It employs the same deadline for the absentee ballots of overseas and military voters. Miss. Code Ann. § 23-15-699(6); *see* 52 U.S.C. § § 20304(b)(l). Such post-election-day receipt deadlines are commonplace: Mississippi is one of 20 states (including the District of Columbia) that allows the post-election-day receipt of absentee ballots that were postmarked on or before Election Day.[15] Eight additional states allow post-election-day receipt of absentee ballots cast by military and overseas voters.[16] Accordingly, Plaintiffs' misreading of the Federal Election Day Statutes would frustrate absentee voting procedures in over half of states.

But the ramifications of Plaintiffs' arguments are much broader. In Mississippi, as in every other state, election officials engage in a wide array of post-election-day ministerial acts that—just like collecting mailed absentee ballots—are part and parcel of processing timely cast ballots to

---

[15] Those states include Alaska, California, D.C., Illinois, Kansas, Maryland, Massachusetts, Mississippi, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Oregon, Texas, Virginia, Washington, West Virginia. *See* Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots*, (last updated July 12, 2022), https://bit.ly/3TOeaGK. Utah also permits post-Election-Day receipt of absentee ballots, so long as they were postmarked by the day before Election Day. *Id.* Puerto Rico and the Virgin Islands also permit absentee ballots to be counted when received after Election Day. *Id.*

[16] *See* Ala. Code § 17-11-18(b); Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii); Fla. Stat. § 101.6952(5); Ga. Code Ann. § 21-2-386(a)(1)(G); Ind. Code § 3-12-1-17(b); Mo. Rev. Stat. § 115.920(1); 25 Pa. Cons. Stat. § 3511(a); R.I. Gen. Laws § 17-20-16; S.C. Code Ann. § 7-15-700(A).

ascertain the final vote count.

First and foremost, once an election is held, election officials must conduct a preliminary tabulation of votes. Tabulation timelines vary drastically by state and local jurisdiction, meaning that "[i]n some jurisdictions, tabulation concludes on election night," while "[i]n others, tabulation continues for days or weeks."[17] As is the case in 16 states,[18] Mississippi does not allow for any ballot counting to begin before the close of polls (which does not occur until 7:00 p.m. or later on election night). *See* Miss. Code Ann. § 23-15-581. Tabulating the Election Day vote easily can— and often does—extend past midnight due to factors like high turnout, court orders extending poll hours, or any number of technical or procedural mishaps. In particular, the tabulation of absentee ballots may be delayed in elections that involve high absentee turnout. Even absent the Receipt Deadline law, Mississippi election officials cannot begin counting absentee mail ballots until the polls close at the earliest, *id.* § 23-15-645(1), and Mississippi law further precludes counting any absentee ballots until all those received on or before Election Day have been *processed*. *See* Miss. Code Ann. § 23-15-639(1)(c). Election officials cannot even begin processing any absentee ballots until after polls open on Election Day, and the rigorous process requires a "resolution board" to conduct a nine-step review for each absentee ballot to ensure its validity and to adjudicate any challenges to an absentee ballot.[19] Even in the unlikely event that every county in Mississippi managed to conduct their initial tabulation before midnight on election night in every election no matter how high the turnout, as explained by the U.S. Election Assistance Commission, "[t]he

---

[17] Cybersecurity & Infrastructure Security Agency, *Post Election Process Mapping*, (last accessed Mar. 19, 2024), https://bit.ly/4atWR32.

[18] Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 16: When Absentee/Mail Ballot Processing and Counting Can Begin* (last updated Dec. 22, 2023), https://bit.ly/3Vx4npR.

[19] *See* Miss. Code Ann. §§ 23-15-639, 23-15-643; Miss. Sec. of State's Office, *County Elections Handbook*, at 44 (June 2023), https://bit.ly/4cz2v63.

election results reported on election night are never the final, certified results."[20]

After local election officials conduct a preliminary tabulation, they must canvass the results. "The canvass process aggregates and confirms every valid ballot cast and counted, including mail, uniformed and overseas citizen, early voting, Election Day, and provisional ballots."[21] Typically, states conduct canvasses at both the county and state level following an election, and every state's canvasses occur *after* Election Day.[22] *See Millsaps*, 259 F.3d at 546 (recognizing and explaining in detail how "official action to confirm or verify the results of the election extends well beyond federal election day").

In Mississippi, the county canvasses begin "[o]n the day following the general . . . election," when County Election Commissions meet to verify the returns provided to them by precinct poll managers.[23] During the county canvass, election commissioners adjudicate the legality of all provisional ballots (known as "affidavit ballots" in Mississippi) that were cast in the election, which requires permitting affected voters to obtain or return with an acceptable form of photo ID within five business of Election Day. Miss. Code Ann. § 23-15-573(3)(c), (d). Of course, the canvass must also account for timely absentee and UOCAVA ballots that arrive within five business days of Election Day. County election commissioners must finish their canvass within ten days of Election Day and send a certified statement of the result of the canvass to the Secretary

---

[20] U.S. Election Assistance Comm'n, *Election Results, Canvass, and Certification* (May 25, 2022), https://bit.ly/43vRz4S.

[21] *Id.*

[22] *See* Nat'l Conf. of State Legis., *Canvass, Certification and Contested Election Deadlines, and Voter Intent Laws*, (last updated Oct. 26, 2022), https://bit.ly/3TzEmUc; *see also* U.S. Election Assistance Comm'n, *Canvassing and Certifying an Election*, Ch. 13, p. 133 (Aug. 26, 2010), https://bit.ly/4cuddKY("Many voters believe that the election results they see on television on election night are the final results. In fact, the outcome of the election is not official until the completion of the canvass of votes and certification of results, which sometimes may be several weeks after Election Day.").

[23] Miss. Sec. of State's Office, *County Elections Handbook*, at 50 (June 2023), https://bit.ly/4cz2v63; *see* Miss. Code Ann. §§ 23-15-601, 23-15-603.

of State. Miss. Code Ann. § 23-15-603(1). Then the state-level canvass begins, during which the Secretary of State tabulates the statements certified by county election commissioners; it must be completed within 30 days of Election Day. Miss. Code Ann. § 23-15-605. Only at that point is a winning candidate "declare[d] . . . to be duly elected." *Id.*

In other states, the administrative post-election acts of election officials to process and canvass ballots extend even further past Election Day than in Mississippi. Ten states allow county canvasses to extend three weeks past Election Day, and four states permit county officials to canvass ballots into the fourth week after the date of the election or beyond.[24] Statewide canvass dates range from the Friday after the election in Oklahoma (but only so long as no election contest has been filed), to the second Tuesday in December in Missouri for offices other than presidential electors.[25]

The timing and specifics of post-election day duties vary from state to state but one certainty remains true across the nation: although the election ends on election night when the final votes are cast, election officials' ballot-related work is far from over. Despite widely watched news projections of election winners based on incomplete unofficial tabulations, "[e]lection officials well know there are various other steps and factors that impact when election results are final."[26] This reality should come as no surprise, given the frequent prominence of post-election administrative activity. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98 (2000) (Rehnquist, C.J., concurring) (recognizing that "*[a]fter the election has taken place*, the canvassing boards receive returns from precincts, count the votes, and [if necessary], conduct a mandatory recount," "[t]he county

---

[24] Nat'l Conf. of State Legis., *Canvass Deadlines* (last updated Feb. 26, 2024), https://bit.ly/3xaBkhC.

[25] *Id.*

[26] U.S. Election Assistance Comm'n, *Election Results, Canvass, and Certification* (May 25, 2022), https://bit.ly/43vRz4S.

canvassing boards must file certified election returns with the Department of State," and "[t]he Elections Canvassing Commission must then certify the results of the election" (emphasis added)); *see also Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) (unsuccessful challenge to post-election tally of election returns and statewide hand recount of the 2020 presidential election results in Georgia).[27]

In sum, Plaintiffs' ask the Court to hold that the question of whether a state unlawfully extends its elections beyond the federal Election Day depends on when election officials complete an independent, ministerial duty—namely, the mail receipt of timely cast ballots. But Plaintiffs' misreading of the Federal Election Day Statutes lacks a principled basis to distinguish between ballot receipt and other post-election acts of election officials—including the processing of absentee ballots, initial tabulation of votes, adjudication of challenged ballots, resolution of provisional ballots, county canvassing of local results, statewide canvassing of county results, and many steps in between. These ministerial duties of election officials are all meant to ensure that all valid votes cast in an election are tallied and to confirm the outcome of an already concluded officeholder selection.

Plaintiffs' reading would not only upturn the absentee ballot receipt laws in most states; it would require an effectively impossible, wholesale reconfiguration of all state election systems. Congress could not have intended this absurd result through a statute that simply selects a calendar date for federal elections. Given "the Court's express disavowal in *Foster* that it was establishing any particular actions a State must perform on Election Day to comply with the federal statutes,

---

[27] Plaintiffs' misreading of federal law would also lead to the further absurd result of necessitating the overturning of dozens, possibly hundreds, of court opinions protecting voters' ability to vote absentee, extending receipt deadlines and canvassing periods, and ruling on the validity of ballots counted after Election Day.

this reading simply asks too much." *Millsaps*, 259 F.3d at 546.

## CONCLUSION

For the foregoing reasons, *amici* urge the Court to reject Plaintiffs' arguments and grant

summary judgment in favor of Defendants.

DATED this 26th day of March, 2024.          Respectfully submitted,

/s/ Joshua Tom                               Davin M. Rosborough*
Joshua Tom (Miss. Bar No. 105392)            Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION OF            AMERICAN CIVIL LIBERTIES UNION
MISSISSIPPI FOUNDATION                       FOUNDATION
101 South Congress Street                    125 Broad Street
Jackson, MS 39201                            New York, NY 10004
(601) 354-3408                               (212) 549-2500
JTom@aclu-ms.org                             drosborough@aclu.org
                                             slakin@aclu.org
Greta Kemp Martin (Miss. Bar No. 103672)
DISABILITY RIGHTS MISSISSIPPI                Jacob van Leer*
5 Old River Place, Suite 101                 AMERICAN CIVIL LIBERTIES UNION
Jackson, MS 39202                            FOUNDATION
(601) 968-0600                               915 15th Street NW
gmartin@drms.ms                              Washington, D.C. 20005
                                             (212) 549-2500
DECHERT LLP                                  jvanleer@aclu.org
Neil Steiner*
Julia Markham-Cameron*                       DECHERT LLP
Three Bryant Park                            Angela Liu*
1095 Avenue of the Americas                  35 West Wacker Drive, Suite 3400
New York, NY 10036                           Chicago IL 60601
(212) 698-3822                               (312) 646-5813
neil.steiner@dechert.com                     angela.liu@dechert.com
julia.markham-cameron@dechert.com
                                             DECHERT LLP
                                             Christopher J. Merken*
                                             Cira Centre
                                             2929 Arch Street
                                             Philadelphia, PA 19104-2808
                                             (215) 994-2380
                                             christopher.merken@dechert.com

*Counsel for Amici Curiae*
*Disability Rights Mississippi and League of*
*Women Voters of Mississippi*

\*Application for admission *pro hac vice*
forthcoming or pending

**CERTIFICATE OF SERVICE**

I certify that on March 26, 2024, the foregoing document was filed on the Court's CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Joshua Tom* _____

Joshua Tom

*Counsel for Amici Curiae*
*Disability Rights Mississippi and League of*
*Women Voters of Mississippi*

17