UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, et al., <br><br> Defendants, <br><br> and <br><br> VET VOICE FOUNDATION and MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS, <br><br> Intervenor-Defendants. | No. 1:24-cv-00025-LG-RPM |

*consolidated with*

| | |
|---|---|
| LIBERTARIAN PARTY OF MISSISSIPPI, <br><br> Plaintiff, <br><br> v. <br><br> JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*; et al., <br><br> Defendants, <br><br> and <br><br> VET VOICE FOUNDATION and MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS, <br><br> Intervenor-Defendants. | No. 1:24-cv-00037-LG-RPM |

**INTERVENOR-DEFENDANTS' RESPONSE TO THE
LIBERTARIAN PARTY'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Intervenor-Defendants hereby submit the following responses to the Libertarian Party's Statement of Material Facts in Support of their Motion for Summary Judgment (ECF No. 55-1):

1. The United States Congress is authorized to establish the Time for conducting federal elections. Art. I, § 4 cl.1 and Art. II, § 1 cl.4; *see also Foster v. Love*, 522 U.S. 67, 68-70 (1997).

**Response:** Intervenor-Defendants object that this paragraph sets forth a statement of law rather than a statement of fact. Intervenor-Defendants otherwise do not dispute that Congress may establish the time for conducting federal elections, but note as relevant context that the Constitution grants states authority in the first instance to set the "Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4 cl.1, as well as the "Manner" of appointing presidential electors, Art. II, § 1 cl.4.

2. With respect to Congressional elections, U.S. Const., Article I, § 4 provides that: "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed by each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Place of Chusing Senators."

**Response:** Intervenor-Defendants object that this paragraph sets forth a statement of law rather than a statement of fact. Otherwise, undisputed.

3. With respect to Presidential elections, Article II, § 1, cl. 4 provides: "The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States."

**Response:** Intervenor-Defendants object that this paragraph sets forth a statement of law rather than a statement of fact. Otherwise, undisputed.

4. The Congressional power to set the time for choosing presidential electors is plenary under Article II and that time must be uniform throughout the country. States retain no authority to set the time for choosing presidential electors.

1

**Response:** Intervenor-Defendants object that this paragraph sets forth a statement of law rather than a statement of fact. Intervenor-Defendants otherwise do not dispute that Congress may set the time for choosing presidential electors.

5. The Elections and Electors Clauses provide "Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States." *Foster*, 522 U.S. at 69 (citing *U.S. Term Limits v. Thornton*, 514 U.S. 779, 832-833 (1995)).

**Response:** Intervenor-Defendants object to this paragraph as it sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute the quoted language appears in the cited case.

6. "When Congress legislates with respect to the 'Times, Place, and Manner' of holding congressional elections, it necessarily displaces some element of a pre-existing legal regime erected by the states." *Arizona v. Inter Tribal Council of Ariz, Inc.*, 570 U.S. 1, 14 (2013).

**Response:** Intervenor-Defendants object to this paragraph as it sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute the quoted language appears in the cited case.

7. Congress first exercised this power in January 1845, when it passed the "Presidential Election Day Act," which is now codified as 3 U.S.C. § 1. 28 Cong. Ch. 1, 5 Stat. 721. That provision currently provides: "The electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. § 1.

**Response:** Disputed. Plaintiff quotes a prior version of 3 U.S.C. § 1 that has since been amended by Congress. That statute currently provides: "The electors of President and Vice President shall be appointed, in each State, on election day, in accordance with the laws of the State enacted prior to election day." 3 U.S.C. § 1. Further, Intervenor-Defendants object that this paragraph sets

forth a statement of law rather than a statement of fact. Intervenor-Defendants otherwise do not dispute that Congress enacted the statute that is now codified as 3 U.S.C. § 1 in 1845 and that the text of the statute at the time it was enacted is quoted above.

8.  In 1872, Congress passed what is now 2 U.S.C § 7, which established that same day as the uniform Election Day for congressional elections. *Foster*, 522 U.S. at 69. That provision currently provides: "The Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter." 2 U.S.C. § 7.

**Response:** Intervenor-Defendants object that this paragraph sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute the text of the quoted statute or that Congress enacted the statute that is now 2 U.S.C § 7 in 1872.

9.  After the adoption of the Seventeenth Amendment, Congress passed what is now 2 U.S.C. § 1 in 1914, aligning popular Senate elections with biennial House elections. *Foster*, 522 U.S. at 69-70; *see also* Senators' Election Act of 1866, 14 Stat. 243 (establishing Election Day for senators prior to the Seventeenth Amendment).

**Response:** Intervenor-Defendants object that this paragraph sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute that Congress enacted the statute that is now 2 U.S.C § 1 in 1914.

10.  In 2022, Congress enacted the Electoral Count Reform Act ("ECRA"). 136 Stat. 5233, 525 (enacted as Div. P., Title I, § 102(b) of the Consolidated Appropriations Act, 2023, 117 Pub. L. No. 328, Dec. 29, 2022).

**Response:** Undisputed.

11.  The ECRA added a definition of "election day" under 3 U.S.C. § 1, creating a narrow

3

carve out exemption for when states may extend the uniform Election Day only after "force majeure events that are extraordinary and catastrophic," where "as provided under laws of the State enacted prior to such day, "election day" shall include the modified period of voting." 3 U.S.C. § 21.

**Response:** Intervenor-Defendants object to this paragraph as it sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute the quoted language appears in 3 U.S.C. § 21.

12. This new force majeure exception underscores that in all ordinary circumstances *Foster*'s "final act of selection" that must occur no later than Election Day. No "force majeure events that are extraordinary and catastrophic" currently exist or have been declared related to the November 5, 2024 federal election.

**Response:** Intervenor-Defendants object to this paragraph as it sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute that no "force majeure events" have yet been declared related to the November 5, 2024 federal election.

13. This date remains the single, national "day for the election" for electing members of Congress and choosing presidential and vice-presidential electors. 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 1.

**Response:** Intervenor-Defendants object to this paragraph as it sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute the contents of 2 U.S.C. §§ 1 & 7 and 3 U.S.C. § 1, as they speak for themselves.

14. "By establishing a particular day as 'the day' on which these actions must take place, the statutes simply regulate the time of the election[.]" *Foster*, 522 U.S. at 71-72.

**Response:** Intervenor-Defendants object to this paragraph as it sets forth a statement of law rather than a statement of fact. Intervenor-Defendants do not dispute the quoted language appears in the cited case.

15. Prior to 2020, Mississippi required absentee and vote-by-mail ballots to be received by

4

5:00 p.m. on the day prior to Election Day to be counted. 2012 Miss. ALS 465, 2012 Miss. Gen. Laws 465, 2012 Miss. S.B. 2552.

**Response:** Undisputed.

16. The Mississippi Legislature amended the State's absentee ballot receipt deadline in 2020. *See* 2020 Miss. H.B. 1521, 2020 Miss. Gen. Laws 472, 2020 Miss. ALS 472 25. As amended, Miss. Code Ann. § 23-15-637(1)(a) provides that "[a]bsentee ballots and applications received by mail, except for fax or electronically transmitted ballots as otherwise provided by Section 23-15-699 for UOCAVA ballots, must be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election[.]"

**Response:** Undisputed.

17. Under Mississippi's new ballot Receipt Deadline, absentee ballots shall be counted if received on or before November 12, 2024, five business days after the federally prescribed general election deadline of Tuesday, November 5, 2024.

**Response:** Disputed. Mississippi law allows only for the counting of ballots postmarked on or before the date of the election but received within five business days of election day. Miss. Code § 23-15-637(1)(a).

18. The practice of accepting ballots received up to five business days after Election Day was in effect for the November 3, 2020 and November 8, 2022 federal general elections.

**Response:** Disputed. Mississippi law allows only for the counting of ballots postmarked on or before the date of the election but received within five business days of election day. Miss. Code § 23-15-637(1)(a). Intervenor-Defendants do not otherwise dispute that Miss. Code § 23-15-637(1)(a) was in effect for the November 3, 2020 and November 8, 2022 federal general elections, as well as the November 7, 2023 statewide elections.

19. On October 30, 2022, Defendant issued a press release related to the November 2022

5

federal election. *See* "2022 General Election Absentee Report (Oct. 30)," Mississippi Secretary of State's Office, October 30, 2022, Exhibit 4. This press release included county reports showing that Mississippi counties received a total of 29,919 absentee ballot requests, resulting in the transmission of 29,044 absentee ballots to voters of which 22,221 absentee ballots were received by counties by the date of the report. *Id*. The difference between ballots transmitted and received by counties according to these reports was 6,823.

**Response:** Disputed. The Secretary of State's press release cited indicates that these absentee ballot statistics were reported from the Statewide Election Management System (SEMS) rather than from "county reports," and that the 22,221 absentee ballots were received by the state of Mississippi, rather than "counties." The press release in Exhibit 4 otherwise speaks for itself.

20.     Defendant reported that at that same point during the 2020 federal election Mississippi counties received a total of 169,087 absentee ballot requests, resulting in the transmission of 165,846 absentee ballots of which 142,591 absentee ballots were received by the counties as of that date. *Id*. The difference between ballots transmitted and received by counties in 2020 totaled 23,255.

**Response:** Disputed. The Secretary of State's press release cited indicates that 2020 absentee ballot statistics were reported from SEMS, rather than from "county reports," and also that the 142,591 absentee ballots were received by the state of Mississippi, rather than "counties." The press release in Exhibit 4 otherwise speaks for itself.

21.     Some of the 23,255 ballots transmitted and counted in the 2020 general federal election in Mississippi were received by counties after Election Day. *See* "Official 2020 General Election Results," Mississippi Secretary of State's Office, Exhibit 5.

**Response:** Disputed on the grounds that the cited exhibit does not contain any information supporting the proposed fact that a portion of the ballots transmitted and counted in the 2020 general federal election in Mississippi were received after Election Day. Otherwise, undisputed that there

were some ballots transmitted and counted in the 2020 general federal election in Mississippi that were received by counties after Election Day.

22. Some of the 6,823 ballots transmitted and counted in the 2022 general federal election in Mississippi were received by counties after Election Day.

**Response:** Disputed. Plaintiff has failed to provide any admissible evidence in support of the proposed fact. Otherwise, undisputed that there were some ballots transmitted and counted in the 2022 general federal election in Mississippi that were received by counties after Election Day.

23. Plaintiff Libertarian Party of Mississippi is a registered political party in the state of Mississippi. *See* Declaration of Vicky Hanson, former Secretary of the Libertarian Party of Mississippi (Exhibit 2, "Hanson Decl.") ¶ 3.

**Response:** Disputed that Exhibit 2 is the declaration of Vicky Hanson, as that declaration is included as Exhibit 3 to Plaintiff's motion. To the extent Plaintiff intended to cite Exhibit 3, undisputed.

24. The Libertarian Party of Mississippi has members, supporters, and candidates for office that exercise their rights under the First and Fourteenth Amendments to associate and join together in support of the Party's beliefs. Hanson Decl. ¶ 14. Among such beliefs, the Libertarian Party seeks to promote and expand individual freedoms and limit government intervention so that all Mississippians can live a prosperous and peaceful life. The Libertarian Party seeks to promote candidates and register voters who support these ideals.

**Response:** Disputed as to what beliefs the Libertarian Party seeks to promote, as Plaintiff has failed to provide any admissible evidence in support of the proposed fact. Otherwise, undisputed that the Libertarian Party has members, supporters, and candidates that associate with each other.

25. The Libertarian Party of Mississippi's nominees for federal office rely on provisions of federal and state law in conducting their campaigns and, in particular, in allocating resources to

7

the post-election certification process. Hanson Decl. ¶ 15.

**Response:** Undisputed.

26. It is important for a professional campaign to monitor the counting of ballots until no more are being received. Many ballots, particularly late-arriving ones, are incorrectly filled out or have discrepancies, including missing voter or witness signatures, dates, postmarks, or other information required by Mississippi law to be a valid absentee ballot. Hanson Decl. ¶ 18.

**Response:** Disputed as to the importance for a professional campaign to monitor the counting of ballots until no more ballots are being received, as Plaintiff has failed to provide any admissible evidence in support of the proposed fact. Such conclusory testimony is also not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited discovery testing such testimony. *See* Declaration of Elisabeth C. Frost ("Frost Decl.") ¶¶ 4–8.

27. As a minor political party, the Libertarian Party of Mississippi has very limited resources, especially compared to the major political parties. Plaintiff struggles to find resources to observe the post-election canvassing of ballots. Hanson Decl. ¶ 22.

**Response:** Disputed, as such conclusory testimony is not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited discovery testing such testimony. *See* Frost Decl. ¶¶ 4–8.

28. Rather than lawyers or paid staff, the Libertarian Party of Mississippi is compelled to rely on volunteers for any canvassing that is done, and must allocate its use of such volunteers based on how many are available and factors like where they live. Hanson Decl. ¶ 23. It is very difficult to find volunteers willing to take time off from work or family obligations to help monitor the post-

election canvassing of ballots. Hanson Decl. ¶¶ 23-24. Often the Libertarian Party must completely forgo post-election canvassing in certain counties, or in certain elections. Hanson Decl. ¶ 24.

**Response:** Disputed as to why it is difficult for the Libertarian Party of Mississippi to find volunteers, as Plaintiff has failed to provide any admissible evidence in support of the proposed fact. Such conclusory testimony is also not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited discovery testing such testimony. *See* Frost Decl. ¶¶ 4–8.

29. Since the 2020 amendment allowing late-arriving ballots for five additional business days, the ability of the Libertarian Party of Mississippi to monitor canvassing of these ballots has diminished. Hanson Decl. ¶¶ 25-26. In particular, since the law changed, Plaintiff has not been able to field post-election monitors for all five extra business days in any election. The Democrat and Republican parties can afford to do this extra monitoring, so Plaintiff is now in an even worse position compared to them. Hanson Decl., ¶ 26.

**Response:** Disputed as to what the 2020 amendment to state law allows for, as it allows only for the counting of ballots postmarked on or before the date of the election but received within five business days of election day. Miss. Code § 23-15-637(1)(a). Further disputed to the extent the Libertarian Party's declarant purports to have personal knowledge about the impact of the Ballot Receipt Deadline on political parties to which she does not belong and act as a member. Finally, such conclusory testimony as Plaintiff offers here is not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited discovery testing such testimony. *See* Frost Decl. ¶¶ 4–8.

30. In the 2023 elections for state office in Mississippi, allegations of impropriety of late-arriving ballots arose in the State House District 114 race. Hanson Decl., ¶ 28. One of the Libertarian Party of Mississippi's candidates was running for House District 114. Due to Plaintiff's limited

9

resources, Plaintiff lacked the ability to monitor and observe the late-arriving ballots to corroborate any of those allegations in all 82 Mississippi counties. *Id.*

**Response:** Disputed to the extent that the declarant fails to identify or substantiate with admissible evidence any "allegations of impropriety" regarding late-arriving ballots in the State House District 114 race. Such conclusory testimony as Plaintiff offers here is not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited discovery testing such testimony. *See* Frost Decl. ¶¶ 4–8. Otherwise, undisputed that a Libertarian Party candidate ran in that election, which resulted in the reelection of a Republican incumbent with 82.1% of the vote. *See* Michael Watson Secretary of State, *2023 Statewide Recapitulation Sheet* 241, https://www.sos.ms.gov/elections-voting/2023-general-election-results (last visited Apr. 9, 2024).

31.     When the Party's candidates' electoral performance is seen as less impressive, it limits the Party's ability to influence donors, recruit volunteers, recruit future candidates for office, and register new voters within the Party. The public perceives that Mississippi voters are turning away from the Party's platform. Hanson Decl., ¶ 21.

**Response:** Disputed. Plaintiff, and the Plaintiff's declarant, fail to substantiate with admissible evidence how the public or Mississippi voters "perceive" the Libertarian Party or its platform. Such conclusory testimony is also not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited discovery testing such testimony. *See* Frost Decl. ¶¶ 4–8.

32.     The next federal election in Mississippi will be held on Tuesday, November 5, 2024, at which time Mississippi will elect a new Congressional delegation, a Senator, and appoint Presidential and Vice-Presidential Electors.

**Response:** Undisputed.

10

33. During this election, Mississippi will allow receive of absentee ballots for five business days post-Election Day, from November 6, 2024 through November 12, 2024.

**Response:** Disputed. Mississippi law allows only for the receipt and counting of ballots postmarked on or before the date of the election but received within five business days of election day. Miss. Code § 23-15-637(1)(a).

34. Similar to the prior elections since 2020, Mississippi's 2024 general election will increase expenses and other resources needed for Plaintiff to monitor post-election canvassing. The increased expenses and other resources are especially burdensome for minor political parties, such as Plaintiff, which have minimal resources compared to the major political parties to monitor canvassing in all 82 Mississippi counties.

**Response:** Disputed. Plaintiff has failed to provide any admissible evidence in support of the proposed facts. Further disputed to the extent Plaintiff has failed to identify, or substantiate with admissible evidence, what "resources" Plaintiff needs or has. Such conclusory testimony is not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited discovery testing such testimony. *See* Frost Decl. ¶¶ 4–8.

35. Counting untimely, illegal, and invalid votes, such as those received in violation of federal law, substantially increases the pool of total votes cast and dilutes the weight of votes cast by Plaintiff's members and others in support of Plaintiff's federal nominees.

**Response:** Disputed. Plaintiff has failed to provide any admissible evidence in support of the proposed facts. Intervenor-Defendants further object to this paragraph to the extent it makes statements of law rather than statements of fact. Finally, such conclusory testimony as offered by Plaintiff is not competent summary judgment evidence under Rule 56(c)(4). To the extent the Court intends to credit or rely upon such assertions, Intervenors request the opportunity to take limited

discovery testing such testimony. *See* Frost Decl. ¶¶ 4–8.

36. Defendant Justin Wetzel is the Circuit Clerk and Registrar of Harrison County and is sued in his official capacity. See Miss. Code § 23-15-647. As the Harrison County registrar, Mr. Wetzel oversees absentee voting in Harrison County. See Miss. Code Ann. § 23-15-621, et seq.

**Response:** Disputed that Miss. Code § 23-15-647 supports the proposed statement regarding Defendant Justin Wetzel's role as the Circuit Clerk and Registrar of Harrison County. Otherwise, undisputed that Defendant Wetzel is sued in his official capacity and oversees absentee voting in Harrison County.

37. Defendant Toni Jo Diaz is the District 1 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission. County Election Commissioners are responsible for canvassing for their county and certifying election results to the Secretary of State. Miss. Code Ann. § 23-15-603.

**Response:** Undisputed.

38. Defendant Becky Payne is the District 2 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

**Response:** Undisputed.

39. Defendant Barbara Kimball is the District 3 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

**Response:** Undisputed.

40. Defendant Christine Brice is the District 4 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

**Response:** Undisputed.

41. Defendant Carolyn Handler is the District 5 Election Commissioner for Harrison County and is sued in her official capacity as a member of the Election Commission.

**Response:** Undisputed.

42.     Defendant Michael Watson is the Secretary of State of Mississippi and the State's chief election officer. Miss. Code § 23-15-211.1. He is responsible for receiving certified election results from each county, including from Defendants who are members of the Harrison County Election Commission. Miss. Code Ann.§ 23-15-603. After which, he is responsible for tabulating results statewide or by district, whatever the case may be, which represent the final results of federal elections. *Id.* He is sued in his official capacity.

**Response:** Undisputed.

43.     Defendants are state actors and have acted, and will continue to act, under color of state law so that ballots received by state election officials after the November 5, 2024, national Election Day will be included in the state's certified election results.

**Response:** Disputed. Mississippi law allows only for the counting of ballots postmarked on or before the date of the election but received within five business days of election day. Miss. Code § 23-15-637(1)(a).

| | |
|---|---|
| Dated: April 9, 2024 | Respectfully submitted, |

| | |
|---|---|
| */s/ Elisabeth C. Frost* | */s/ Robert B. McDuff* |
| Elisabeth C. Frost* (DC Bar # 1007632) | Robert B. McDuff (MS Bar # 2532) |
| Christopher D. Dodge* (DC Bar # 90011587) | Paloma Wu (MS Bar # 105464) |
| Michael B. Jones* (DC Bar # 252745) | **MISSISSIPPI CENTER FOR JUSTICE** |
| Richard A. Medina* (DC Bar # 90003752) | 210 E. Capitol Street |
| Tina Meng Morrison* (DC Bar # 1741090) | Suite 1800 |
| **ELIAS LAW GROUP, LLP** | Jackson, MS 39201 |
| 250 Massachusetts Ave NW | Phone: (601) 259-8484 |
| Suite 400 | Fax: (601) 352-4769 |
| Washington, DC 20001 | rmcduff@mscenterforjustice.org |
| Phone: 202-968-4490 | pwu@mscenterforjustice.org |
| efrost@elias.law | |
| cdodge@elias.law | |
| mjones@elias.law | |
| rmedina@elias.law | *Counsel for Intervenor-Defendants Vet Voice* |
| tmengmorrison@elias.law | *Foundation and Mississippi Alliance for Retired Americans* |

*Admitted *pro hac vice*