UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; and MATTHEW LAMB | PLAINTIFFS |
| VS. | Civil Action No. 1:24-cv-25-LG-RPM |
| JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, et al. | DEFENDANTS |

*and*

| | |
|---|---|
| VET VOICE FOUNDATION and MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS | INTERVENOR DEFENDANTS |

*consolidated with*

| | |
|---|---|
| LIBERTARIAN PARTY OF MISSISSIPPI | PLAINTIFF |
| VS. | Civil Action No. 1:24-cv-37-LG-RPM |
| JUSTIN WETZEL, *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, et al. | DEFENDANTS |

**STATEMENT OF INTEREST OF THE UNITED STATES**

## INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  This case presents an important question relating to enforcement of the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 52 U.S.C. §§ 20301-20311, as amended by the Military and Overseas Voter Empowerment Act of 2009, Pub L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act").[1]

The Attorney General is charged with enforcing UOCAVA.  52 U.S.C. § 20307.  The United States submits this Statement of Interest to address legal questions related to the post-election counting of ballots cast on or before election day.  Permitting the counting of otherwise valid ballots cast on or before election day, though they are received later, does not violate federal statutes setting the day for federal elections.  Indeed, this practice not only complies with federal law but can be vital in ensuring that military and overseas voters are able to exercise their right to vote.  The United States expresses no view on any issues other than those set forth in this brief.

## PROCEDURAL BACKGROUND

The Mississippi election code authorizes absentee voting for certain categories of voters, including, among others, members of the military and overseas citizens, as well as their spouses and dependents.  *See* Miss. Code Ann.§ 23-15-673; *see also id.* § 23-15-713.  Ballots that are received by mail must be "postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election."  Miss. Code Ann.§ 23-15-

---

[1] The provisions of UOCAVA were originally codified at 42 U.S.C. § 1973ff *et seq.*

637(1)(a).

The plaintiffs in this consolidated action have sued various state and local election officials alleging, among other things, that Mississippi's receipt deadline for absentee ballots cast by mail conflicts with 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 21 ("Federal Election Day Statutes"), which set the federal election day for President, Vice President, Senators, and Congressional Representatives on the Tuesday after the first Monday in November.

On March 26, 2024, the parties filed cross-motions for summary judgment. *See* Def. Sec'y of State Michael Watson's Mot. Summ. J. in Consolidated Republican Party Case, ECF No. 51; Def. Sec'y of State Michael Watson's Mot. Summ. J. in Consolidated Libertarian Party Case, ECF No. 53; Pl's Mot. Summ. J., ECF No. 55; Republican Pl.'s Mot. Summ. J., ECF No. 58; Intervenor-Defs. Vet Voice Found. & Miss. All. Retired Ams.' Mot. Summ. J., ECF No. 61; Mot. Summ. J. Defs. Justin Wetzel, Toni Jo Diaz, Becky Payne, Barbara Kimball, Christine Brice, & Carolyn Handler, ECF No. 63.  Plaintiffs argue, among other things, that Mississippi's absentee ballot receipt deadline violates the Federal Election Day Statutes as a matter of law. *See* Mem. Supp. Pl.'s Mot. Summ. J. 5, ECF No. 56 ("Libertarian Mem."); Mem. Supp. of Republican Pl.'s Mot. Summ. J. 6, ECF No. 59 ("RNC Mem").  Defendants and Defendant-Intervenors argue that the Court should find as a matter of law that Mississippi's ballot receipt deadline does not conflict with the Federal Election Day Statutes and should be upheld.  *See* Mem. Authorities Supp. Def. Sec'y of State Michael Watson's Mot. Summ. J. in Consolidated Republican Party Case 25-29, ECF No. 52; Mem. Br. Intervenor-Defs. Vet Voice Found. & Miss. All. Retired Ams. Support Mot. Summ. J. 23-28, ECF No. 62. On April 9, the parties filed responses to the motions.  *See* Resp. Opposing Defs.' Cross-Mot. Summ. J., ECF No. 75; Intervenor-Defs. Vet Voice Found. & Miss. All. Retired Ams.' Resp. Libertarian Party's Mot.

Summ. J., ECF No. 77; Intervenor-Defs. Vet Voice Found. & Miss. All. Retired Ams.' Resp.

RNC Pls.' Mot. Summ. J., ECF No. 78; Pl. Libertarian Party Miss.'s Combined Opp'n Mots.

Summ. J. Filed By Original Defs. & Intervenor Defs., ECF No. 79; Resp. Opp'n Libertarian Pls.'

Mot. Summ. J., ECF No. 82; Resp. Opp'n Republican Pls.' Mot. Summ. J., ECF No. 83.

## STATUTORY BACKGROUND

UOCAVA guarantees members of the uniformed services absent from their place of

residence because of active-duty service (and their spouses and dependents who are also absent

because of that active service) and United States citizens residing overseas the right "to vote by

absentee ballot in general, special, primary, and runoff elections for Federal office." 52 U.S.C.

§ 20302(a)(1). UOCAVA reflects Congress's determination that participation in federal

elections by military and overseas voters is a vital national interest. *See Bush v. Hillsborough*

*Cnty. Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000) ("[Voting is] a sacred

element of the democratic process. For our citizens overseas, voting by absentee ballot may be

the only practical means to exercise that right. For the members of our military, the absentee

ballot is a cherished mechanism to voice their political opinion. . . . [It] should be provided no

matter what their location.").

The MOVE Act reaffirmed Congress's commitment to ensuring that UOCAVA voters

have sufficient time to receive, mark, and return their ballots in time to be counted. *See* MOVE

Act, 156 Cong. Rec. 9762, 9766-67 (2010). To provide enough time for these voters to exercise

their right to vote, the MOVE Act amended UOCAVA to require that states transmit validly

requested ballots to UOCAVA voters at least 45 days before an election for federal office when

the request is received by that date. 52 U.S.C. § 20302(a)(8) ("Each state shall . . . transmit a

validly requested absentee ballot to an absent uniformed services voter or overseas voter . . . not

3

later than 45 days before the election."); 52 U.S.C. § 20302(g)(1)(A) ("[T]he purpose [of the 45-day requirement] is to allow absent uniformed services voters and overseas voters enough time to vote."); *see also* 156 Cong. Rec. at 9766-67 (discussing development of 45-day deadline based on evidence before Congress).

Despite the adoption of the MOVE Act's 45-day advance-transmission requirement for UOCAVA ballots, military and overseas voters continue to face difficulties having sufficient time to receive, mark, and return their ballots. Mississippi's ballot receipt deadline for absentee voters helps ensure that otherwise valid ballots cast by the state's military and overseas voters are received in time to be counted, despite the logistical challenges that can often result from transporting ballots from overseas or distant locations across the country.

## LEGAL STANDARD

 A court considering a motion for summary judgment "views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Griffin v. UPS*, 661 F.3d 216, 221 (5th Cir. 2011) (citing *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)). Such a motion should be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue if "a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

### A. Counting ballots mailed on or before election day does not violate the Federal Election Day Statutes.

The Federal Election Day Statutes, passed pursuant to Congress's power under the Elections Clause of the Constitution, do not conflict with Mississippi's extended ballot receipt

deadline.  Thus, Mississippi's statute allowing the counting of ballots cast on or before election day is not preempted by the Federal Election Day Statutes.  *See Foster v. Love*, 522 U.S. 67, 69 (1997).  Every court, to our knowledge, to consider a similar challenge to a post-election day ballot receipt deadline statute has rejected that challenge.  *See, e.g.*, *Bognet v. Sec'y  Pa.*, 980 F.3d 336, 354 (3d Cir. 2020), *vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *Harris v. Florida Elections Comm'n,* 235 F.3d 578, 579 (11th Cir. 2000), *aff'g Harris v. Florida Elections Canvassing Comm'n*, 122 F. Supp. 2d 1317, 1324–25 (N.D. Fla. 2000); *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 368 & n.23 (Pa. 2020); *Splonskowski v. White*, No. 1:23-cv-00123, 2024 WL 402629, at *2 (D.N.D. Feb. 2, 2024); *Bost v. Ill. Bd. of Elections*, No. 22-cv-02754, 2023 WL 4817073, at *11 (N.D. Ill. July 26, 2023), *appeal docketed*, No. 23-2644 (7th Cir. Aug. 21, 2023).

"The Elections Clause of the Constitution, Art. 1, § 4, cl. 1 . . . is a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices."  *Foster*, 522 U.S. at 69 (citation omitted).  Put another way, "a state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject."  *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000); *see also Foster*, 522 U.S. at 68-69; *Bost*, 2023 WL 4817073, at *10.

Mississippi's ballot receipt deadline does not conflict with the Federal Election Day Statutes.  By enacting 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 21, Congress exercised its power under the Elections Clause to set federal election day as the first Tuesday after the first Monday in November.  The text of the Federal Election Day Statutes thus establishes when election day is

5

and does not prevent acceptance of mail ballots that were "postmarked on or before the date of

the election and received by the registrar no more than five (5) business days after the election."[2]

Miss. Code Ann. § 23-15-637(1)(a); *see also Bomer*, 199 F.3d at 776 (explaining "the Supreme

Court's refusal to give a hyper-technical meaning to 'election' and its refusal to '[pare] the term

"election" in § 7 down to the definitional bone'" (alteration in original)).  The Fifth Circuit

"c[ould] not conceive that Congress intended the federal election day statutes to have the effect

of impeding citizens in exercising their right to vote," as "[t]he legislative history of the statutes

reflects Congress's concern that citizens be able to exercise their right to vote."  *Bomer*, 199 F.3d

at 777 (citing Cong. Globe, 42d Cong., 2d Sess. 3407-08 (1872)).

---

[2] The District of Columbia and 18 states including Mississippi have adopted ballot receipt deadlines that extend for some period after election day, either for mail voters generally or for some or all UOCAVA voters.  *See, e.g.*, Alaska—Alaska Stat. § 15.20.081(e) (absentee mail ballot timely if received within 10 days of election day and, if postmarked, must be postmarked on or before election day); California—Cal. Elec. § 3020(b) (vote by mail ballot timely if postmarked on or before election day and received within 7 days after election day); District of Columbia—D.C. Code § 1-1001.05(a)(10A) (absentee ballot timely if postmarked on or before election day and received within 7 days after election day); Illinois—10 Ill. Comp. Stat. 5/19-8; *id.* 5/18A-15(a); *Bost*, 2023 WL 4817073, at *11 (mail ballot timely in Illinois if postmarked by election day and received within the next 14 days, and this deadline does not violate Federal Election Day Statutes); Kansas—Kan. Stat. Ann. § 25-1132 (mail ballot timely if postmarked on or before election day and received within 3 days after election day); Massachusetts—Mass. Gen. Laws ch. 54 § 93 (absentee ballot timely if postmarked on or before election day and received by 5:00 p.m. on the third day after election day); Nevada—Nev. Rev. Stat. § 293.269921(1)(b) (mail ballot timely if postmarked on or before election day and received by 5:00 p.m. on the fourth day after election day); New Jersey—N.J. Stat. Ann. § 19:63-22(a) (mail ballot timely if postmarked on or before election day and received within 144 hours (6 days) after polls close); New York—N.Y. Elec. Law § 8-412 (absentee ballot timely if postmarked on or before election day and received within 7 days after election day); North Dakota—N.D. Cent. Code § 16.1-07-24 (absentee ballot timely if postmarked before election day and received before the canvassing board meeting); Texas—Tex. Elec. Code Ann. § 86.007(a)(2) (Texas will count votes that arrive "not later than 5 p.m. on the day after election day," so long as they were "placed for delivery by mail or common or contract carrier before election day and bear[] a cancellation mark of a common or contract carrier or a courier indicating a time not later than 7 p.m. at the location of the election on election day."); West Virginia—W. Va. Code §§ 3-3-5(g), 3-6-9 (absentee ballot timely if postmarked on or before election day and received before board of canvassers convenes on the fifth day after election day).

1.  The Federal Election Day Statutes do not preempt Mississippi's Ballot Receipt
    Deadline statute.

Plaintiffs incorrectly argue that under the Federal Election Day Statutes, "[t]he day for the election means the final day ballots are received by election officials." *See* RNC Mem. 7 (internal quotation marks omitted); *see also* Libertarian Mem. 7-8.  The Supreme Court has embraced a narrow view of which state laws the Federal Election Day Statutes preempt, imposing only the limitation that an election may not conclude before election day.  *Foster*, 522 U.S. at 71, 72 n.4.  In *Foster*, the Supreme Court considered Louisiana's practice of holding in October of federal election years an "open primary," which "provide[d] an opportunity to fill" Congressional offices "without any action to be taken on federal election day."  *Id.* at 68-69.  A candidate who received a majority of the votes in the open primary was "elected."  *Id.* at 70.  As a practical matter, a candidate was elected in over 80 percent of Louisiana's open primaries.  *Id.* The Court, holding that Louisiana's practice violated 2 U.S.C. § 7, wrote: "[I]t is enough to resolve this case to say that a contested selection of candidates for a congressional office that is concluded as a matter of law before the federal election day" violates the Federal Election Day Statutes.  *Id.* at 72.

Under *Foster*, Mississippi's post-election day ministerial actions related to the transmission, processing, and counting of mail ballots are not preempted.  So long as there remains under state law an "act in law or in fact to take place on" election day, *id.*, *Foster* does not support the preemption of that state law.   Because in-person voting takes place on election day in Mississippi, and because Mississippi sets election day as the deadline for casting mail-in ballots, *Foster* does not support preemption of Mississippi's absentee ballot receipt deadline. *See e.g.*, Miss. Code Ann. § 23-15-637(1)(a) (mail-in ballots); *id.* § 23-15-173 (municipal elections); *id.* § 23-15-1033 (Congressional elections); *id.* § 23-15-991 (state supreme court

elections); *id.* § 9-4-5 (state Court of Appeals elections); *id.* § 23-15-1015 (state circuit court and chancery court elections); *see also id.* § 23-15-197 (acting as a glossary for the various election day code sections).

By necessity, *calculating* voters' final selection can often stretch into the days following election day, and courts have repeatedly rejected the argument that post-election ballot tallying violates the Federal Election Day Statutes.  As the court observed in *Harris v. Fla. Elections Canvassing Commissioners*, 122 F. Supp. 2d 1317 (N.D. Fla. 2000), "while it is possible for everyone to vote on election day, it is highly unlikely that every precinct will be able to guarantee that its votes would be counted by midnight on election day.  This has been the case for years, yet votes are not routinely being thrown out because they could not be counted on election day." *Id.* at 1324-25 ("Routinely, in every election, hundreds of thousands of votes are cast on election day but are not counted until the next day or beyond."), *aff'd sub nom. Harris v. Fla. Elections Comm'n*, 235 F.3d 578 (11th Cir. 2000).

Casting a ballot is distinct from counting a ballot, and the Federal Election Day Statutes permit post-election day counting.  *See*, *e.g.*, *Bost*, 2023 WL 4817073, at \*11 (Illinois' 14-day post-election day ballot receipt deadline "operates harmoniously with the federal statutes that set the timing for federal elections" and "is facially compatible with the relevant federal statutes."); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) ("New Jersey's law permitting the canvassing of ballots lacking a postmark if they are received within forty-eight hours of the closing of the polls is not preempted by the Federal Election Day Statutes because the Federal Election Day Statutes are silent on methods of determining the timeliness of ballots."); RNC Mem. 9.

2. Mississippi law requires the casting of ballots by election day, in compliance with the Federal Election Day Statutes.

Mississippi, like many other states, establishes a "mailbox rule" for absentee ballots: the placement of a marked ballot in the mail for delivery to election officials *is* the act of voting. Miss. Code Ann. § 23-15-637.  The RNC plaintiffs do not contend that Mississippi is prohibited from counting ballots after election day that were *received* on or before that date.  *See, e.g.*, RNC Mem. 9 ("After election day, election officials go about various duties: counting ballots, disqualifying voters, hearing challenges, and certifying the election.").  Plaintiffs' contention thus hinges on the incorrect assumption that Mississippi cannot define casting a ballot—the consummation of the voting process—to include putting it in the mail.  But "[p]roviding various options for the time and place of depositing a completed ballot does not change the day for the election." *Millsaps v. Thompson*, 259 F.3d 535, 545 (6th Cir. 2001) (internal quotation marks omitted).  The Supreme Court has never defined consummate, as the RNC does, to include both the casting of ballots and the receipt of ballots by an election official.  The *Foster* Court made clear only "that if an election does take place, it may not be consummated prior to federal election day," *Foster*, 522 U.S. at 72 n.4.  Mississippi's ballot receipt deadline does not allow for the consummation of an election before election day, and Mississippi's ballot receipt deadlines operate in tandem with the Federal Election Day Statutes.  *See Bost*, 2023 WL 4817073, at *11.

Even accepting plaintiffs' expansive reading of *Foster*, the case does not support the conclusion that mailbox rules necessarily violate the Federal Election Day Statutes.  The "final selection of an officeholder" occurs on election day since all ballots must be postmarked by that day.  *Foster*, 522 U.S. at 71.  Under Mississippi law, the only activities occurring after election day are the receipt and counting of ballots, which do not affect the *selection* of a candidate.  Just as nothing in *Foster* prohibits election officials from receiving ballots before election day, nothing in the case prohibits state officials from receiving and counting ballots after election day,

as long as voters submit them by the federally prescribed election day.  The RNC's emphasis on "'final selection' resulting from the 'combined actions' of voters and election officials,'" RNC Mem. 9, (*quoting Foster* 522 U.S. at 72), does not require receipt of absentee ballots on election day.  Election officials take many actions in the absentee ballot process, including verifying that a voter is eligible to vote absentee, which by its nature must occur before election day.  Therefore, voters and election officials have taken actions resulting in final selection by election day, and all that is left after election day is the ministerial task of counting ballots.

Further, Congress has "decline[d] to preempt state legislative choices," such as "methods of determining the timeliness of mail-in ballots."  *Way*, 492 F. Supp. 3d at 372 (quoting *Foster*, 522 U.S. at 69).  In particular, "[d]espite [post-election day] ballot receipt deadline statutes being in place for many years in many states, Congress has never stepped in and altered the rules."  *Bost*, 2023 WL 4817073, at *11 (citation omitted).   Plaintiffs' reliance on a single decades-old state supreme court case from Montana interpreting state law does not change that fact.  In *Maddox v. Board of State Canvassers*, 149 P.2d 112 (Mont. 1944), the Montana Supreme Court did state that "[n]othing short of the delivery of the ballot to the election officials for deposit in the ballot box constitutes casting the ballot."  *Id.* at 115; *see also* Libertarian Mem. 7 (quoting *Maddox*, 149 P.2d at 115).  This was true in Montana in 1944, when "the state law provide[d] for voting by ballots deposited with the election officials."  *Maddox*, 149 P.2d at 115.  By contrast, here, current Mississippi law specifically provides for voting by ballots deposited with election officials *or* deposited in the mail on or before election day and received up to 5 business days later.  Miss. Code Ann. § 23-15-637.  Because Mississippi state law specifically allows for the return of otherwise valid ballots up to five business days after election day, the analysis in *Maddox* is inapplicable.

3.   Contemporaneous practice confirms that "election" in the Federal Election Day Statutes refers to when ballots must be cast.

This Court need not look beyond the statutes at issue to reject plaintiffs' claims. Plaintiffs, however, proceed to examine the history of absentee voting in the United States but fail to include salient information.  During the Civil War, 20 of 25 states, as well as 7 of 11 states in the Confederacy, passed laws allowing soldiers in the field to vote.  Josiah Henry Benton, *Voting in the Field: A Forgotten Chapter of the Civil War* 4, 27-28, 312-13, 315 (1915), https://perma.cc/5HGD-K5JC; *see also id*. at 269-70 (discussing a similar New Jersey law implemented from 1815-1819).  In most of these states, military officers were authorized to set up polling places in the field, and soldiers would vote for local, state, or federal offices on the relevant state or federal election day.[3]  Military officers or regular soldiers, rather than local civilian election officials, usually operated these polling places and collected and counted ballots from soldiers eligible to vote under state law.[4]

While soldiers cast these votes on the congressionally mandated federal election day for presidential elections, and on their states' chosen election days for other elections, the soldiers' ballots still had to be sent back to election officials in their home states so those officials could canvass the votes and add the valid ones to the totals cast by traditional voters.  This fact meant

---

[3] Josiah Henry Benton, Voting in the Field: A Forgotten Chapter of the Civil War 4, 15, 17, 43, 49, 63-64, 70-71, 74, 87, 100-01, 106, 115, 122, 129, 156, 171-72, 186, 190, 201-02, 217-18, 239 (1915), https://perma.cc/5HGD-K5JC; *see, e.g.*, *In re Ops. of Justs.*, 45 N.H. 595, 596-97 (N.H. 1864); *Bourland v. Hildreth*, 26 Cal. 161, 177 (Cal. 1864); *Morrison v. Springer*, 15 Iowa 304, 338 (Iowa 1863); *Lehman v. McBride*, 15 Ohio St. 573, 589 (Ohio 1863); *State ex rel. Chandler v. Main*, 16 Wis. 398, 411 (Wis. 1863); *In re Ops. of Justs.*, 30 Conn. 591, 591 n.* (Conn. 1862); *Chase v. Miller*, 41 Pa. 403, 416 (Pa. 1862), *abrogated by McLinko v. Dep't of State*, 279 A.3d 539 (Pa. 2022).

[4] *See* Benton 17, 43, 49, 64, 74, 87-88, 106, 115-16, 122, 129, 156, 171-72, 201-02, 218, 239-40; *Morrison*, 15 Iowa at 338-39; *State ex rel. Chandler*, 16 Wis. at 422; *In re Opinion of Justs.*, 30 Conn. at 591 n.*.

that soldiers' votes were not received by local election officials, s*ee* RNC Mem. 8; Libertarian Mem. 8-9, until *after* the dates that 3 U.S.C. § 1 or state law set as the relevant election day.[5] States often gave military voters until the deadline for canvassing in-state ballots to have their votes delivered to state election officials, and some states even extended their canvassing periods to accommodate the military vote.  *See* Benton 317-18.

Congress presumably was aware of the states' widespread practice when, eight years after the Civil War's end, it enacted 2 U.S.C. § 7 without requiring votes to be both cast and received by election day.  Congress also did not amend 3 U.S.C. § 1 to disturb states' understanding that ballots could be counted in presidential elections when submitted by voters on election day, even when those ballots would not be received by local election officials until some later date.

This history also shows that *local* officials receiving soldiers' ballots after election day (though cast on or before election day), *see supra* note 5 and accompanying text, is a practice of which Congress was aware when it passed the Federal Election Day Statutes.  Importantly, Congress intended the Federal Election Day Statutes to reduce the burden on citizens to exercise their right to vote by allowing them to vote at a time convenient to them, without thwarting other federal concerns.  Mississippi's ballot receipt deadline also furthers that same underlying interest.

    4.  Congress has never repudiated or expressed disapproval of post-Election-Day ballot receipt deadlines.

---

[5]  *See* Benton 43, 64, 71-72, 74, 89, 100-01, 106, 116-17, 123-24, 129, 156, 171-72, 186-87, 218-19, 240-41; *Lehman*, 15 Ohio at 603-04 (noting that Ohio's law "extend[ed] the time for receiving and opening the returns of votes cast under the act"); *In re Opinion of Justs.*, 30 Conn. at 591 n.* ("[A]ll the ballots cast . . . shall be sealed up by the commanding officer, and be by him forthwith transmitted by mail to the secretary of state at Hartford.").

Mississippi's law draws additional support from "the long history of congressional tolerance, despite the federal election day statute, of absentee balloting" with post-election-day receipt deadlines. *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1175 (9th Cir. 2001). Mississippi is one of many states that accept and count mail-in ballots received after election day if they are postmarked on or before election day. *See supra* note 2.

Many of these statutes have existed for decades. *See, e.g.*, *Hammond v. Hickel*, 588 P.2d 256, 268 (Alaska 1978); *Elliott v. Hogan*, 315 S.W.2d 840, 848 (Mo. Ct. App. 1958). Yet Congress has never suggested that these laws violate the Federal Election Day Statutes or amended those statutes to preempt post-election-day ballot receipt deadlines. Congress's continued tolerance of laws like Mississippi's illustrates that a "[d]eadline [e]xtension and federal laws setting the date for federal elections can, and indeed do, operate harmoniously." *Bognet*, 980 F.3d at 354. If anything, Congress has expressed a strong preference for *enlarging* access to mail-in voting. Provisions of UOCAVA, *see infra* Section B, and the Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. § 20102(b)(2)(B)(ii), provide for or reduce barriers to absentee voting.

Section 202 of the Voting Rights Act, passed in 1970, goes a step further. Congress required all states to allow absentee voting in presidential elections for those who apply seven days before the election "and have returned such ballots to the appropriate election official of such state not later than the time of closing of the polls in such State on the day of such election." 52 U.S.C. § 10502(d). While the statute requires states, at minimum, to count any qualifying absentee ballots received by Election Day, Congress also provided that states may "adopt[] less restrictive voting practices than" the statute mandates. 52 U.S.C. § 10502(g).

Section 202, which is "of equal force" to the Federal Election Day Statutes, "plainly provides for liberality toward absentee balloting" in presidential elections. *Keisling*, 259 F.3d at 1176. And Congress passed the provision with full knowledge that some states had post-election-day ballot receipt deadlines: the provision's sponsor, Senator Barry Goldwater, provided research informing Congress that forty states at the time already "expressly permit[ted] absentee ballots of certain categories of their voters to be returned as late as the day of the election *or even later*." 116 Cong. Rec. 6996 (1970) (statement of Sen. Goldwater) (emphasis added).[6]

Congress also has ensured that at least some vote-counting will occur after election day. As part of the Help America Vote Act of 2002 (HAVA), Congress mandated that nearly all states issue provisional ballots to voters whose eligibility to vote in a jurisdiction is in question and required poll workers to transmit those ballots to an appropriate election official for "prompt" verification. 52 U.S.C. §§ 21082(a)(1)-(3). Only when "the appropriate State or local election official . . . determines that the individual is eligible under State law to vote" does HAVA provide that "the individual's provisional ballot shall be counted as a vote in that election in accordance with State law." 52 U.S.C. § 21082(a)(4). This verification process cannot reasonably be finished on election day, particularly as provisional ballots often are cast during election-day in-person voting. As a result, the District of Columbia and the 48 states that issue

---

[6] The recently enacted Electoral Count Reform Act (ECRA) takes nothing away from Congress's continued tolerance of post-election-day ballot receipt deadlines. The ECRA redefines "election day" to accommodate "force majeure events" if state law so allows. Pub. L. No. 117-328, Div. P, Tit. I, § 102(b), 136 Stat. 5233-34 (3 U.S.C. § 21(1)). But the ECRA fully "modifies the period of voting" in such cases, *id.*, allowing voters not merely to have their ballots counted if *received* by the new date but also to *cast their ballots* by that date. The ECRA authorizes a change in the federal election day itself, but it says nothing about how long after that date ballots may be *counted*. *See id.*

provisional ballots all set post-election-day deadlines for counting them.  *See What Time Is Allotted to Determine the Status of Provisional Ballots?, Report: Provisional Ballots*, Nat'l Conf. of State Legislatures, https://perma.cc/R3MM-64UZ (Nov. 4, 2022).

At bottom, the Mississippi statute at issue does not permit voters to cast votes after election day is over.  And tallying ballots cast by mail on or before election day does not constitute prohibited post-election day voting.  *See Bost*, 2023 WL 4817073, at *13 ("Plaintiffs consistently—and wrongly—conflate 'voting' with 'counting votes.' . . .  Under the Ballot Receipt Deadline Statute, the voting deadline is unambiguous: the act of voting must take place on or before election day.  *Counting* those votes, however, may take place up to 14 days after election day [under Illinois' statute].") (internal citations omitted).  Mississippi law requires that voters must mail in their absentee ballots on or before election day, before any election results are publicized.  This system ensures there is a level playing field for all voters and that no voters have access to election results before casting their vote.  Federal law does not preclude Mississippi's decision to *count* ballots validly cast by mail on or before election day but received and tallied within the next five business days.

**B.  Mississippi's absentee ballot receipt deadline protects the voting rights of military and overseas voters.**

Laws like Mississippi's also provide critical protection for UOCAVA voters.  The extended deadline can help ensure that these voters can receive, cast, and return their ballots in time for them to be counted.  The Mississippi law at issue here is not dissimilar to the remedies often proposed and ordered in UOCAVA cases the United States routinely brings.

Absentee voting laws generally are the only way U.S. citizens who are deployed in the uniformed services or otherwise living overseas can exercise their right to vote.  Despite Congress's repeated efforts, many military and overseas voters have continued to face

difficulties exercising their franchise. *See, e.g.*, *Bush*, 123 F. Supp. 2d at 1310. The history of congressional action reflects a strong commitment to ensuring military service members and overseas citizens have access to the ballot box. "By passing UOCAVA, and later by strengthening its protections, Congress unequivocally committed to eliminating procedural roadblocks, which historically prevented thousands of service members from sharing in the most basic of democratic rights." *United States v. Alabama*, 778 F.3d 926, 928 (11th Cir. 2015); *see also* 156 Cong. Rec. 9762 (2010) (statement of Senator Charles Schumer) ("On a bipartisan basis, we agreed that it was unacceptable that in the age of global communications, many active military, their families, and thousands of other Americans living, working, and volunteering in foreign countries cannot cast a ballot at home while they are serving or living overseas."); 132 Cong. Rec. 13135 (1986) (statement of Sen. John Warner) (explaining UOCAVA was meant to respond to "the problem of involuntary absentee voter disenfranchisement" among military voters).

    In contrast to the early statute addressing military voting, *see* RNC Mem. 15, when adopting UOCAVA and the MOVE Act, Congress declined to specify a ballot receipt deadline, expressly deferring instead to individual state laws.[7] UOCAVA provided that voters who do not receive state absentee ballots on time can fill out and return a special federal write-in absentee ballot, but that the federal ballots will not be counted if the voters' state absentee ballots end up

---

[7] Also contrary to plaintiffs' argument, RNC Mem. 10, Section 8(b)(5)(B) of Title 2 of the U.S. Code, adopted following the September 11, 2001, terrorist attacks to address special elections to fill vacancies in the U.S. House of Representatives, demonstrates Congress's commitment to safeguard the voting rights of military and overseas voters. That provision, which applies only under "extraordinary circumstances" in which the number of U.S. House vacancies exceeds 100, *see id.* § 8(b)(4)(A), requires state officials to accept ballots received from UOCAVA voters within 45 days of their transmission, regardless of any deadlines that otherwise would apply. *See id.* § 8(b)(5)(B).

being "received by the appropriate State election official not later than the deadline for receipt of the State absentee ballot under State law." 52 U.S.C. § 20303(b)(3).  And under a provision of the MOVE Act governing special procedures for collecting and delivering certain absentee ballots, the Presidential designee must ensure that overseas servicemembers' ballots "for regularly scheduled general elections for Federal office" are delivered by "not later than the date by which an absentee ballot must be received in order to be counted in the election." 52 U.S.C. § 20304(b)(1).

Congress has acted multiple times to address jurisdictions' failure to transmit UOCAVA ballots in sufficient time to allow voters to cast and return their ballot before the deadline.  Prior to the adoption of UOCAVA, the "single largest reason for disenfranchisement of military and overseas voters [was] State failure to provide adequate ballot transit time."  H.R. Rep. No. 99-765, at 10 (1986); *see also* 132 Cong. Rec. 13135 (1986) (statement of Sen. John Warner) ("[I]n too many instances, absentee ballots either arrive too late or do not arrive at all").  And even after UOCAVA was enacted, problems with delayed ballots continued.  *See* 156 Cong. Rec. 9763 (2010) (statement of Sen. Charles Schumer) (explaining that Congress relied on data suggesting that "two out of every five military and overseas voters, 39 percent—who requested an absentee ballot in 2008 received it from local election officials in the second half of October or later— much too late for a ballot to be voted and mailed back in time to be counted on election day").[8] Congress passed the MOVE Act in 2009 to further address issues faced by UOCAVA voters.

---

[8] According to the Federal Voting Assistance Program's (FVAP) 2022 Report to Congress—the most recent FVAP post-election report currently available— "there were 654,786 UOCAVA ballots transmitted to voters from election officials.  Election officials received 267,403 voted ballots, and 4,089 [Federal Write-In Absentee Ballots]."  2022 Report to Congress, Fed. Voting Assistance Program 44 (italics omitted); *see also id.* at 57.  The Report notes that "[m]issing the deadline was the most common reason for rejection [of returned ballots] . . . at [rates of] 60.1 percent for Uniformed Service members and 67.4 percent for overseas civilians."  *Id.* at 45.

*See Doe v. Walker*, 746 F. Supp. 2d 667, 670 (D. Md. 2010) (explaining that the MOVE Act was enacted "in response to the widespread disenfranchisement of absent uniformed services and overseas voters during the November 2008 general elections"). The MOVE Act, as discussed, requires that jurisdictions transmit absentee ballots to UOCAVA voters at least 45 days before election day for federal office. *See* 52 U.S.C. § 20302(a)(8); Cong. Rec. 9766-67 (2010) (Statement of Sen. Schumer) (describing Congress's adoption of the 45-day requirement as an effort to provide enough time for UOCAVA voters to request, receive, and cast their ballots in time for them to be counted).

Both before and after Congress's enactment of the MOVE Act, many military and overseas voters have faced possible disenfranchisement because of the late transmission of UOCAVA ballots. The United States Attorney General—who enforces UOCAVA, 52 U.S.C. § 20307—has repeatedly found it necessary to act against jurisdictions to prevent military and overseas voters from being disenfranchised due to late-transmitted ballots in particular federal elections. In many of these cases, the remedy has involved extending the post-election day receipt deadline for absentee ballots cast by military and overseas voters on or before election day. *See Bost*, 2023 WL 4817073, at *11 ("[T]he United States Attorney General often seeks court-ordered extensions of ballot receipt deadlines to ensure that military voters are not disenfranchised."); *see also United States v. Alabama*, 857 F. Supp. 2d 1236, 1242 (M.D. Ala. 2012); *United States v. New York*, No. 1:10-cv-1214, 2012 WL 254263, at *1-2 (N.D.N.Y. Jan. 27, 2012). The district court in *Bost* cited the Department of Justice's history of seeking extended ballot receipt deadlines as remedies for UOCAVA violations as support for upholding Illinois' post-election day ballot receipt deadline. *Bost*, 2023 WL 4817073, at *11.

The use of ballot receipt extensions as remedies for the late transmission of UOCAVA

ballots is longstanding.  Indeed, the remedy's use stretches back to the earliest cases brought by

the United States to enforce UOCAVA following the statute's enactment in 1986.  *See Cases*

*Raising Claims Under the Uniformed and Overseas Citizen Absentee Voting Act*, Dep't of Just.,

(Mar. 24, 2022), https://perma.cc/7LZE-7Q7H ("*Cases Raising Claims*")*; see also, e.g.*, *United*

*States v. Idaho*, No. 88-1187 (D. Idaho May 21, 1988; entered May 23, 1988) (extending

deadline by 10 days); *United States v. Oklahoma*, No. CIV-88-1444 P (W.D. Okla. Aug. 22,

1988) (extending deadline by 10 days).  Since 2000, UOCAVA ballot receipt deadlines were

extended by court-ordered consent decree, court order, or settlement agreement, thereby allowing

validly cast ballots to be received and counted after election day, in approximately 30 of the

United States' cases and agreements.  *See Cases Raising Claims.*  Many of these agreements or

court orders have extended ballot receipt deadlines for UOCAVA voters for the number of days

after election day commensurate with the number of days that UOCAVA ballots were

transmitted after the federal law deadline.[9]

In entering remedial orders for UOCAVA violations, courts have repeatedly recognized

---

[9] *See, e.g.*, *United States v. W. Virginia*, No. 2:14-cv-27456 (S.D. W.Va. Nov. 3, 2014)
(extending ballot receipt deadline by 7 days); *United States v. Wisconsin*, No. 3:12-cv-00197
(W.D. Wis. Mar. 23, 2012) (extending deadline by number of days of late transmission); *United
States v. New York*, No. 1:09-cv-00335 (N.D.N.Y. Mar. 26, 2009) (extending deadline by 6
days); *United States v. Georgia*, No. 1:04-cv-02040 (N.D. Ga. July 16, 2004) (extending
deadline by 3 business days); *United States v. New Jersey*, No. 3:92-cv-2403 (D.N.J. June 2,
1992) (extending deadline by 14 days); *United States v. Michigan*, No. 1:92-cv-00529 (W.D.
Mich. Aug. 3, 1992) (extending deadline by 20 days); *United States v. New Jersey*, No. 3:90-cv-
02357 (D.N.J. June 5, 1990) (extending deadline by 10 days); *United States v. Colorado*, No.
1:90-cv-01419 (D. Colo. Aug. 10, 1990) (extending deadline by 10 days); *United States v.
Michigan*, No. L 88-208 CA5 (W.D. Mich. July 29, 1988) (extending deadline by 10 days);
*United States v. Idaho*, No. 88-1187 (D. Idaho May 21, 1988; entered May 23, 1988) (extending
deadline by 10 days); *United States v. Oklahoma*, No. CIV-88-1444 P (W.D. Okla. Aug. 22,
1988) (extending deadline by 10 days).

that the public interest is served by ensuring that overseas or military "voters, many of whom

risk their lives at the request of their government, have the opportunity to vote." *Alabama*, 857

F. Supp. 2d at 1242; *see also New York*, 2012 WL 254263, at *1 ("It is unconscionable to send

men and women overseas to preserve our democracy while simultaneously disenfranchising

them while they are gone."); *United States v. Georgia*, 892 F. Supp. 2d 1367, 1376-78 (N.D. Ga.

2012) (concluding that the public interest was served when ensuring UOCAVA voters could vote

and stating that "[g]iven that how and where our servicemembers conduct their lives is dictated

by the government, their right to vote is 'their last vestige of expression and should be provided

no matter what their location'" (citations omitted)).

Indeed, in its recent order dismissing a similar challenge to North Dakota's ballot receipt

deadline based on plaintiffs' lack of standing, the court generally described seeking the

"invalidation of North Dakota's general absentee ballot statutes" as "a concerning position for an

elected official to take" because "the same reasoning could be utilized against overseas citizens

and members of the United States military's rights to vote." *Splonskowski*, 2024 WL 402629, at

*4 n.3.

The Mississippi ballot receipt law here provides a prophylactic protection for voters to

help ensure that they can receive, vote, and return their mail ballots in time for them to be

counted.  Mississippians in the military or who live overseas have consistently utilized absentee

voting.  According to the U.S. Election Assistance Commission, 3,717 Mississippians in the

2020 general election and 261 Mississippians in the 2022 general election were sent a UOCAVA

ballot.  *See* U.S. Election Assistance Comm'n, Election Administration and Voting Survey 2020

Comprehensive Report 198 (Aug. 2021), https://perma.cc/E4KH-EDXP; U.S. Election

Assistance Comm'n, Election Administration and Voting Survey 2022 Comprehensive Report 219 (June 2023), https://perma.cc/PDZ7-S692.

The Mississippi ballot receipt law helps ensure that these voters' ballots are counted.  The law is not dissimilar to the statutes adopted by other states, as set forth above, and the remedies proposed and ordered by federal courts in UOCAVA cases brought by the United States to ensure that military and overseas voters can exercise their right to vote.

## CONCLUSION

For these reasons, the United States submits that Mississippi's post-election day ballot receipt deadline is consistent with the Federal Election Day Statutes.  Such post-election day ballot receipt deadlines are a common remedial measure that the United States has sought and obtained in UOCAVA cases to ensure that military and overseas voters have enough time to receive, mark, and return their ballots in time for them to be counted.

Dated: April 11, 2024

TODD W. GEE
United States Attorney

*/s/ Angela Givens Williams*
ANGELA GIVENS WILLIAMS (#102469)
MITZI DEASE PAIGE (#6014)
Assistant U.S. Attorneys
501 E. Court St.
Suite 4.430
Jackson, MS  39201
Phone: (601) 965-4480
Angela.Williams3@usdoj.gov
Mitzi.Paige@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*s/ Sejal Jhaveri*
R. TAMAR HAGLER
TIMOTHY F. MELLETT
JANIE ALLISON (JAYE) SITTON
SEJAL JHAVERI
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Ave NW
Washington, DC 20530
(202) 532-5610
Sejal.Jhaveri@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on April 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

*/s/ Sejal Jhaveri*
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(202) 532-5610
Sejal.Jhaveri@usdoj.gov