IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; and MATTHEW LAMB** | **PLAINTIFFS** |
| VS. | Civil Action No. 1:24-cv-25-LG-RPM |
| **JUSTIN WETZEL,** *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, et al. | **DEFENDANTS** |
| *and* | |
| **VET VOICE FOUNDATION and MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS** | **INTERVENOR DEFENDANTS** |

*consolidated with*

| | |
|---|---|
| **LIBERTARIAN PARTY OF MISSISSIPPI** | **PLAINTIFF** |
| VS. | Civil Action No. 1:24-cv-37-LG-RPM |
| **JUSTIN WETZEL,** *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, et al. | **DEFENDANTS** |

**REBUTTAL IN FURTHER SUPPORT OF DEFENDANT SECRETARY OF STATE MICHAEL WATSON'S MOTION FOR SUMMARY JUDGMENT IN CONSOLIDATED REPUBLICAN PARTY CASE**

**INTRODUCTION**

In response to Defendant Secretary of State Michael Watson's ("Defendant") motion for summary judgment [Dkt. #51, #52], Plaintiffs have not presented competent summary-judgment evidence establishing Article III standing as to any plaintiff under any applicable theory. Nor have

1

Plaintiffs shown that Mississippi's mail-in absentee ballot receipt deadline statute, MISS. CODE ANN. § 23-15-637(1)(a) ("the Mississippi Statute"), violates federal law.  Regardless of what any party may think of the policy embodied in the Mississippi Statute, it does not violate federal law, and Plaintiffs' Complaint should be dismissed.

At the threshold jurisdictional inquiry, Plaintiffs lack Article III standing to bring this lawsuit.  To begin with, Plaintiffs have abandoned any effort to establish standing as to Plaintiff James "Pete" Perry.  And Plaintiffs have presented no evidence that Plaintiff Matthew Lamb, a George County Election Commissioner, faces any certainly-impending removal from office.  Thus, neither of the individual plaintiffs has standing to bring this lawsuit.

The Republican Party entity-plaintiffs likewise lack standing.  Neither the Republican National Committee nor the Mississippi Republican Party (collectively "RNC Plaintiffs") has made the requisite showing for associational standing.  Plaintiffs have presented no evidence that the Mississippi Statute has harmed, or will harm, the electoral prospects of a single Republican candidate for federal office appearing on the ballot in Mississippi.  They have provided no factual support for their assertion that post-Election Day mail-in absentee ballots favor Democrats in Mississippi federal elections.  And they have presented no evidence to support the notion that the Mississippi Statute diminishes Republican voters' political effectiveness in Mississippi.

Nor have the RNC Plaintiffs made the requisite showing for organizational standing.  While the RNC Plaintiffs argue that the Mississippi Statute causes them to divert resources away from certain activities and towards other activities, they have not shown that any purported diversion of resources perceptibly impairs their ability to achieve their respective missions.

Because Plaintiffs lack standing, this Court lacks subject-matter jurisdiction, and Plaintiffs' Complaint should be dismissed without reaching the merits.  Even if this Court finds that Plaintiffs

have standing, their claims nevertheless fail on the merits. Plaintiffs' argument that the Mississippi Statute violates federal law rests on a tortured reading of the U.S. Supreme Court's opinion in *Foster v. Love*, 522 U.S. 67 (1997). But *Foster's* expressly-limited holding does not establish a direct conflict between the Mississippi Statute and federal law. And Plaintiffs have cited no controlling authority holding that the post-Election Day counting of mail-in absentee ballots postmarked by Election Day directly conflicts with federal election statutes. Finally, Plaintiffs have abandoned their constitutional claims, which they fail to address at all.

For these reasons and those set forth herein, Plaintiffs' Complaint should be dismissed for lack of standing. Alternatively, Plaintiffs' claims fail on the merits, and the Court should enter summary judgment for Defendant.

## **ARGUMENT**

### I. PLAINTIFFS FAIL TO PRESENT COMPETENT SUMMARY-JUDGMENT EVIDENCE ESTABLISHING ARTICLE III STANDING.

As set forth in Defendant's memorandum of authorities, "[w]hen the defendant moves for summary judgment because of lack of standing, . . . the *plaintiff* must submit *affidavits and comparable evidence* that indicate that a genuine issue of fact exists on the standing issue." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991)) (quotation marks omitted) (emphasis added). For the reasons that follow, Plaintiffs have failed to carry their burden of establishing standing.

**A. Plaintiffs fail to establish standing as to either of the individual plaintiffs, neither of whom has proven any concrete and particularized injury that is certainly impending.**

Plaintiffs have abandoned any effort to establish standing as to Plaintiff James "Pete" Perry, who is nowhere mentioned in their response.

As to Plaintiff Matthew Lamb, Plaintiffs do not dispute the highly attenuated chain of events that must occur under Mississippi law before Mr. Lamb could ever be removed from office. *See* Dkt. #73 at 14-15.  In arguing that the speculative nature of this harm makes no difference, Plaintiffs rely on *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164 (5th Cir. 2018).  But the plaintiff-officials found to have standing in *El Cenizo* faced not only "expulsion from office" but also the "severe personal consequences" of "criminal penalties," "civil fines," and "expos[ure] . . . to damage suits." *El Cenizo*, 890 F.3d at 186.  In addition to failing to show that Mr. Lamb's removal from office is certainly impending, see Dkt. #73 at 14-15, Plaintiffs do not allege that any failure to comply with the Mississippi Statute will expose him to criminal prosecution, monetary fines, and/or civil liability.  Thus, *El Cenizo* is distinguishable and of no help to Plaintiffs.

Plaintiffs have presented no evidence showing that Mr. Perry or Mr. Lamb has experienced or will experience any concrete or particularized injury in fact that is certainly impending as a result of the Mississippi Statute.  Therefore, these plaintiffs lack standing.

### B. **Plaintiffs fail to establish standing as to either of the Republican Party entity-plaintiffs, there being no competent evidence to support associational or organizational standing.**

Plaintiffs argue that the receipt of mail-in absentee ballots within five business days after Election Day "adversely affect[s]" Republican candidates and the Republican party.  Dkt. #75 at 4.  But the summary-judgment record is devoid of evidence required to establish associational or organization standing.

First, Plaintiffs have failed to establish associational standing.  Specifically, Plaintiffs have presented no evidence that the counting of mail-in absentee ballots within five business days after Election Day has harmed—or will harm—the electoral prospects of a single Republican candidate for federal office appearing on the ballot in Mississippi.  As set forth in Defendant's memorandum

4

of authorities, see Dkt. #52 at 17-19, to establish associational standing via the RNC Plaintiffs' member-candidates, Plaintiffs would have to show that if all mail-in absentee ballots were received and counted on or before Election Day, Republican candidates would win federal election contests in Mississippi that they would otherwise lose. Plaintiffs have not made that showing.

Instead, Plaintiffs produced the declaration of RNC Political Director James Blair, which identifies each Republican officeholder/candidate for each federal office on the ballot in Mississippi. *See* Dkt. #75-1 at 4-5, ¶¶ 10-15. Mr. Blair states—without factual support—that "[e]ach one of these candidates and their electoral prospects are harmed by Mississippi's law permitting the counting of ballots received after election day." *Id.* at 5, ¶ 16. But such conclusory allegations and unsubstantiated assertions do not constitute competent summary-judgment evidence. *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) ("Conclusory allegations and unsubstantiated assertions . . . are not competent summary judgment evidence.").

Regardless, this Court may take judicial notice that four of the Republican candidates identified (*viz.*, Sen. Wicker, Rep. Kelly, Rep. Guest, and Rep. Ezell) are current officeholders, and former President (then-candidate) Donald Trump won Mississippi's electoral votes in 2020. It is, therefore, undisputed that the Mississippi Statute has not previously prevented any of these candidates from winning their respective contests in Mississippi. The sole remaining candidate identified is Ronald Eller, Republican candidate for Mississippi's 2nd Congressional District. Plaintiffs have submitted no competent summary-judgment evidence showing that—but for the counting of mail-in absentee ballots received within five business days after Election Day—any election for President of the United States, United States Senate, or United States House of Representatives would have resulted, or will result, in a different outcome in Mississippi.

To the extent Plaintiffs further argue that associational standing may be based on the notion that "the post-election (mail-in absentee ballot receipt) deadline favors Democrats," they have presented no Mississippi-specific facts to that effect. Nor have they provided any competent summary-judgment evidence supporting this assertion. *See* Dkt. #73 at 17-18 (discussing Plaintiffs' faulty reliance on conclusory allegations and unsubstantiated assertions contained in the declaration of RNC Deputy Political Director Ashley Walukevich).[1]

To the extent Plaintiffs contend that associational standing may be predicated on so-called "voter standing" of Republican voters, that argument likewise fails. At its core, Plaintiffs' argument that Republican voters have standing rests on the notion of diminished political effectiveness. Specifically, Plaintiffs argue that Republican voters have standing when—as they argue is the case here—"their political effectiveness is diminished by the effects of a law." *See* Dkt. #75 at 20. Yet Plaintiffs have presented no evidence that any federal election in Mississippi has ever resulted (or is likely to result) in a Republican loss due to the counting of mail-in absentee ballots received within five business days after Election Day. Absent such evidence, there is no factual basis to support the notion that the Mississippi Statute diminishes Republican voters' political effectiveness *in Mississippi*. For these reasons and those set forth in Defendant's memorandum of authorities, Plaintiffs fail to establish so-called "voter standing."

---

[1] Relatedly, Plaintiffs erroneously assert—without citation to authority—that because "Defendants are the ones moving to dismiss for lack of jurisdiction," Defendants "bear the burden of showing no genuine dispute that Mississippi Democrats tend to vote by mail less than Republicans." Dkt. #75 at 13. That is wrong as a matter of law. Even under the Rule 12(b)(1) standard governing a motion to dismiss, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013) (quotation marks omitted). And as set forth *supra*, "[w]hen the defendant moves for summary judgment because of lack of standing, . . . the *plaintiff* must submit *affidavits and comparable evidence* that indicate that a genuine issue of fact exists on the standing issue." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991)) (quotation marks omitted) (emphasis added). Plaintiffs have not met their burden here.

For all these reasons, Plaintiffs have not established associational standing.

Second, Plaintiffs have not established organizational standing. As set forth in Defendant's memorandum of authorities, see Dkt. #52 at 21-24, to establish organizational standing based on a purported diversion of resources, Plaintiffs must show that the Mississippi Statute resulted in a curtailment of specific organizational activities, and that this "curtailment . . . perceptibly impaired [the RNC Plaintiffs'] ability to achieve [their respective] mission[s]." *See La. Fair Housing Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 354 (5th Cir. 2023).

The RNC Plaintiffs assert that the Mississippi Statute causes them to divert resources away from "traditional get-out-the-vote operations" and "election integrity efforts" toward additional "ballot-chase programs and poll-watching activities." *See* Dkt. #75-1 at 3-4, ¶¶ 3-7; Dkt. #75-2 at 3, ¶¶ 3-5. However, they have not presented any competent summary-judgment evidence showing that any purported diversion of resources concretely and perceptibly impairs their ability to achieve their respective missions—and certainly not in Mississippi. The only record "evidence" bearing on perceptible impairment are the conclusory and unsubstantiated assertions—in two of Plaintiffs' declarations—that the post-Election Day receipt of mail-in absentee ballots harms the RNC Plaintiffs' respective missions. *See* Dkt. #75-1 at 3-4, ¶¶ 6, 8; Dkt. #75-2 at 3-4, ¶¶ 6-8. But as noted *supra*, conclusory and unsubstantiated assertions are not competent summary-judgment evidence. *See Warfield*, 436 F.3d at 559 ("Conclusory allegations and unsubstantiated assertions . . . are not competent summary judgment evidence.").

Having failed to present any specific facts, supporting data, or other non-conclusory evidence substantiating some concrete and perceptible harm to the RNC Plaintiffs' respective missions as a result of post-Election Day receipt of mail-in absentee ballots in Mississippi federal elections, Plaintiffs have failed to establish organizational standing.

7

Finally, to the extent Plaintiffs argue that they have standing on a theory of member candidates' "competitive standing" pursuant to *Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006), that argument is misplaced. For the reasons set forth in detail in Defendant's memorandum of authorities, Dkt. #52 at 20-21, 23-24, *Benkiser* has no application here.

Because none of the plaintiffs has standing, this action should be dismissed for lack of subject-matter jurisdiction.

## II. PLAINTIFFS HAVE ABANDONED THEIR CONSTITUTIONAL CLAIMS, AND THEIR SOLE REMAINING CLAIM FAILS ON THE MERITS.

### A. As to Count I, Plaintiffs have not shown that the Mississippi Statute violates federal election law.

The Fifth Circuit has expressly recognized that "a state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has *only one limitation*: the state system cannot *directly conflict* with federal election laws on the subject." *Voting Integrity Proj., Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000), *cert. denied*, 530 U.S. 1230 (2000) (emphasis added). As set forth in detail in Defendant's memorandum of authorities, the Mississippi Statute does not directly conflict with federal election statutes. *See* Dkt. #52 at 25-29. Plaintiffs' arguments to the contrary do not establish a direct conflict between the Mississippi Statute and any controlling interpretation of federal election statutes.

In response to Defendant's motion for summary judgment as to Count I, Plaintiffs assert that Defendant is "rely[ing] on assumptions, distractions, and loaded terms." *See* Dkt. #75 at 23. But in fact, Plaintiffs' entire argument as to Count I is predicated on an unsupported inference that Plaintiffs attempt to draw from the U.S. Supreme Court's opinion in *Foster v. Love*, 522 U.S. 67 (1997). Plaintiffs' entire theory as to Count I turns on their view of what it means for an election

8

to be "consummated"—a word that appears a single time (in a footnote, no less) in *Foster*. *See Foster*, 522 U.S. at 72 n.4.

In *Foster*, the Supreme Court held that Louisiana's "open primary" system violated federal election statutes because it permitted the conclusion of a congressional election "as a matter of law *before* the federal election day, with no act in law or in fact to take place on the date chosen by Congress." *Foster*, 522 U.S. at 72 (emphasis added). The Court defined "election" as "the combined actions of voters and officials meant to make a *final selection* of an officeholder." *Id.* at 71 (emphasis added). The Court declined to "par[e] the term 'election' . . . down to the definitional bone" and expressly left "room for argument about just what may constitute the *final act of selection* within the meaning of the law." *Id.* at 72 (emphasis added). *See also Bomer*, 199 F.3d at 776 (recognizing Supreme Court's refusal to give a hyper-technical meaning to "election").

The *Foster* Court took great care to limit its holding to the facts of that case, which—unlike this case—did not involve post-Election Day counting of mail-in absentee ballots postmarked on or before Election Day. "To underscore the ground left uncovered by its holding," *Millsaps v. Thompson*, 259 F.3d 535, 544 (6th Cir. 2001), the Supreme Court said in *Foster*: "This case thus does not present the question whether a State must always employ the conventional mechanics of an election. We hold today only that if an election does take place, it may not be consummated *prior to* federal election day." *Foster*, 522 U.S. at 72 n.4 (emphasis added). "*Foster's* narrow holding suggests that, so long as a State does not conclude an election *prior to* federal election day, the State's law will not 'actually conflict' with federal law." *Millsaps*, 259 F.3d at 546 (emphasis added). *See also Bomer*, 199 F.3d at 775 ("In striking down Louisiana's open primary statute, the Supreme Court *held only* that elections must not be 'consummated' before federal election day.") (quoting *Foster*, 522 U.S. at 72 n.4) (emphasis added).

9

*Foster's* narrow holding does not establish a direct conflict between the Mississippi Statute and federal law. Mississippi law does not permit the conclusion of a federal election *prior to* Election Day. Nor does the Mississippi Statute implicate the paramount federal concerns articulated in *Foster*. Most importantly, it "does not foster either of the primary evils identified by Congress as reasons for passing the federal statutes: 'distortion of the voting process threatened when the results of an early federal election in one State can influence later voting in other States, and . . . the burden on citizens forced to turn out on two different election days to make final selections of federal officers in presidential election years.'" *Bomer*, 199 F.3d at 777 (quoting *Foster*, 522 U.S. at 73).

Plaintiffs accuse Defendant of "run[ning] away from *Foster*." Dkt. #75 at 26. To the contrary, Defendant takes *Foster* at face value, accepting the Supreme Court at its word that *Foster* is not to be read in the expansive and definitive manner that Plaintiffs advance here. In *Foster*, the Supreme Court itself expressly refused to "par[e] the term 'election' . . . down to the definitional bone," *Foster*, 522 U.S. at 72, and did not reach the "question whether a State must always employ the conventional mechanics of an election," *id.* n.4. Plaintiff further asserts that Defendant should "explain what it means to . . . consummate an election," Dkt. #75 at 29. But *Foster* does not require this Court to reach that issue, there being no possible way under the Mississippi Statute for federal candidates to be "conclusively elect[ed] . . . before the election day elsewhere," or for Mississippi voters to be "forced . . . to turn out for two potentially conclusive federal elections." *Foster*, 522 U.S. at 469. Those were the two "evils," *id.*, the Supreme Court sought to remedy in *Foster*, and neither is present here.

Significantly, Plaintiffs have cited no controlling authority holding that the post-Election Day counting of mail-in absentee ballots postmarked by Election Day directly conflicts with

10

federal election statutes. Plaintiffs acknowledge that only two federal district courts "have addressed the merits" of the issue of post-Election Day receipt of ballots. *See* Dkt. #75 at 23 (citing *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 369-73 (D.N.J. 2020), and *Bost v. Ill. State Bd. of Elections*, No. 22-cv-02754, 2023 WL 4817073, at *10-11 (N.D. Ill. July 26, 2023)). In both cases, the district courts rejected the plaintiffs' claims that the post-Election Day receipt of ballots violates the same federal election statutes at issue here. Plaintiffs do not address the rationale employed by the district court in either of these cases. Instead, they dismiss each court as having "overlooked or ignored the history of mail-in voting." Dkt. #75 at 23.

But the law—including state election law—"is not static." *See Clark v. Edwards*, 468 F. Supp. 3d 725, 748 (M.D. La. 2020). Plaintiffs have cited no authority precluding states from enacting election laws that keep pace with changing times and societal concerns. Indeed, the Supreme Court itself has not reached the issue of "whether a State must always employ the conventional mechanics of an election." *Foster*, 522 U.S. at 72 n.4. In the absence of controlling authority prohibiting post-Election Day receipt of mail-in absentee ballots postmarked by Election Day, this Court should follow suit with the district courts in *Bost* and *Way*, *supra*, and reject Plaintiffs' arguments out of hand. For all these reasons, the Court should enter summary judgment for Defendant as to Count I.

B. **Plaintiffs have abandoned their constitutional claims (Counts II and III).**

In the joint motion for scheduling order filed March 5, 2024, the parties advised the Court of their collective belief "that cross-motions for summary judgment are the most efficient route to resolving this case." Dkt. #37 at 2. In part on the basis of that representation, this Court on March 5, 2024, entered a summary-judgment briefing scheduling order providing for the disposition of this case via cross-motions for summary judgment. *See* Dkt. #38. Thereafter, Defendant timely

moved for summary judgment on all of Plaintiffs' claims, including Plaintiffs constitutional claims (Counts II and III). Dkt. #51, #52. Defendant's arguments supporting his motion for summary judgment as to Plaintiffs' constitutional claims are set forth at pages 29-33 of his memorandum of authorities. Dkt. #52 at 29-33. Plaintiffs' response fails to address their constitutional claims (Counts II and III) *at all*. Therefore, the Court should regard those claims as abandoned and—at a minimum—enter summary judgment for Defendant as to Counts II and III.

### III. PLAINTIFFS HAVE NOT MADE THE REQUISITE SHOWING FOR INJUNCTIVE RELIEF.

In their response, Plaintiffs reiterate that they are seeking both "declaratory relief and an injunction preventing the State Defendants [*sic*] from enforcing Mississippi's post-election receipt of absentee ballots." Dkt. #75 at 4. A party seeking a permanent injunction must establish all of the following: (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 576 (5th Cir. 2021). For the reasons set forth in detail *supra* and in Defendant's memorandum of authorities, Dkt. #52, Plaintiffs' claims fail on the merits. Plaintiffs have not even attempted to make any showing of the other three requisite factors for injunctive relief. For all of these reasons, Plaintiffs are not entitled to injunctive relief.

### CONCLUSION

For all these reasons and those set forth in Defendant's memorandum of authorities [Dkt. #52] filed previously, Plaintiffs' Complaint should be dismissed for lack of subject-matter jurisdiction predicated on lack of Article III standing. Alternatively, Plaintiffs' claims fail on the merits, and the Court should enter summary judgment for Defendant, thereby disposing of this case in its entirety with prejudice.

THIS the 16th day of April, 2024.

    Respectfully submitted,

    MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF MISSISSIPPI, DEFENDANT

    By:    LYNN FITCH, ATTORNEY GENERAL STATE OF MISSISSIPPI

    By:    <u>s/Rex M. Shannon III</u>
           REX M. SHANNON III (MSB #102974)
           Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
WILSON D. MINOR (MSB #102663)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
wilson.minor@ago.ms.gov

ATTORNEYS FOR DEFENDANT MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF MISSISSIPPI

## CERTIFICATE OF SERVICE

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for the above-named State Defendant, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 16th day of April, 2024.

           <u>s/Rex M. Shannon III</u>
           REX M. SHANNON III