IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; and MATTHEW LAMB** | **PLAINTIFFS** |
| VS. | Civil Action No. 1:24-cv-25-LG-RPM |
| **JUSTIN WETZEL,** *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, et al. | **DEFENDANTS** |
| *and* | |
| **VET VOICE FOUNDATION and MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS** | **INTERVENOR DEFENDANTS** |
| *consolidated with* | |
| **LIBERTARIAN PARTY OF MISSISSIPPI** | **PLAINTIFF** |
| VS. | Civil Action No. 1:24-cv-37-LG-RPM |
| **JUSTIN WETZEL,** *in his official capacity as the clerk and registrar of the Circuit Court of Harrison County*, et al. | **DEFENDANTS** |

### REBUTTAL IN FURTHER SUPPORT OF DEFENDANT SECRETARY OF STATE MICHAEL WATSON'S MOTION FOR SUMMARY JUDGMENT IN CONSOLIDATED LIBERTARIAN PARTY CASE

### INTRODUCTION

In response to Defendant Secretary of State Michael Watson's ("Defendant") motion for summary judgment [Dkt. #53, #54], Plaintiff Libertarian Party of Mississippi has not presented competent summary-judgment evidence establishing Article III standing under any applicable theory. Nor has Plaintiff shown that Mississippi's mail-in absentee ballot receipt deadline statute,

1

MISS. CODE ANN. § 23-15-637(1)(a) ("the Mississippi Statute"), violates federal law.  Regardless of what any party may think of the policy embodied in the Mississippi Statute, it does not violate federal law, and Plaintiff's Complaint should be dismissed.

At the threshold jurisdictional inquiry, Plaintiff lacks Article III standing to bring this lawsuit on behalf of its members, its candidates, or itself.  To begin with, Plaintiff has not established that it meets the requirements for organizational standing.  While Plaintiff alleges "economic injuries," its submitted proof shows *not* that it must spend additional funds as a result of the Mississippi Statute, but rather that it has no additional funds to spend.  Plaintiff further alleges a diversion of resources, but it fails to present any proof that such a diversion has perceptibly impaired the Libertarian Party's ability to achieve its mission.  Plaintiff's alleged harm to its "electoral prospects" rests on a misplaced reliance on inapplicable case law.  And its purported interest in "an accurate vote tally" is—in the absence of specific proof—a generalized grievance that is insufficient to support standing.

Nor has Plaintiff made the requisite showing for associational standing.  While Plaintiff asserts that its candidates face prospective harm and intangible injury, it fails to show how such alleged injuries are anything but speculative and not certainly impending.  And Plaintiff has not identified a single Libertarian Party candidate who has been or will be "harmed" by operation of the Mississippi Statute.  Having failed to show that any alleged "vote dilution" will affect its voters in any personal and individualized way, Plaintiff further fails to establish associational standing predicated on alleged injury to its voters.

Because Plaintiff lacks standing, this Court lacks subject-matter jurisdiction, and Plaintiff's Complaint should be dismissed without reaching the merits.  Even if this Court finds that Plaintiff has standing, its claims nevertheless fail on the merits.  Plaintiff argues that federal election law

"displaces" the Mississippi Statute, but the cases on which Plaintiff relies do not stand as obstacles to enforcement of the Mississippi Statute. Plaintiff has cited no controlling authority holding that the post-Election Day counting of mail-in absentee ballots postmarked by Election Day directly conflicts with federal election statutes. Nor has Plaintiff demonstrated that historical practices or recent legislation preclude Mississippi from applying the Mississippi Statute and federal election law harmoniously.

Plaintiff's First and Fourteenth Amendment claims fare no better. Plaintiff has presented no evidence that any of its members have been or will be (a) prevented from voting or (b) treated differently than any other voter. Nor has Plaintiff identified a single candidate who has been or will be unable to run for federal office in Mississippi by operation of the Mississippi Statute.

For these reasons and those set forth herein, Plaintiff's Complaint should be dismissed for lack of standing. Alternatively, Plaintiff's claims fail on the merits, and the Court should enter summary judgment for Defendant.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PRESENT COMPETENT SUMMARY-JUDGMENT EVIDENCE ESTABLISHING ARTICLE III STANDING.

In its response to Defendant's motion for summary judgment, Plaintiff asserts that "the record with respect to Plaintiff's injuries consists of the undisputed allegations in the complaint . . . ." Dkt. #80 at 13. That is legally erroneous. The Rule 12(b)(1) motion-to-dismiss standard has no application here because Defendant has moved for summary judgment. As set forth in Defendant's memorandum of authorities, "[w]hen the defendant moves for summary judgment because of lack of standing, . . . the plaintiff must submit *affidavits and comparable evidence* that indicate that a genuine issue of fact exists on the standing issue." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quoting *Cramer v. Skinner*, 931 F.2d 1020,

1025 (5th Cir. 1991)) (quotation marks omitted) (emphasis added). For the reasons that follow, Plaintiff has failed to carry its burden of establishing Article III standing.

### A. Plaintiff fails to establish organizational standing.

Plaintiff first argues that it has organizational standing by virtue of alleged "economic injuries" related to Mississippi's mail-in absentee ballot receipt deadline. Dkt. #80 at 14-20. Relying solely on the original declaration of former Mississippi Libertarian Party Secretary Vicki Hanson, Dkt. #55-3, Plaintiff asserts that its "ability to monitor election canvassing has been . . . diminished because the costs and resources needed to monitor during the five business days following Election Day have increased." Dkt. #80 at 15. But Plaintiff further asserts that it "has so far been unable to field monitors for all five extra business days in the two elections since the law changed and is unlikely to be able to do so in the near term." *Id.* Ms. Hanson further states that unlike the Republican and Democrat Parties, Plaintiff "can[not] afford to do this extra monitoring." *See* Dkt. #55-3 at 6, ¶ 26.

Plaintiff has presented no evidence that it must spend additional funds as a result of the Mississippi Statute—only that it has no additional funds to spend. There can be no "economic injury" where the record does not demonstrate that Plaintiff is worse off economically than it otherwise would have been *but for* the operation of the Mississippi Statute. Thus, Plaintiff's first argument for organizational standing falls flat.

Plaintiff next argues that it has organizational standing by way of an alleged diversion of resources. Dkt. #80 at 20-21. Relying on a second declaration of Ms. Hanson, Dkt. #79-1, Plaintiff relates a list of monitoring activities that Plaintiff contends it must "put on hold or otherwise curtail in order to respond" to Mississippi's mail-in absentee ballot receipt deadline. Dkt. #80 at 21 (quotation marks omitted). But a showing of curtailed monitoring activities alone is insufficient

4

to establish organizational standing. Rather, Plaintiff must "explain how any curtailment of these projects *perceptibly impaired its ability to achieve its mission*." See *La. Fair Housing Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 354 (5th Cir. 2023) (emphasis added). Plaintiff fails to present any evidence showing that its alleged curtailment of monitoring activities has concretely and perceptibly impaired the Libertarian Party's ability to achieve its mission. Thus, Plaintiff's second argument for organizational standing likewise fails.

Plaintiff further argues that it has organizational standing based on alleged "imminent threat of harm to its electoral prospects." Dkt. #80 at 21. In support of this argument, Plaintiff relies exclusively on *Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006). But for reasons set forth in detail in Defendant's memorandum of authorities, Dkt. #54 at 20, *Benkiser* has no application here. This argument for organizational standing is accordingly misplaced.

Finally, Plaintiff argues that it has organizational standing because it has "endured an injury to its interest in an accurate vote tally." Dkt. #80 at 22. In support of this argument, Plaintiff relies exclusively on *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020). But *Carson* did not address organizational standing and does not speak to the standing of political parties. In *Carson*, the Eighth Circuit held that "[a]n inaccurate vote tally is a concrete and particularized injury *to candidates*" that is sufficient to confer Article III standing to candidates. See *Carson*, 978 F.3d at 1057-58 (emphasis added). It should be noted that *Carson's* holding was accompanied by a strong dissent, *id.* at 1063-68 (Kelly, J., dissenting), and multiple courts have questioned the soundness of the majority's holding. *See, e.g.*, *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 351-52 (3d Cir. 2020), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *King v. Whitmer*, 505 F. Supp. 3d 720, 736-37 (E.D. Mich. 2020); *Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596, 610-12 (E.D. Wis. 2020); *Bowyer v. Ducey*, 506 F. Supp.

5

3d 699, 710-11 (D. Ariz. 2020); *Bost v. Ill. State Bd. of Elections*, No. 22-cv-02754, 2023 WL 4817073, at *9 (N.D. Ill. July 26, 2023).

Here, Plaintiff presents no evidence that any specific Libertarian Party candidate has been or imminently stands to be affected in any way by any alleged "inaccurate vote tally." In the absence of such evidence, Plaintiff asserts nothing more than a generalized grievance that is insufficient to support Article III standing. *See Hotze v. Hudspeth*, 16 F.4th 1121, 1124 n.2 (5th Cir. 2021) (reaffirming that "[j]ust challenging the 'integrity' of the voting process is too general to suffice"). Accordingly, Plaintiff's final argument for organizational standing likewise fails.

### B. Plaintiff fails to establish associational standing.

Plaintiff first argues that it has associational standing on behalf of its candidates. Dkt. #80 at 24-27. Specifically—and without identifying a single candidate by name—Plaintiff asserts that its candidates (1) "face the prospect in all future elections" of spending money and volunteer resources on post-election canvassing; (2) "face the prospect of diminished electoral performance"; and (3) "face an intangible injury to the interest they share with every candidate" in ensuring an accurate vote tally. *Id.* at 24-25. All of these alleged "injuries" are too speculative to support Article III standing, and none is supported by competent summary-judgment evidence.

First, Plaintiff's alleged associational injury to candidates is inherently speculative. For Libertarian Party candidates to have standing "to enjoin the counting of ballots arriving after Election Day, such votes would have to be sufficient in number to change the outcome of the election to [their] detriment." *See Bognet*, 980 F.3d at 351-52. That is, Plaintiff would have to show that if all mail-in absentee ballots were received and counted on or before Election Day (i.e., the remedy Plaintiff seeks), Libertarian Party candidates would win federal election contests that they would otherwise lose. *Cf. Miller v. Hughs*, 471 F. Supp. 3d 768, 777 (W.D. Tex. 2020) (where

associational plaintiff fails to allege that any candidate member "has lost or will lose an election" as a result of a challenged balloting statute, plaintiff's "allegations are insufficient for associational standing because the alleged injury is neither concrete nor imminent").  Plaintiff has not shown that any of its candidates might win a federal election in Mississippi if the Mississippi Statute were enjoined.

Additionally, Plaintiff has not shown that any alleged harm to its candidates is "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Plaintiff has not submitted any candidate affidavits or other competent summary-judgment evidence establishing that a specific Libertarian Party candidate for federal office stands to lose an impending federal election in Mississippi if the counting of mail-in absentee ballots is not restricted to ballots received by Election Day.  To the extent Plaintiff relies on *Benkiser*, its arguments are misplaced for the reasons set forth in detail in Defendant's memorandum of authorities.  *See* Dkt. #54 at 16-17.

Second, Plaintiff's arguments for associational standing predicated on alleged injury to candidates is not supported by competent summary-judgment evidence.  Plaintiff has not identified a single, specific Libertarian Party candidate who has been or will be harmed by operation of the Mississippi Statute.  Rather, Plaintiff advances the subjective "belie[f]" of its former party Secretary, Vicki Hanson, "that Mississippi's law allowing receipt of mailed ballots for up to five business days after Election Day has caused the Party's candidates to have worse electoral results than Republican and Democratic candidates."  Dkt. #55-3 at 6, ¶ 27.  The sole basis for Ms. Hanson's "belie[f]" is her further "belie[f] that more mailed ballots coming in after Election Day are cast for Republican or Democratic candidates."  *Id.*  Because neither of these assertions is substantiated, neither constitutes competent summary-judgment evidence.  *Warfield v. Byron*, 436

F.3d 551, 559 (5th Cir. 2006) ("Conclusory allegations and unsubstantiated assertions . . . are not competent summary judgment evidence.").

But even if Ms. Hanson is correct that more mailed ballots received after Election Day are cast for non-Libertarian Party candidates than Libertarian Party candidates, it does not logically follow that this caused Libertarian candidates to lose federal elections in Mississippi. Plaintiff has presented no evidence showing that the number of mail-in absentee ballots received after Election Day exceeded the vote deficit of any Libertarian Party candidate in any given federal election in Mississippi—or that this is likely to occur in the future.

Plaintiff further argues that it has associational standing on behalf of its voters. Plaintiff asserts that the number of ballots received after Election Day in 2020 "totaled as much as 1.7% of the total votes cast in the 2020 election." Dkt. #80 at 27. But Plaintiff has presented no evidence showing that a Libertarian Party candidate would have won any federal election in Mississippi but for this small fraction of mail-in absentee ballots. Plaintiff argues that the *Moore*, *Feehan*, and *Bost* cases cited by Defendant, see Dkt. #54 at 12-15, (as preclusive of associational standing predicated on a theory of "vote dilution") are not applicable because "those cases involved claims of general vote dilution common to all voters." Dkt. #80 at 28. Without explanation, Plaintiff argues that "vote dilution" as applied to *its* voters is somehow "individual and personal in nature to them" because—according to Plaintiff—such votes "cannot lawfully be used to determine the outcome of a federal election." *Id.* at 28. But that is essentially the same argument that other federal district courts rejected in *Moore*, *Feehan*, and *Bost*. Plaintiff fails to establish associational standing based on any alleged injury to its voters.

Because Plaintiff has failed to establish Article III standing, this action should be dismissed for lack of subject-matter jurisdiction.

## II. PLAINTIFF'S CLAIMS FAIL ON THE MERITS.

### A. **Plaintiff has not shown that the Mississippi Statute violates federal election law.**

Plaintiff first argues that federal election law "necessarily displaced" Mississippi's authority to extend the mail-in absentee ballot receipt deadline beyond Election Day, thereby rendering the Mississippi Statute invalid. *See* Dkt. #80 at 29. In support of its argument, Plaintiff principally relies upon *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013), and *Foster v. Love*, 522 U.S. 67 (1997). But as set forth below, neither of these cases supports the proposition that Mississippi's receipt deadline violates federal law.

In *Inter Tribal*, the U.S. Supreme Court reasoned that "[w]hen Congress legislates with respect to the 'Times, Places and Manner' of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States." *Inter Tribal*, 570 U.S. at 14 (emphasis in original). The Court further stated that "[b]ecause the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that *the statutory text accurately communicates the scope of Congress's pre-emptive intent*," and that "[i]n sum, there is no compelling reason not to read Elections Clause legislative simply to *mean what it says*." *Id.* at 14-15 (emphasis added). Insofar as Congress exercises its pre-emptive power in this area—"and *no farther*"—federal laws "supersede those of the State which are inconsistent therewith." *Id.* at 9 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)) (quotation marks omitted) (emphasis added). Consistent with *Inter Tribal*, the Fifth Circuit has held that the states' authority to regulate the conduct of federal elections is constrained by "only one limitation: the state system cannot directly conflict with federal election laws on the subject." *Voting Integrity Proj., Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000), *cert. denied*, 530 U.S. 1230 (2000).

9

Plaintiff has not identified a single controlling authority holding that the post-Election Day receipt of mail-in absentee ballots directly conflicts with—or, in the words of *Inter Tribal*, is "necessarily displace[d]" by—the text of any federal election law. "When there is no federal law that directly conflicts with state law regulating the time, place, and manner of federal elections, then state law controls by default." *Tex. Voters Alliance v. Dallas County*, 495 F. Supp. 3d 441, 467 (E.D. Tex. 2020) (citing *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013)). *Inter Tribal* does no harm to the Mississippi Statute. Plaintiff has not shown otherwise.

Plaintiff further argues that by allowing the receipt of mail-in absentee ballots for five business days after Election Day—notwithstanding the requirement that such ballots must be postmarked *by Election Day* to be counted—the Mississippi Statute runs afoul of the meaning ascribed to "election" in *Foster*, *supra*. But Foster's narrow holding cannot be read to invalidate the Mississippi Statute.

In *Foster*, the Supreme Court held that Louisiana's "open primary" system violated federal election statutes because it permitted the conclusion of a congressional election "as a matter of law *before* the federal election day, with no act in law or in fact to take place on the date chosen by Congress." *Foster*, 522 U.S. at 72 (emphasis added). The Court defined "election" as "the combined actions of voters and officials meant to make a *final selection* of an officeholder." *Id.* at 71 (emphasis added). As noted *supra*, the Court declined to "par[e] the term 'election' . . . down to the definitional bone" and expressly left "room for argument about just what may constitute the *final act of selection* within the meaning of the law." *Id.* at 72 (emphasis added). *See also Bomer*, 199 F.3d at 776 (recognizing Supreme Court's refusal to give a hyper-technical meaning to "election").

The *Foster* Court took great care to limit its holding to the facts of that case, which—unlike this case—did not involve post-Election Day counting of mail-in absentee ballots postmarked on or before Election Day. "To underscore the ground left uncovered by its holding," *Millsaps v. Thompson*, 259 F.3d 535, 544 (6th Cir. 2001), the Supreme Court said in *Foster*: "This case thus does not present the question whether a State must always employ the conventional mechanics of an election. We hold today only that if an election does take place, it may not be consummated *prior to* federal election day." *Foster*, 522 U.S. at 72 n.4 (emphasis added). "*Foster's* narrow holding suggests that, so long as a State does not conclude an election *prior to* federal election day, the State's law will not 'actually conflict' with federal law." *Millsaps*, 259 F.3d at 546 (emphasis added). *See also Bomer*, 199 F.3d at 775 ("In striking down Louisiana's open primary statute, the Supreme Court *held only* that elections must not be 'consummated' before federal election day.") (quoting *Foster*, 522 U.S. at 72 n.4) (emphasis added).

*Foster's* narrow holding does not establish a direct conflict between the Mississippi Statute and federal law. Mississippi law does not permit the conclusion of a federal election *prior to* Election Day. Nor does the Mississippi Statute implicate the paramount federal concerns articulated in *Foster*. Most importantly, it "does not foster either of the primary evils identified by Congress as reasons for passing the federal statutes: 'distortion of the voting process threatened when the results of an early federal election in one State can influence later voting in other States, and . . . the burden on citizens forced to turn out on two different election days to make final selections of federal officers in presidential election years.'" *Bomer*, 199 F.3d at 777 (quoting *Foster*, 522 U.S. at 73). Plaintiff has cited no controlling authority holding that the post-Election Day counting of mail-in absentee ballots postmarked by Election Day directly conflicts with federal election statutes.

Plaintiff further argues that post-Election Day receipt of mail-in absentee ballots is inconsistent with "[h]istorical electoral practices under the common law and during Colonial, early Republic, Civil War, and Reconstruction eras." *See* Dkt. #80 at 31. But the law—including state election law—"is not static." *Clark v. Edwards*, 468 F. Supp. 3d 725, 748 (M.D. La. 2020). Plaintiff has cited no authority precluding states from enacting election laws that keep pace with changing times and societal concerns. Indeed, the Supreme Court itself has not reached the issue of "whether a State must always employ the conventional mechanics of an election." *Foster*, 522 U.S. at 72 n.4. And even in the Elections Clause context, the Supreme Court "has long recognized the role of the States as laboratories for devising solutions to difficult legal problems." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) (quotation marks omitted). In the absence of controlling authority prohibiting post-Election Day receipt of mail-in absentee ballots postmarked by Election Day, Plaintiff's historical arguments are unavailing.

Finally, Plaintiff asserts that Defendant "ignore[s] the text" of the Electoral Count Reform Act ("ECRA"), 3 U.S.C. § 21. *See* Dkt. #80 at 34. Plaintiff argues that the enactment of the ECRA proves that states can *only* "modify the period for voting," *id.* at 33, as necessitated by "certain 'force majeure events that are extraordinary and catastrophic,'" *id.* (quoting 3 U.S.C. § 21). Plaintiff analyzes the Mississippi Statute and 3 U.S.C. § 21 using the rubric set out by the Ninth Circuit in *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012). Dkt. #80 at 34. Plaintiff posits—erroneously, as will be shown—that "[i]t would be impossible to read [the Mississippi Statute] and 3 U.S.C. § 21 together and not conclude that federal Election Day statutes displaced state authority to extend receipt deadlines, except in specific force majeure events." *Id.*

While the Fifth Circuit has never adopted the Ninth Circuit rubric set out in *Gonzalez*, the Ninth Circuit analysis is in essence merely a more verbose articulation of the controlling rule in

the Fifth Circuit. The Ninth Circuit analysis ultimately results in the rule that "[i]f the two statutes do not operate harmoniously in a single procedural scheme . . ., then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez*, 677 F.3d at 394. In the Fifth Circuit, as noted *supra*, the states' authority to regulate the conduct of federal elections is constrained by "only one limitation: the state system cannot *directly conflict* with federal election laws on the subject." *Bomer*, 199 F.3d at 775 (emphasis added).

Whether the Court applies the standard as articulated in *Gonzalez* or *Bomer* in analyzing the Mississippi Statute vis-à-vis the ECRA, the result is the same: there is no direct conflict, and these federal and state laws operate harmoniously. The ECRA defines "election day" as a given date in November of every fourth year; it further provides that states may "modif[y] the period of voting, as necessitated by force majeure events that are extraordinary and catastrophic . . . ." 3 U.S.C. § 21(1). The Mississippi Statute provides that mail-in absentee ballots shall only be counted if they are "postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." MISS. CODE ANN. § 23-15-637(1)(a). The Mississippi Statute thus requires that all mail-in absentee ballots be cast—i.e., deposited in the mail and postmarked—*on or before Election Day*.

Under any fair reading of the Mississippi Statute, the "period of voting" ceases on Election Day—that is, on the last day that an absentee voter, in the final expression of his/her choice in the selection of candidates, may irretrievably cast his/her ballot with a reasonable expectation of receipt and processing by election officials in due course. Because the Mississippi Statute does not extend the "period of voting" beyond Election Day, it does not directly conflict with the ECRA and operates harmoniously with that federal statute. Therefore, pursuant to *Bomer* and *Gonzalez*, respectively, federal law does not displace, supersede, or preempt the Mississippi Statute, and

Plaintiff's arguments to the contrary are unavailing. For all these reasons, the Court should enter summary judgment for Defendant as to Count III of Plaintiff's Complaint.

### B. **Plaintiff has not shown that the Mississippi Statute violates the First or Fourteenth Amendments.**

As to Counts I and II of Plaintiff's Complaint, Plaintiff devotes a mere two pages of its 31-page brief. Plaintiff asserts that "[b]y virtue of enforcing an unconstitutional state statute that burdens Plaintiff's candidates' right to stand for office and members' rights to vote, Defendants have violated Plaintiff's statutory and constitutional First and Fourteenth Amendment rights." Dkt. #80 at 38. Plaintiff's terse argument in support of these claims is unavailing.

In response to Defendant's arguments regarding Count I (alleged violation of the "right to vote"), Plaintiff has not identified a single instance of allegedly "fraudulent" voting. Nor has Plaintiff shown that by operation of the Mississippi Statute, any of its members have been or will be (1) prevented from voting or (2) treated differently than any other voter. Plaintiff simply has not shown any First or Fourteenth Amendment violation predicated on any alleged denial or dilution of the "right to vote."

In response to Defendant's arguments regarding Count II (alleged violation of the "right to stand for office"), Plaintiff has not identified a single candidate who has been or will be unable to run for federal office in Mississippi by operation of the Mississippi Statute. Plaintiff asserts that its "constitutional rights are violated for the simple reason that its members and candidates must abide by a preempted and unconstitutional state timing regulation to run for office." Dkt. #80 at 39. But that presupposes that the Mississippi Statute violates federal election law. For the reasons set forth herein and in Defendant's memorandum of authorities, that is simply not the case.

Having failed to show that the Mississippi Statute violates the First or Fourteenth Amendment rights of Plaintiff or its members, Plaintiff fails to establish these claims. Accordingly, the Court should enter summary judgment for Defendant on Counts I and II.

### III. PLAINTIFF HAS NOT MADE THE REQUISITE SHOWING FOR INJUNCTIVE RELIEF.

In their Complaint, Plaintiff seeks "[a] permanent injunction prohibiting Defendants from implementing and enforcing" the Mississippi Statute. Dkt. #1 at 13. A party seeking a permanent injunction must establish all of the following: (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 576 (5th Cir. 2021). For the reasons set forth in detail *supra* and in Defendant's memorandum of authorities, Dkt. #54, Plaintiff's claims fail on the merits. Plaintiff has not even attempted to make any showing of the other three requisite factors for injunctive relief. For all of these reasons, Plaintiff is not entitled to injunctive relief.

### CONCLUSION

For all these reasons and those set forth in Defendant's memorandum of authorities [Dkt. #54] filed previously, Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction predicated on lack of Article III standing. Alternatively, Plaintiff's claims fail on the merits, and the Court should enter summary judgment for Defendant, thereby disposing of this case in its entirety with prejudice.

THIS the 16th day of April, 2024.

Respectfully submitted,

MICHAEL WATSON, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF STATE OF
MISSISSIPPI, DEFENDANT

|  |  |
|---|---|
| By: | LYNN FITCH, ATTORNEY GENERAL<br>STATE OF MISSISSIPPI |
| By: | s/Wilson D. Minor<br>WILSON D. MINOR (MSB #102663)<br>Special Assistant Attorney General |

REX M. SHANNON III (MSB #102974)
WILSON D. MINOR (MSB #102663)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
wilson.minor@ago.ms.gov

ATTORNEYS FOR DEFENDANT MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF MISSISSIPPI

## CERTIFICATE OF SERVICE

I, Wilson D. Minor, Special Assistant Attorney General and one of the attorneys for the above-named State Defendant, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 16th day of April, 2024.

s/Wilson D. Minor
WILSON D. MINOR